RECEIVED

2006 NOV 17 A 9: 40

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

WINSTON DAVIS
    PETITIONER

V.                                    1:06-CV-842-MHT
                                      PETITIONER REQUEST
                                      ORAL ARGUMENT

STATE OF ALABAMA, ETAL.,
    RESPONDENTS.

PETITIONER WINSTON DAVIS'S RESPONSE
TO RESPONDENT, ALABAMA ATTORNEY
GENERAL'S ANSWER, PURSUANT TO THIS
HONORABLE COURT'S ORDER TO SHOW CAUSE

1.

AS TO WHY H2S FEDERAL HABERS CORPUS PETITION "SHOULD NOT BE DENIED"

COMES NOW, PETITIONER WINSTON DAVIS IN THE ABOVE-STYLED CAUSE AND MOVES THIS HONORABLE COURT TO RULE ON PETITIONER'S MERITS AND STATES THE FOLLOWING "EXTRAORDINARY CIRCUMSTANCES" FOR RELIEF

BRIEF SUMMARY OF THIS FEDERAL PETITION

1. "ON SEPTEMBER 21, 2006" PETITIONER FILED THIS INSTANT PETITION CAUSE NO: 01:06-CV-842 MHT.

2. ON SEPTEMBER 27, 2006, HONORABLE CHARLES S. COODY, CHIEF UNITED STATES MAGISTRATE JUDGE, ISSUED ORDER TO THE ALABAMA ATTORNEY GENERAL TO SHOW CAUSE.

2.

3. ON OCTOBER 27, 2006, AFTER AN
ENLARGEMENT OF TIME, RESPONDENTS,
ALABAMA ATTORNEY GENERAL FILED
ANSWER OF RESPONDENTS,

THEREIN SAID ANSWER RESPONDENTS
BASE THEIR AFFIRATIVE DEFENCE
THAT PURSUANT TO TITLE 28 U.S.C.
§ 2244 (D) (1) OF THE ANTITORRORISM
AND EFFECTIVE DEATH PENALTY ACT
OF 1996, AND DAVIS'S PETITION
"IS BARRED BECAUSE IT WAS NOT
FILED WITHIN THE ONE-YEAR
STATUTE OF LIMITATION". SEE:
RESPONDENTS ANSWER AT P. 4,
PARAGRAPH 8, MEMORANDUM BRIEF.

4. ON NOVEMBER 1, 2006, THIS HONORABLE
COURT ISSUED ORDER, WHICH STATES
IN PERTINENT PART:
     THAT ON OR BEFORE NOVEMBER
21, 2006, PETITIONER SHALL SHOW
CAUSE WHY HIS FEDERAL PETITION

3.

SHOULD NOT BE DENIED AS IT WAS
NOT FILED WITHIN THE ONE-YEAR
LIMITATION PERIOD ESTABLISHED
BY 28 USC § 2244 (D)(1)

BRIEF SUMMARY
OF GENEVA COUNTY CIRCUIT COURT
CASE CC-99-126.

1. IT IS WELL ESTABLISHED THAT
PETITIONER WINSTON DAVIS WAS
ARRESTED BOOKED INTO THE GENEVA
COUNTY JAIL AND RELEASED ON A $50,000.00
PROPERTY BOND. ON AUGUST 5, 1999.

2. IT IS WELL ESTABLISHED THAT
ON AUGUST 6, 1999, THE GENEVA
COUNTY GRAND JURY (SEE: RESPONDENTS
ANSWER TO THIS INSTANT PETITION
P.2 PARAGRAPH 4) INDICTED PETITIONER
WINSTON DAVIS DID KNOWINGLY OBTAIN
BY DECEPTION "UNAUTHORIZED CONTROL
OVER UNITED STATES CURRENCY" (SEE:
PETITIONER WINSTON DAVIS'S EXHIBIT 2
AT R-7" FOUND IN THIS INSTANT PETITION).

4.

3. IT IS WELL ESTABLISHED THAT THE CONVICTION FOR CASE CC-99-126 WAS DUE TO A WELLFULLY AND INTENTIONALLY FAILURE OF THE GENEVA COUNTY DISTRICT ATTORNEY, DAVID EMERY TO DISCLOSE DOCUMENTS WHICH WAS IN HIS CUSTODY AND CONTROL, AND IS A DIRECT VIOLATION OF THE AUTHORITY OF BRADY V. MARYLAND 373 U.S. 83 (1963) NAPUE V. ILLINOIS 360 U.S. 264 (1959) GILES V. MARYLAND 386 U.S. 66 (1967) DAVIS V. ALASKA 415 U.S. 308 (1974) UNITED STATES V. PETT 717 F 2D 1334 (11 TH CIR. 1983 AND RULE 16 ALABAMA RULES OF CRIMINAL PROCEDURE SEE: PETITIONER'S "EXHIBIT 2 AT PP. 7 AND 8" WHICH STATES IN PERTINENT PART:

   "DAVIS: LET ME ASKED SOMETHING, YOUR HONOR, A COUPLE A WEEKS AGO, I SENT THE CLERK'S OFFICE OF COURT A LETTER ASKING FOR DOCUMENTS FROM THE DISTRICT ATTORNEY'S OFFICE (SEE: PETITIONER'S

EXHIBITS 20, A COPY OF PETITIONERS
TAPED RECORDED STATEMENT TO
INVESTIGATOR JIMMY HOOD ON JULY
14, 1999, THERE IN DAVES AND
INVESTIGATOR DISCUSSED "EXHIBITS
20 (A) AT P.5."

DAVES: "I'M REVIEWING SOME
        CHECKS"

EXHIBIT 20 (B) AT PP. 7, 8 - 73

HOOD: DID SHE PAY YOU SOME MONEY UP
      FRONT? AND THAT WAS DONE
      ON AUGUST 17, 1999

HOOD: HERE'S A DIDENT OUT

"EXHIBIT 20 (C) AT P.74 "

DAVES: I KNOW I DID NOT GET NO
       THREE THOUSAND DOLLAR CHECK
       OR CASH ( SEE: EXHIBIT 20(C)
       SECOND PARAGRAPH ) AND D.A.
       TELEPHONE NO. AT TOP OF PAGES.);

6.

AND "I RECEIVED BACK A COURT ORDER"
I BELIEVE, YOUR HONOR, TO THE
DISTRICT ATTORNEY TO RELEASE THAT
INFORMATION TO ME, "I HAVE ASKED
THE DISTRICT ATTORNEY AND HE SAYS
I CAN'T HAVE THAT INFORMATION".ETC.

THE COURT: "WHO SIGNED YOUR ORDER"

DAVIS: "YOU DID," YOUR HONOR.


4. IT IS WELL ESTABLISHED THAT
   A DEFENDANT HAS A RIGHT TO
   BE AT EACH AND EVERY STAGE OF
   HIS TRIAL AND WITHOUT HIS
   PRESENCE COURT HAS NO JURISDICTION
   TO PRONOUNCE SENTENCE AGAINST
   HIM AS THE COURTS HELD IN
   EX PARTE HAMMONDS, 510 SO2D 153
   (ALA. 1987); CALHOUN V. STATE 530 SO2D
   259, 262 (ALA CRA. APP. 1982) DAVIS V.
   STATE 416 SO2D 444 (ALA CRIM. APP 1982)


7.

5. IT IS WELL ESTABLISHED THAT THE GENEVA COUNTY CIRCUIT COURT JUDGE CHARLES L. WOODS, WILLFULLY AND INTENTIONALLY DEPRIVED PETITIONER OF HIS RIGHTS TO BE PRESENT DURING EVERY STAGE OF HIS TRIAL (SEE: PETITIONERS EXHIBIT 7 WHICH STATES IN PERTINENT PART:

"SO THERE WAS NO WAY I COULD HAVE YOU TRANSFERRED HERE FOR ORAL ARGUMENT."

6. IT IS WELL ESTABLISHED THAT THE GENEVA COUNTY CIRCUIT COURT JUDGE CHARLES L. WOODS, WILLFULLY AND INTENTIONALLY DEPRIVED PETITIONER WENSTON DYKES OF HIS FOURTEENTH AMENDMENT RIGHT TO A FUNDAMENTAL FAIR TRIAL AND DUE PROCESS OF LAW, WHEN HE ENTERED THE JURY ROOM, BEHENED CLOSED DOORS AND INSTRUCTED THE JURY TO RETURN A VERDICT OF GUILTY IN THE FIRST DEGREE BASED ON THE EVIDENCE HE GAVE THEM. (SEE: PETITIONER'S EXHIBIT 8 AT R-382-385)

8.

7. IT IS WELL ESTABLISHED THAT PETITIONER WINSTON DAVIS FILED HIS PRO SE MOTION TO DISCHARGE THE CONVICTION ( SEE: PETITIONER'S EXHIBIT 9 AT R-394 THROUGH 398. AND EXHIBIT 10 " )

8. IT IS WELL ESTABLISHED THAT THE GENEVA COUNTY CIRCUIT COURT JUDGE, CHARLES L. WOODS WILLFULLY AND INTENTIONALLY SENTENCED PETITIONER WINSTON DAVIS " <u>WITHOUT HAVING JURISDICTION</u> " TO 40 YEARS IN THE STATE PENITENTIARY ( SEE: PETITIONER'S PARAGRAPHS 4 THROUGH 7 ABOVE AND SUPPORTED BY EXHIBITS. ) SEE: PETITIONER'S " EXHIBIT 9 AT R-401 "

9. IT IS WELL ESTABLISHED THAT ON <u>JUNE 30, 2000 THE TRIAL COURT JUDGE, APPOINTED THE LAW FIRM OF BIRDSONG AND JOHSON TO FILE AN APPEAL TO THE CONVICTION AND 40-YEARS SENTENCE ( SEE: PETITIONER'S EXHIBIT 9 AT R-405 " )</u>

9.

10. IT IS WELL ESTABLISHED THAT PETITIONER WINSTON DAVIS'S MOTION TO DISCHARGE THE CONVICTION "WAS DEEMED DENIED BY OPPERATIONS OF LAW". (SEE: PETITIONERS "EXHIBIT 11").

11. IT IS WELL ESTABLISHED THAT PURSUANT TO ALABAMA RULES OF APPELLANTE PROCEDURE RULE 3(E) RULE 4(A) RULE 4(B)(L) THE COURT APPOINTED LAW FIRM OF BENSON AND JOHNSON HAD 42 DAYS 6 WEEKS "AFTER HIS MOTION TO DISCHARGE THE CONVICTION WAS DEEMED DENIED ON AUGUST 29, 2000 TO ASSURE THE CONVICTION AND 40 YEAR SENTENCE APPEAL, AND WAS DUE ON OCTOBER 13, 2000, AND IT IS CRYSTAL CLEAR THIS APPEAL WAS NOT DOCKETED UNTIL NOVEMBER 15, 2000 (SEE: PETITIONERS EXHIBIT 11, SOME 30 DAYS UNTIMELY DOCKETED").

10.

12. IT IS WELL ESTABLISHED THAT THE ALABAMA COURT OF CRIMINAL APPEALS HAD "NO JURISDICTION OR AUTHORITY" TO ENTERTAIN THE CONVICTION AND 40 YEAR SENTENCE "BECAUSE IT WAS UNTIMELY DOCKETED"

13. PETITIONER ASSERTS THAT THE LAW FIRM OF BIRDSONG AND JOHNSON WAS INEFFECTIVE OF ASSISTANCE OF COUNSEL ON DIRECT APPEAL TO THE CONVICTION AND 40 YEAR SENTENCE. (SEE: PETITIONER'S EXHIBIT 14")

14. PETITIONER ASSERTS THAT THE ISSUES IN HIS FEDERAL HABEAS CORPUS PETITION § 2254 FILED ON JUNE 21, 2002, CV-02-T-718-S-M.D. ALA 2003 DAVIS V. DELONCH HAD NOT BEEN PROCEDURAL DEBARD AND DO HAVE MERIT, AND DUE TO THE ALABAMA COURT OF CRIMINAL APPEALS "NOT HAVING JURISDICTION OR AUTHORITY" TO ENTERTAIN THE CONVICTION AND 40 YEAR SENTENCE THE ANSWER.

11.

SUPPLEMENTAL ANSWER, SECOND SUPPLEMENTAL ANSWER MUST NOT BE GIVEN ANY CONSIDERATION BY THIS COURT..."

15. PETITIONER FURTHER ASSERTS THAT THE RULE 32 PETITION HE FILED ON JANUARY 20, 2004 PURSUANT TO RESPONDENTS ARGUMENT THAT DAVIS HAD NOT EXHAUST HIS STATE COURT REMEDIES (SEE: "RESPONDENTS ANSWER TO THIS INSTANT PETITION AT P.3 PARAGRAPH 6.") IN THE GENEVA COUNTY CIRCUIT COURT "WAS UNTIMELY FILED" PURSUANT TO RULE 32.2(c)" AS THE COURT HELD IN STATE V. HUTCHERSON 847 SO.2D 379 CITING CRIMINAL LAW — 1586; "TWO-YEAR LIMITATION PERIOD FOR FILING PETITION FOR POST CONVICTION RELIEF IS A MANDATORY, SUBSTANTIVE AND JURISDICTION PROVISION THAT A TRIAL COURT "CANNOT EXCUSE OR WAIVE."

12.

16. ON FEBRUARY 2, 2005, PETITIONER OBTAINED "DOCUMENTS" "PROVEING" THAT THE GENEVA COUNTY DISTRICT ATTORNEY, DAVID EMERY, WITH "CORRUPT MOTIVES" BROUGHT AN UNCONSTITUTIONAL APPLICATION OF THE WORTHLESS CHECK ACT. 13A-9-13 TO "INTENT" CRIMES ACT 13A-8-3 AND 13A-8-4 AGAINST PETITIONER FOR CASES CC-96: 219, 220 & 221, AGAINST A UNITED STATES BANKRUPTCY JUDGE, A. POPE GORDON'S ORDER (SEE: PETITIONER'S EXHIBIT 15 AT PAGES 87-88.) IN A DIRECT VIOLATION OF THE FAIR DEBT COLLECTION ACT 15 USCS 1692 et SEQ, IN A DIRECT VIOLATION OF ARTICLE 1, SECTION 20, ALABAMA CONSTITION OF 1901, WHEN THE $1,280.00 RESTITUTION PAYMENTS BY PETITIONER (SEE: PETITIONER'S EXHIBIT 16 ) WAS DEPOSITED INTO A WORTHLESS CHECK ACCOUNT PURSUANT TO CODE OF ALA.1975 "13A-9-13" AND DEPOSITED THE $1,280.00 RESTITUTION INTO SAID ACCOUNT "FOR HIS OWN PERSONAL GAIN." (SEE: PETITIONER'S EXHIBITS 17 AND 18".)

13.

17. PETITIONER ASSERTS THAT THE
    GENEVA COUNTY CIRCUIT COURT
    JUDGE CHARLES L. WOODS WAS
    WITHOUT JURISDICTION OVER EITHER
    THE PERSON OR SUBJECT MATTER
    TO IMPOSE SENTENCE OR JUDGMENT
    AGAINST PETITIONER, THE ISSUE AT
    BAR WAS A DEBT, BEING REMEDIED
    THROUGH HIS CHAPTER 13 BANKRUPTCY
    PROCEEDING. SEE: PETITIONERS "EXHIBIT
    15".

18. PETITIONER ASSERTS THE CONSTITUTION
    OF ALA. 1901, ARTICLE 1, SECTION 20,
    STATES IN PERTINENT PART:

        " THAT THE GREAT, GENERAL AND
        ESSENTIAL PRINCIPLES OF LIBERTY AND
        FREE GOVERNMENT MAY BE RECOGNIZED
        AND ESTABLISHED. WE DECLARE:
        " . . .
        " THAT NO PERSON SHALL BE IMPRISONED
        FOR DEBT."

                    14.

19. PETITIONER, FURTHER ASSERTS
THAT AFTER THE GENEVA County
DISTRICT ATTORNEY, DAVID EMERY
STOLE THE $1,280.00 RESTITUTION
PAID BY PETITIONER, (SEE: PETITIONERS
EXHIBITS, 16, 17, AND 18," WHICH
WERE, PURSUANT TO CODE OF ALA. 1975
SECTION 13A-9-13.1(B) CLASS "A"
MISDEMEANOR AND HAD PETITIONER
SENTENCED IN CASE CC-99-126
TO 40 YEARS IN THE STATE PENITEN-
TIARY AS AN "HABITUAL OFFENDER
SEE: PETITIONERS "EXHIBIT 9 AT P-388,
389."

20. ON AND BETWEEN FEBRUARY 2, 2005 AND
DECEMBER 2005, PETITIONER GOES
TO THE GENEVA County CLERK'S OFFICE
TIME AND TIME AGAIN AND REQUESTED
COPIES OF CHECKS PAID TO THE
VICTIMS  ASHLEY/JOE THOMAS CC-96-219,
KAULWID NUMBER6 CC-96-220 AND
DOWLING LUMBER CC-96-221 PAID FROM
THE $1,280.00 RESTITUTION PAID BY

15.

PETITIONER, TIME AND TIME AGAIN, THE GENEVA COUNTY CLERK MRS. LAYE "REFUSED" TO PRODUCE SAID COPIES

21. ON FEBRUARY 2, 2006, PETITIONER WINSTON DAVIS FILED MOTION FOR CASES CC-96-219, 220 + 221 FOR RELIEF FROM FINAL JUDGMENT PURSUANT TO CODE OF ALA. 1975 § 6-2-3, "FRAUD, CORRUPTION BAD FAITH THE EQUIVALENT OF FRAUD"

22. ON FEBRUARY 2, 2006, PETITIONER WINSTON DAVIS FILED MOTION FOR CASE CC-94-166 FOR "ORDER TO EXTEND THE STATUTE OF LIMITATION FOR FILING PETITION FOR RELIEF FROM FINAL JUDGMENT PURSUANT TO CODE OF ALA. 1975 § 6-2-3 "FRAUD, CORRUPTION, BAD FAITH, THE EQUIVALENT OF FRAUD" SEE: PETITIONER'S "EXHIBIT 19", SEE: ANSWER OF RESPONDENT AT EXHIBIT (C).

16.

23. ON MARCH 21, 2006, SEEKING DISCOVERY, PETITIONER, GOES TO MONTGOMERY, ALABAMA TO SEE MR. ED PAUL, THE ALABAMA FIRE MARSHALL, REGARDING THE ARSON RING OPERATING IN AND AROUND GENEVA COUNTY, ALABAMA.

24. DURING THIS MEETING, WE DISCUSSED PETITIONER'S EXHIBIT L, AND L(A). MR PAUL INFORM PETITIONER THAT HE HAS A COPY OF PETITIONER'S TAPED RECORDED STATEMENT GIVEN TO HIS INVESTIGATOR MR. GARY CURTEE, ON OCTOBER 18, 1998, AND MR PAUL INFORMED PETITIONER THAT THE GENEVA COUNTY DISTRICT ATTORNEY DAVID EMERY WATERED DOWN THE EVIDENCE WHICH CAUSED THE WARRANT TO BE ISSUED FOR THE ARREST OF GRADY TOLLEY FOR ARSON IN THE SECOND-DEGREE AND GOES TO THE GENEVA COUNTY GRAND JURY AND REQUESTED THAT GRADY TOLLEY BE INDICTED FOR CRIMINAL MISCHIEF A MISDEMEANOR, AND TIED HIS HANDS.

17.

25. DURING THIS MEETING, WE DISCUSSED PETITIONER'S EXHIBIT 21,(A) A FIRE DATED 9/16/95 500 HILLCREST DR. HARTFORD AND 21(B) THE DRYER SHORTED

26. DURING THIS MEETING, WE DISCUSSED PETITIONER'S EXHIBIT 22 AND 22(A) A FIRE DATED 11/4/97 CLOTHES DRYER SHORTED (SEE 22(B) A FIRE CONFINED TO THE LAUNDRY ROOM AREA)

27 DURING THIS MEETING WE DISCUSSED PETITIONER'S EXHIBIT 22(A) A FIRE DATED 11/8/97 IN THE SAME HOME AND "GASOLINE" WAS USED TO COMPLETLY DESTROY SAID HOME.

28 DURING THIS MEETING WE DISCUSSED PETITIONER'S EXHIBIT 22, WHERE PETITIONER REQUESTED DOCUMENTS FROM GRADY TOLLEY HE AND HIS ATTORNEY SUBMITTED A FIRE INCIDENT REPORT OF WESLEY TOLLEY SEE: EXHIBIT 22(A)

18.

29. DURING THIS MEETING, WE DISCUSSED
PETITIONER'S EXHIBIT 23, WHERE
PETITIONER WAS TRYING TO OBTAIN
DISCOVERY TO BRING IN ALL PROPER
PARTY DEFENDANTS, NAMELY NICK
HOLLEY, STATE FARM'S AGENT AND STATE
FARM BY REQUESTING "ALL" STATE
FARM FIRE POLICES WHICH HAD CITY
BANK OF HARTFORD AS LIENHOLDER.

30. DURING THIS MEETING, MR. PAULK
INFORMED PETITIONER THAT "STATE
FARM HAD CONDUCTED AN IN HOUSE
INVESTIGATION" (SEE: PETITIONER'S
EXHIBIT 23 AT PARAGRAPH 3").

31. DURING THIS MEETING, PETITIONER
ASKED MR. PAULK, DO YOU HAVE A COPY
OF STATE FARM'S IN HOUSE INVESTIGATION?
"NO SIR I DO NOT SAYS MR.
PAULK."

19.

32. DURING THIS MEETING, DETECTEOVER
ASKED MR. PAULK, WHEN STATE
FARM CONDUCTED THEIR INHOUSE
INVESTEGATEON AND FOUND OUT THAT
THEIR AGENT NEOL HOLLEY WAS A
PARTY WHO CONSPIRED WITH OTHER
INDIVIDUAL(S) BUSINESS MEN TO
DEFRAUD STATE FARM OUT OF HUNDREDS
OF THOUSANDS OF DOLLARS, WHY WOULD
STATE FARM NOT FILE A COMPLAINT
AND SUBMIT TO YOU A COPY OF THEIR
IN HOUSE INVESTEGATEON FOR
PROSECUTEON?

33. DURING THIS MEETING MR. PAULK
SAYS I CAN'T ANSWER THAT
QUESTEON MR. OAKS, BUT THERE
IS SOMETHING WRONG HERE BECAUSE
IN LATE 2003, STATE FARM GOES
TO THE ALABAMA INSURANCE COMMISSE-
ONER, SAYS THEY EN LOSSING MONEY
ON "FIRE POLICYS" ASKED FOR AND RECEIVED
A POLICY "INCREASE."

20.

## ARGUMENTS

AS WHY THIS HONORABLE COURT SHOULD
GRANT PETITIONER WINSTON DAVIS
RELIEF SOUGHT IN THIS INSTANT
PETITION CIVIL NO. 01; 06-CV-842 M.H.T.

## ARGUMENT ONE:

BECAUSE PETITIONER WINSTON
DAVIS IS INNOCENT OF "ALL" CRIMES
HE WAS CHARGED WITH IN STATE
COURT AND CONVICTED OF AND SENTENED
TO THE STATE PENITENTIARY FOR, AND
SUPPORTED BY CONSTITUTIONAL PLAIN
ERROS AND "NEW RELIABLE EVIDENCE"
THAT HE REQUESTED FROM THE STATE
AS FOUND IN PARAGRAPH 3 ABOVE
CITING EXHIBITS 20, 20(A) 20(B) 20(C)
ABOVE CITING EXHIBIT 2". AND EXHIBIT
13, 15, 16, 17 AND 18 THAT WAS NOT
PRESENTED AT THE TRIAL COURT. CITING
HIGH V. HEAD 209 F. 3D. 1257, 1269,
(11TH CIR. 2000); SCHLUP V. DELO
513 U.S. 298-324 (1995) "THE MISCARRIAGE

21.

OF JUSTICE STANDARD IS DIRECTLY LINKED TO INNOCENCE". SCHLUP, 513 U.S. AT 321 AND AT ID 315 THIS EXCEPTION APPLIES WHERE A PETITIONER "ESTABLISHES THAT CONSTITUTIONAL VIOLATIONS HAS RESULTED IN THE CONVICTION OF ONE WHO IS ACTUALLY INNOCENT". ( AS FOUND IN THIS INSTANT PETITION AT PARAGRAPHS 5,6,8,10,11,12, 13, 14, 16, 17, 19(A)(B) (C)  20,21, 22, 23 24,25, 26, 27,28,29, 30, 31, AND PARAGRAPHS 3, CITING EXHIBITS 20, 20(A) 20(B) 20(C) PARAGRAPH 10, 11, 12, 13, 16, 17, 19,20 , AND EXHIBITS CITED THEREIN THIS RESPONSE TO THIS HONORABLE COURT ORDER TO SHOW CAUSE AS TO WHY HIS HABEAS CORPUS PETITION SHOULD NOT BE DISMISSED )

PETITIONER ASSERTS HE HAS MEET THE STANDARD SET FORTH IN MURRAY V. CARRIER 477 U.S. 478, 496 (1986 ) , WITHOUT THE CONSTITUTIONAL VIOLATIONS NO REASONABLE "FARE MINDED JUROR WOULD HAVE FOUND WINSTON

22

PROVES GUILTY BEYOND A REASONABLE
DOUBT "

PETITIONER ASSERTS THAT NOT ONLY
IS HE AN ADVOCATE OF HIS CONSTITUTIONAL
RIGHTS TO HAVE A FUNDAMENTAL
FAIR TRIAL, AND DUE PROCESS OF LAW,
HE ALSO IS AN ADVOCATE FOR ALL
THE PEOPLE OF THE UNITED STATES
AND WHEN ONE OF US IS DENIED
JUSTICE, ALL OF US, IS DENIED
JUSTICE, (A GREAT MAN ONCE SAID
AN INJUSTICE ANYWHERE IS AN
INJUSTICE EVERYWHERE MARTIN
L. KING") AND THE ONLY WAY TO
DETER OTHER SIMILARLY SITUATED
FROM SUCH WILLFULLY AND INTENTIONALLY
CONDUCT IN THE FUTURE IS TO
GRANT PETITIONER WINSTON DAVES
RELIEF SOUGHT IN THIS INSTANT
PETITION.

WHEREFORE
        THE ABOVE CONSIDERED

23.

FAILURE OF THIS COURT TO GRANT
THIS INSTANT PETITION WILL
RESULT IN A MISCARRIAGE OF
JUSTICE FOR ALL THE PEOPLE
WHO LIVE IN A FREE COUNTRY.


ARGUMENT TWO:

PETITIONER, ASSERTS THAT
THE COURT HELD IN STATE V.
HUTCHERSON 847 SO2D 378. CITING
CRIMINAL LAW AT P.379, AT[87
JURISDICTIONAL DEFECTS CANNOT
BE WAIVED OR EXCUSED" AND AT
PAGE 385
   THE COURT OF THIS STATE AS OUR
RESEARCH SHOWS, HAVE NEVER
RECOGNIZED AN EXCEPTION TO THE
LIMITATION PERIOD IN RULE 32.2 (C)
THIS RULE IS MANDATORY, NOT PERMISSIVE,
AND SPECIFICALLY PROVIDES THAT A
TRIAL COURT SHALL NOT ENTERTAIN ANY

24

PETITION IF THAT PETITION IS
"FILED OUTSIDE THE LIMITATION
PERIOD AND THAT PETITION FAILS
TO RAISE A JURISDICTIONAL DEFECT"
CITING 820 So2D AT 888. JURISDICT
DEFECTS CANNOT BE WAIVED OR
EXCUSED, CITING MITCHELL V. STATE
777 So2D 312 (ALA. CRIM APP. 2000)
CITING LANCASTER V. STATE, 638 So2D
1370 (ALA. CRIM APP. 1993), AFTER
REMAND 638 So2D 1374 (ALA CRIM
APP. 1993, CERT. QUASHED, 638 So2D
1375 (ALA. 1994)

PETITIONER ASSERTS THAT THIS
INSTANT PETITION WAS FIRST (HEARD)
IN THE GENEVA COUNTY CIRCUIT
COURT AND HE FIRST FILED MOTION
FOR ORDER TO EXTEND THE STATUTE
OF LIMITATION (SEE: PETITIONER
EXHIBIT 19) AND BEFORE PETITIONER
COULD OBTAIN HIS LAST PART OF
THE CONSPIRACY (SEE PARAGRAPHS
23 THROUGH 35 WITH EXHIBITS CITED
THERE IN) THE GENEVA COUNTY CIRCUIT

25.

COURT DENIED PETITIONER'S MOTION
WITHOUT GIVEN PETITIONER
OPPERTUNITY TO FILE THIS
INSTANT PETITION WHICH DOES
HAVE JURISDICTIONAL DEFECTIVES
WHICH CANNOT BE WAIVED AND
PETITIONER ASSERTH THIS INSTANT
PETITION WAS FILED WELL WITHIN
THE ONE-YEAR LIMITATION PERIOD
PURSUANT TO TITLE 28 USC §2244 (D? (1)
SEE: PETITIONER'S EXHIBIT 19,
ANSWER OF RESPONDENT "EXHIBIT C."

THEREFORE
     THE ABOVE CONSIDERED

     PETITIONER ASSERTS THIS PETITION
WAS TIMELY FILED AND FAILURE
OF THIS COURT TO ENTERAIN THIS
PETITION WILL RESULT IN A
MISCARRIAGE OF JUSTICE.

26.

RESPECTFULLY SUBMITTED THIS 16TH
DAY OF NOVEMBER 2006   Winston Davis
                        WINSTON DAVIS
                        519 SANTO CREEK RD
                        DOTHAN, AL 36303
                        334 797-9091


CERTIFICATE OF SERVICE


I HEREBY CERTIFICATE THAT I HAVE
PLACED A COPY OF THE FOREGOING
ATTACHED WITH THE HEREIN ON
NOV. 16, 2006 PROPERLY ADDRESSED
AND POSTAGE PREPAID FIRST CLASS
MAIL IN THE UNITED STATES
MAIL TO ALABAMA ATTORNEY
GENERAL 11 SOUTH UNION STREET
MONTGOMERY, AL 36130.
                        Winston Davis


27.

*PETITIONER - WINSTON DAVIS'S*
*EXHIBIT 14*

# In The Court of Criminal Appeals
## State of Alabama

Winston Davis, AIS# 207010

Appellant,

VS.

CASE No 00-0344

State of Alabama

Appelle

## Motion to Allow Appellant Counsel to Withdraw and Appoint Substitute Counsel

Comes Now Appellant, Winston Davis, and moves this Honorable Court to Allow Honorable L. Scott Johnson Jr Appellants Court appointed Counsel to Withdraw and for this Court to appoint New Counsel to perfect this Appeal.

Appellant assert Current Counsel refuses to talk to him or Correspond and has been derilict in his duty Concerning this Appeal thus far and Futher if this Court will Not remove current Counsel, Appellant wishes to brief the issues on Appeal, Not current Counsel.

Done on this 1st day of Dec. 2000

Respectfully Submitted
Winston Davis
#207010 C1-G2.
Winston Davis
ECF, P.O. Box 8

Certificate of Service

I hereby certify that I have served a copy of " Motion to Allow Appellant Counsel to Withdraw and appoint Substitute Counsel, on the persons who's addresses are below by placing in the U.S mail postage pre-paid.

Alabama Attorney General
Criminal Appeals
11 South Union St
Montgomery, AL
            36130

Done on this 15T day of Dec. 2000

Winston Davis
202010, C1-82
Winston Davis,
ECF
P.O BOX 8
Elmore, AL
            36025

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives and Records Administration, that the attached reproduction(s) is a true and correct copy of documents in his custody.



| SIGNATURE | | |
|---|---|---|
| NAME | | DATE |
| James J. McSweeney | | 10-3-04 |
| TITLE | | |
| Regional Administrator | | |
| NAME AND ADDRESS OF DEPOSITORY | | |
| National Archives and Records Administration Southeast Region 1557 St. Joseph Avenue East Point, GA 30344 | | |

U.S. GOVERNMENT PRINTING OFFICE: 1996 – 403-191 / 39074                    NA FORM 13040 (10-88)

is the_ _fore ORDERED that _he _rustee _e _ischarged, reli_ _ed of hi_ trust, and that he and the sureties on this bond _ _ releas_ _ from further liability thereunder.

I_ _is furth_ _ ORDERED that this case be, and the same is hereb_ CLOSED.

D_ _ed:    JUN 2_ _997

_____
Bankruptcy Judge

PETITIONER WINSTON _HUSS'S

EXHIBIT

15                    47

U.S. Bankruptcy Court for the **MIDDLE DISTRICT OF ALABAMA**

U.S. BANKRUPTCY COURT - POST OFFICE BOX 1248, MONTGOMERY, AL    36192

a Petition for Relief under chapter 13 of Title 11, U.S. Code, filed by or
against the below-named Debtor(s) on February 20, 1996:

DEBTOR:    **WINSTON DAVIS of 4358 OLD RAILROAD BED RD,  HARVEST AL
35749,  AKA  CONTRACTOR WINSTON DAVIS,  SSAN: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**

T. DEBTOR: **MARIA A DAVIS,  SSAN: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**

CASE NO. **96-00718-APG-13**

| | | |
|---|---|---|
| **WINSTON DAVIS**<br>**4358 OLD RAILROAD BED RD**<br>**HARVEST AL 35749** | **FILED**<br><br>JUN 2 3 1997<br><br>KATHRYN A HANK CLERK<br>U.S. BANKRUPTCY COURT<br>MONTGOMERY ALABAMA | **ORDER AND NOTICE**<br>**BY THE COURT** |

## ORDER APPROVING ACCOUNT, DISCHARGING
## TRUSTEE AND CLOSING THE CASE

It appearing to the Court that the trustee in this case
has performed all of the duties required of him in the admin-
istration of this case; that he has made distribution by order
of this Court, and has rendered a full and complete account
thereof, and no adverse interest being represented;

It is therefore ORDERED that the trustee be discharged and
relieved of his trust, and that he and the sureties on this
bond be released from further liability thereunder.

It is further ORDERED that this case be, and the same is
hereby CLOSED.

Dated:    JUN 2 3 1997

_____
Bankruptcy Judge

PETETIONER - WINSTON DAVIS'S
EXHIBIT
15

44

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

WINSTON DAVIS
Soc. Sec. No. 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

MARIA A DAVIS
Soc. Sec. No. 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

4358 OLD RAILROAD BED RD
HARVEST AL  35749

        Debtor.

Case No. 96-0718-APG
Chapter 13



FILED

JUN 1 1 1997

MHRYN M. HAWK, CLERK
BANKRUPTCY COURT
MONTGOMERY, ALABAMA

## ORDER DISMISSING BANKRUPTCY CASE

The chapter 13 trustee filed  a motion under 11 U.S.C. § 1307 to dismiss this bankruptcy case because of a failure by the debtor to carry out the terms of the debtor's proposal.

Upon consideration  of the motion after  notice to parties in interest,  the  court  concludes  that  the  motion  is due  to be granted.  Accordingly, it is

ORDERED that this bankruptcy case is DISMISSED.  It is

FURTHER ordered  that the chapter  13 trustee's  office shall file and  serve on  all creditors  a final  account reflecting the receipts and disbursements in this case.

Done this 02nd day of June, 1997.

                            *A. Pope Gordon*
                            A.  POPE GORDON
                            United States Bankruptcy Judge

c: Debtor
   Attorney for Debtor
   Chapter 13 Trustee
   All Creditors

42

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

# FILED

In re

**WINSTON DAVIS**
Soc. Sec. No. 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

**MARIA A DAVIS**
Soc. Sec. No. 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

4358 OLD RAILROAD BED RD
HARVEST AL  35749

Case No. 97 MAR 28 AM 8 14
Chapter 13

U.S. BANKRUPTCY CLERK
MONTGOMERY ALABAMA

            Debtor.

## MOTION TO DISMISS

Comes now Curtis C. Reding, Chapter 13 Standing Trustee for this district, and moves the Court to dismiss the above entitled case pursuant to 11 U.S.C., § 1307(c), in that the debtor's actions have caused unreasonable delay that is prejudicial to creditors.

Dated: March 27, 1997

                            CURTIS C. REDING
                            Trustee

## O R D E R

Upon consideration of the Trustee's Motion to Dismiss, it is ORDERED that the above named appear before the Court at 10:00 AM on May 21, 1997        , at the United States Bankruptcy Court, Dothan, Alabama, and show cause, if any, why this case should not be dismissed.

Done, this the 27th day of March, 1997.

                            KATHRYN M. HAWK
                            Clerk, U.S. Bankruptcy Court

cc: KENNETH C SHEETS JR
    P O BOX 2093
    DOTHAN AL  36302

4/



FILED

JAN 3 1 1997

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                        Case No. 96-0718-APG
                                             Chapter 13
WINSTON DAVIS
MARIA A. DAVIS,

                Debtors.

### ORDER GRANTING MOTION TO REINSTATE

This case was ordered dismissed from the bench in open court on December 17, 1996 because of the failure of the debtors to make payments to the trustee under the terms of the confirmed chapter 13 plan.

The debtors filed a motion on December 30, 1996 to reconsider the order of dismissal and reinstate the case to allow the husband to voluntarily dismiss and to allow the wife to convert the case to a case under chapter 7.

Upon consideration of the motion, it is

ORDERED that the motion is GRANTED, and the order of dismissal is hereby VACATED, and this case is REINSTATED for the purposes stated above.

Done this  _31_  day of January, 1997.

                              _Rodney R. Steele_
                              United States Bankruptcy Judge

c: Debtors
   Kenneth C. Sheets, Jr., Attorney for Debtors
   W. McCollum Halcomb, Attorney for Bankers Trust of Madison
   Curtis C. Reding, Trustee

40

P-6



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

WINSTON DAVIS
MARIA A. DAVIS,

Debtors

Case No. 96-00718-APG
Chapter 13

## ORDER SETTING HEARING

The motion filed by the debtors, on December 30, 1996, and designated MOTION TO RECONSIDER AND REINSTATE, is set for hearing at the United States Bankruptcy Court, Dothan, Alabama, on January 29, 1997, at 10 a.m.

ORDERED this January 17, 1997.

_____
United States Bankruptcy Judge

c: Debtors
   Kenneth C. Sheets Jr., Attorney for Debtors
   Curtis Reding, Trustee

orders.17

29

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

FILED

DEC 30 96

IN RE:                                CASE NO:  96-00718

WINSTON DAVIS and                     CHAPTER 13
MARIA A. DAVIS

KATH... ...
U.S. BANK... ...TY COURT
MONTGO... ...Y, ALABAMA
DEPUTY CLERK

## MOTION TO RECONSIDER AND REINSTATE

Come now the debtors, by and through counsel and moves this Honorable Court to reconsider the dismissal of the above debtor's Chapter 13 bankruptcy and reinstate the same.  In support thereof debtor submits the following:

1.   There has been a good faith effort by the debtors to conform to the payment schedule.

2.   Debtor Winston Davis has had two changes of employment since the institution of these proceedings.

3.   Debtor Winston Davis should this Honorable reinstate the above proceedings will voluntary dismiss his bankruptcy claim.

4.   Debtor Maria A. Davis will make a motion to convert at that time.

Respectfully submitted this _24_ day of December 1996.

KENNETH C. SHEETS, JR.
Attorney for Debtors
P. O. Box 2093
Dothan, AL 36302
(334) 671-4280

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Trustee in the above cause, Curtis C. Reding, P.O. Box 173, Montgomery, AL  36101-0173 by placing a copy of the same in the United States Mail, postage prepaid, and properly addressed, this the _24_ day of December, 1996.

KENNETH C. SHEETS, JR.

38

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

re

**Case No. 96-0718-APG**
**Chapter 13**

WINSTON DAVIS
Soc. Sec. No. 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

MARIA A DAVIS
Soc. Sec. No. 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

506 W MAIN ST
HARTFORD AL  36344

Debtor.

FILED

OCT 2 9 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

## MOTION TO DISMISS

Comes now Curtis C. Reding, Chapter 13 Standing Trustee for this district, and moves the Court to dismiss the above entitled case pursuant to 11 U.S.C., § 1307(c), in that the debtor's actions have caused unreasonable delay that is prejudicial to creditors.

Dated: October 28, 1996

CURTIS C. REDING
Trustee

## O R D E R

Upon consideration of the Trustee's Motion to Dismiss, it is ORDERED that the above named appear before the Court at 10:00 AM on November 20, 1996 , at the United States Bankruptcy Court, Dothan, Alabama, and show cause, if any, why this case should not be dismissed.

Done, this the 28th day of October, 1996.

KATHRYN M. HAWK
Clerk, U.S. Bankruptcy Court

cc: KENNETH C SHEETS JR
P O BOX 2093
DOTHAN AL  36302

37

P-9

FILED

OCT - 1 1996

KATHRYN M. HAWK, CLERK
U.S BANKRUPTCY COURT
MONTGOMERY, ALABAMA

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| In re | Chapter 13 |
| ROY EDWARD HARRISON | Case No. 91-04145-APG |
| CARL E. MCCREE<br>PHYLLIS M. MCCREE | Case No. 94-01916-APG |
| THENA MONIQUE COLEMAN | Case No. 95-04898-APG |
| WINSTON DAVIS<br>MARIA A. DAVIS | Case No. 96-00718-APG |
| VERNON B. JOHNSON, JR.<br>REBECCA L. JOHNSON | Case No. 96-00442-APG |
| RICHARD P. ARMOUR<br>RHONDA K. ARMOUR | Case No. 95-04034-APG |
| WILLIE FRANK BROOKS | Case No. 94-03075-APG |
| ANTHONY L. TRUITT | Case No. 95-01410-APG |
| DONALD CHARLES PROKOPCHUK<br>NELDA GAYLE PROKOPCHUK | Case No. 91-05777-APG |
| ROBERT L. MARTIN<br>DONITA S. MARTIN | Case No. 92-00848-APG |
| JERRY J. JONES, SR. | Case No. 94-02073-APG |
| MARKUS DEWAYNE CALDWELL | Case No. 95-00275-APG |
| DANNY RALPH HALL<br>DONNA JEAN HALL | Case No. 95-00413-APG |
| JAMES MELVIN ARMSTRONG | Case No. 95-01561-APG |
| CHRISTINE TERRY | Case No. 95-03588-APG |
| CATHY KEY | Case No. 95-04965-APG |
| ROBERT LEROY WILLS | Case No. 91-02665-APG |
| EDDIE C. HANCOCK | Case No. 93-04159-APG |
| BOBBI JENKINS | Case No. 95-01606-APG |
| SCOTTY LEE ENFINGER<br>LORIE JANETTE ENFINGER | Case No. 95-04124-APG |

36

P-10

| | |
|---|---|
| TIMOTHY E. DEAN<br>DERITA K. DEAN | Case No. 95-04907-APG |
| RUBEN L. SANTOS | Case No. 96-00834-APG |
| MELISSA D. MATHIS | Case No. 94-02153-APG |
| ROSSI M. BURKS | Case No. 94-02333-APG |
| BRENDA L. REEVES | Case No. 94-04608-APG |
| BRENDA M. JONES | Case No. 95-00237-APG |
| ROBERT GLEN TRAYLOR<br>ADDIE TRAYLOR | Case No. 95-01318-APG |
| RALPH W. SUGGS, JR.<br>TERESA A. SUGGS | Case No. 95-03161-APG |
| JAMES IVERY | Case No. 95-03622-APG |
| JELANE C. PRICE | Case No. 95-03629-APG |
| CHARLES EDWARD CHINN<br>GIDGET ANN CHINN | Case No. 91-04181-APG |
| RUTH HUSSEIN | Case No. 95-02434-APG |
| JOE H. MCLENDON<br>ELOUISE MCLENDON | Case No. 95-00726-APG |
| RANDALL L. WELLS<br>REBECCA T. WELLS | Case No. 95-03968-APG |

Debtors

## ORDER ON TRUSTEE'S MOTIONS TO DISMISS CASES

The chapter 13 trustee filed motions to dismiss the above-styled cases because of a default by these debtors in payments under their confirmed chapter 13 plans.

The motions came on for hearing on September 25, 1996.

Counsel for these debtors represented that these debtors desire to continue in chapter 13.

These motions to dismiss are the first motions to dismiss filed in these cases within the last 12 months. Accordingly, it is

p-11

ORDERED that the motions are DENIED.

However, if a default in payments by one of these debtors necessitates another motion to dismiss by the trustee within 12 months of the instant motion, the debtor's case will most likely be dismissed.

Done this ___1___ day of __Oct.___, 1996.

_____
United States Bankruptcy Judge

c: Debtors
   Attorneys for Debtors
   Curtis C. Reding, Trustee

P-12

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

re                                          Case No. 96-0718-APG
                                            Chapter 13
NSTON DAVIS
oc. Sec. No. 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

MARIA A DAVIS                               
Soc. Sec. No. 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                   FILED

506 W MAIN ST                               AUG 29 1996
HARTFORD AL   36344                         KATHRYN M. HAWK, CLERK
                                            U.S. BANKRUPTCY COURT
           Debtor.                          MONTGOMERY, ALABAMA

### MOTION TO DISMISS

Comes now Curtis C. Reding, Chapter 13 Standing Trustee for
this district, and moves the Court to dismiss the above entitled
case pursuant to 11 U.S.C., § 1307(c), in that the debtor's
actions have caused unreasonable delay that is prejudicial to
creditors.

Dated: August 28, 1996

_____
CURTIS C. REDING
Trustee

### O R D E R

Upon consideration of the Trustee's Motion to Dismiss, it is
ORDERED that the above named appear before the Court at 10:00 AM
on September 25, 1996, at the United States Bankruptcy Court,
Dothan, Alabama, and show cause, if any, why this case should not
be dismissed.

Done, this the 28th day of August, 1996.

_____
KATHRYN M. HAWK
Clerk, U.S. Bankruptcy Court

cc: KENNETH C SHEETS JR
    P O BOX 2093
    DOTHAN AL  36302

35

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

FILED

JUL 11 96

KATHRYN H. ... CLERK
... COURT
MONTGOMERY, ALABAMA
DEPUTY CLERK

Case No. 96-0718-APG
Chapter 13

re
...STON DAVIS
...c. Sec. No. 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
...ARIA A DAVIS
...oc. Sec. No. 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
            Debtor.

### ORDER CONFIRMING CHAPTER 13 PLAN

The debtor's plan was filed on Tue May 28, 1996.  A summary of the plan or the final modification was transmitted to the creditors under Fed R Bankr P 3015.  The court finds that the plan meets the requirements of 11 U.S.C. § 1325.  Therefore, it is

ORDERED that the debtor's Chapter 13 plan is confirmed, with the following provisions:

1.   Payments:
     Amount of each payment: $ 1,600.00  monthly.
     Period of payments: 059 months or until 100.00 % is paid on allowed
        unsecured claims.

     Payable to:   Chapter 13 Trustee
                   P. O. Box 173
                   Montgomery, AL   36101-0173

     Payroll deduction:  No Payroll deduction is ordered.

2.   Senior expenses and claims to be paid:

ADMINISTRATIVE EXPENSES

| | | |
|---|---|---|
| Debtor's Attorney | Attorney's fee allowed | $   900.00 |
| Clerk of Court | Filing fee | $   160.00 |
| Chapter 13 Trustee | Trustee administrative fee | $     .00 |
| Chapter 13 Trustee | Notice fee @ $.50 per copy. | $    26.00 |

SECURED, PRIORITY, AND SPECIAL CLAIMS

| CREDITOR | COLLATERAL VALUE | INTEREST | PAYMENTS |
|---|---|---|---|
| BANKERS TRUST OF MADISON | $ 14,500.00 | 10.00 % | $   273.50 |
| KIRKLAND PLUMBING | $  4,900.00 | 10.00 % | $    98.00 |
| ROBERT CONKLIN | $    624.00 | 10.00 % | $    20.00 |
| CONCRETE SERVICES | $    412.00 | 10.00 % | $     5.00 |
| CONCRETE INC | $     91.87 | 10.00 % | $     8.00 |
| DOWLING LUMBER | $  1,607.20 | 10.00 % | $    35.00 |
| DRYWALL SUPPLY | $    400.00 | 10.00 % | $    12.00 |
| GENEVA FURNITURE | $    217.00 | 10.00 % | $    15.00 |
| LOWES | $    938.05 | 10.00 % | $    25.00 |
| DOORS FLOORS & MORE | $  1,449.36 | 10.00 % | $    30.00 |
| HENRY PATE JR | $    500.00 | 10.00 % | $    12.00 |
| INTERNAL REVENUE SERVICE | $ 13,726.73 | .00 % | $   286.00 |
| BANKERS TRUST OF MADISON | $ 13,500.00 | 10.00 % | $   273.50 |

p-14

payments on allowed unsecured claims (including undersecured claims) will be made after senior expenses and claims are paid.

Dated this the 10th day of July, 1996.

A. POPE GORDON
United States Bankrupcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

WINSTON DAVIS AND ) Chapter 13
MARIA A. DAVIS ) Case No. 96-0718-90

**FILED**

96 JUN 24 AM 9:44

KATHE... CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

### CHAPTER 13 PLAN OR SUMMARY

1. **PAYMENTS TO TRUSTEE:** The debtor(s) shall pay $ 1600.00 to the Chapter 13 trustee each  month  beginning _____

2. **DISTRIBUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:**

**First:** **ADMINISTRATIVE CLAIMS** under 11 USC §503(b). The debtor's attorney's fee is $ 900.00 _____

**Second:** **SECURED CLAIMS:**

a. **Secured claims being paid through the trustee:**

| Creditor | Amount of Debt | Value of Collateral | Interest Under Plan | Specified Monthly Payment |
|---|---|---|---|---|

SEE ATTACHED LIST

b. **Prepetition defaults being cured through the trustee:**

| Creditor | Amount of Arrearage | Annual Interest | Date Post-Petition Payment Will Resume | Specified Monthly Payment |
|---|---|---|---|---|

NONE

c. **Secured claims to be paid directly by the debtor or other party to the creditor:**

| Creditor | Amount of Debt | Value of Collateral | Contractual Payment |
|---|---|---|---|

NONE

d. **Secured claims to be satisfied by the surrender and return of collateral:**

| Creditor | Description of Collateral | Amount of Debt | Value of Collateral |
|---|---|---|---|

NONE

**Third:** **PRIORITY CLAIMS** (11 USC §507(a)(2) to (8)):

| Creditor | Amount of Debt | Specified Monthly Payment |
|---|---|---|
| INTERNAL REVENUE SERVICE | 13,726.73 | 229.00 |

32

SUMMARY - Continued

p-18

SPECIALLY CLASSIFIED UNSECURED CLAIMS:

| Creditor | Basis for Classification | Amount of Debt Specially Classified | Specified Monthly Payment |
|---|---|---|---|

SEE ATTACHED LIST

Fifth:     **UNSECURED CLAIMS**, including the unsecured portion of secured claims, a pro rata amount equal to __100__% of the claim. If unsecured creditors are to receive less than 100% of their claims, the debtor(s) will pay all projected disposable income to the trustee for at least 36 months.

3. **DURATION OF PLAN**

The expected duration of this plan is __60__ months.

4. **PROVISIONS FOR UNSCHEDULED, POSTPETITION, OR LATE FILED CLAIMS ARE AS FOLLOWS:**

TO BE DETERMINED BY THIS COURT

5. **PROVISIONS FOR PROPERTY OF THE ESTATE (See 11 U.S.C. §1303, §1306 and §1327):**

NONE

6. **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES (See 11 U.S.C. §1322(b)(7) and §365):**

NONE

7. **OTHER PROVISIONS:**

NONE

_____
DEBTOR

_____
JOINT DEBTOR

DATED: _____6-24-_____ 19_96_

## ATTACHMENT TO CHAPTER 13 PLAN OR SUMMARY

### (a)

### SECURED CREDITORS BEING PAID THROUGH THE TRUSTEE

| CREDITOR | TOTAL CLAIM | MONTHLY PAYMENT (10% Interest included) |
|---|---|---|
| BANKERS TRUST (GMC TRUCK) | $14,500.00 | $309.00 |
| BANKERS TRUST (BMW CAR) | 13,500.00 | 286.00 |
| CONCRETE SERVICES | 412.00 | 9.00 |
| CONCRETE, INC. | 91.87 | 5.00 |
| DOORS, FLOORS, & MORE | 1,449.36 | 31.00 |
| DOWLING LUMBER CO. | 1,607.20 | 35.00 |
| DRYWALL SUPPLY | 400.00 | 9.00 |
| GENEVA APPLIANCE | 217.00 | 5.00 |
| KIRKLAND PLUMB. & ELEC. | 4,900.00 | 105.00 |
| LOWES OF DOTHAN | 938.05 | 20.00 |
| HARRY PATE, JR. | 500.00 | 11.00 |
| ROBERT CONKLIN | 624.00 | 14.00 |
| TOTAL CLAIMS | $39,139.48 (+10% INTEREST) | $839.00 |

ATTACHMENT TO CHAPTER 13 PLAN OR SUMMARY

(FOURTH)

UNSECURED CREDITORS BEING PAID THROUGH THE TRUSTEE

| CREDITOR | TOTAL CLAIM | MONTHLY PAYMENT |
|---|---|---|
| DEPT. OF REVENUE | $1,579.58 | 26.00 |
| HOUSTON HEART CENTRE | 157.50 | 2.50 |
| INTERNAL REVENUE SERVICE | 13,994.92 | 235.00 |
| RON'S FIRESTONE | 592.36 | 10.00 |
| SOUTHEASTERN CREDIT BUREAU | 189.64 | 3.00 |
| SCOTTY STARLING | 1,350.00 | 22.50 |
| STERLING PRACTICE | 177.00 | 2.50 |
| TRIAD | 380.00 | 6.50 |
| TV INDEX | 520.00 | 8.00 |
| TOTAL CLAIMS | $18,941.00 | $316.00 |

CHAPTER 13 MEMORANDUM OF MEETING OF CREDITORS AND PLAN - Fri Jun 14, 1996

WINSTON DAVIS
MARIA A DAVIS

Case No. 96-00718   DP ✓ IO __

*(self-emp.)*

NOTES _____

3:41 app. Mr. Lewis Terry // Mr. Halcomb representing Bankers Trust

Mr. Holmes // Dowling Lumber & Kirkland Plumbing - Do object

_____

_____

_____

Attorney: KENNETH C SHEETS JR       Attorney Fee: $       900.00

                                  $1,600.00

Payments under the plan are fixed at $1,000.00 monthly,          and the plan
proposes to pay the value of the security on each secured claim and to pay the
unsecured balances and other unsecured claims at the rate of  5.00  percent.
Plan months: 60 59       Value _____ 1st Mortgage ( 100% )
Composition Plan:
    1) Home _____   2nd Mortgage _____   Other liens _____

    2) Other Real Estate _____   Value _____   Mortgage _____

    3) Real Estate Transfers _____   Value _____   Date _____

    4) Property Unscheduled _____   Value _____

Is the amount to be paid to unsecured creditors equal to or greater than
   that such creditors would receive in a Chapter 7 Case? _____

|  | YES | NO |  | YES | NO |
|---|---|---|---|---|---|
| Does the plan comply with the the provisions of Chapter 13? | ___ | ___ | Has the plan been proposed in good faith? | ___ | ___ |
| Has good cause been shown for plan extending beyond 3 years? | ___ | ___ | Has the debtor claimed the Avoiding powers of 522(f)? | ___ | ___ |

The following creditors either hold claims or have been determined to be
secured to the extent of the value of the collateral as reflected below,
and the following specified monthly payments are proposed by the debtor
and recommended.

| PAYMENT | CREDITOR | INTEREST RATE | COLLATERAL | VALUE OF COLLATERAL |
|---|---|---|---|---|
| 273.50 $ 545.00 | BANKERS TRUST OF MADISON | .00 | 93 GMC YUKON | 14,500.00 |
| $ 98.00 | KIRKLAND PLUMBING | .00 | NSF CHARGES | 4,900.00 |
| $ 20.00 | ROBERT CONKLIN | .00 | ARREARS ON LEASE | 624.00 |
| $ 5.00 | CONCRETE SERVICES | .00 | PENDING LEGAL ACTION (NSF) | 412.00 |
| $ 8.00 | CONCRETE INC | .00 | NSF CHECK | 91.87 |
| $ 35.00 | DOWLING LUMBER | .00 | NSF CHECK | 1,607.20 |
| $ 12.00 | DRYWALL SUPPLY | .00 | MISC MATERIALS | 400.00 |
| $ 15.00 | GENEVA FURNITURE | .00 | NSF CHECK | 217.00 |
| $ 25.00 | LOWES | .00 | NSF CHECK | 938.05 |
| $ 30.00 | DOORS FLOORS & MORE | .00 | NSF CHECK | 1,449.36 |
| $ 12. | HENRY PATE JR | .00 | NSF CHECK | 500.00 |

## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF ALABAMA

In re

WINSTON DAVIS
Soc. Sec. No. 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

MARIA A DAVIS
Soc. Sec. No. 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

4358 OLD RAILROAD BED RD
HARVEST AL  35749

          Debtor.

Case No. 96-0718-APG
Chapter 13



### FINAL ACCOUNT OF TRUSTEE

   I, Curtis C. Reding, respectfully file this my final account disclosing receipts and disbursements in this case.

### RECEIPTS

| | | |
|---|---|---:|
| GROSS RECEIPTS | | 4,375.00 |
| Less Refunds While Case Active | | .00 |
| Less Refunds to Debtor at Closing | | .00 |
| NET RECEIPTS | | 4,375.00 |

### DISBURSEMENTS

| | | |
|---|---:|---:|
| Payments to Creditors (see attached) | | 3,037.22 |
| Secured Creditors | 2,190.19 | |
| Interest | 619.60 | |
| Unsecured Creditors | 14.10 | |
| Interest | 213.33 | |
| Priority Creditors | .00 | |
| Inerest | .00 | |
| Filing Fee | | 160.00 |
| Trustee Expense and Commission Fee | | 228.78 |
| Attorney Fee | | 900.00 |
| Insurance | | .00 |
| Notice Fee | | 49.00 |
| TOTAL DISBURSEMENTS | | 4,375.00 |

   I, Curtis C. Reding, certify that the above record of receipts and disbursements in this case is true and complete, and the estate has been fully administered.

                                      Curtis C. Reding, Trustee

Sworn to and subscribed before me
this  **JUN 9 - 1997**

                                Notary Public

*í  :*  *í = Ꝓ-23*  *✗ ✗*

# PAYMENTS TO CREDITORS

Case Number - 96-0718

**SECURED CREDITORS**

| Clm# | Cred# | | Interest | | Principal |
|------|-------|---|----------|---|-----------|
| 0001 | 039712 | BANKERS TRUST OF MADISON | $ 619.60 | $ | 760.19 |
| 0004 | 203841 | ROBERT CONKLIN | $ .00 | $ | .00 |
| 0012 | 402159 | DRYWALL SUPPLY | $ .00 | $ | .00 |
| 0031 | 003751 | INTERNAL REVENUE SERVICE | $ .00 | $ | 1,430.00 |
| 0048 | 079983 | BANKERS TRUST OF MADISON | $ .00 | $ | .00 |

TOTAL PAYMENTS TO SECURED CREDITORS    $   2,190.19

**UNSECURED CREDITORS**

| Clm# | Cred# | | Interest | | Principal |
|------|-------|---|----------|---|-----------|
| 0002 | 189360 | KIRKLAND PLUMBING | $ 150.50 | $ | .00 |
| 0003 | 034424 | SHERWIN WILLIAMS COMPANY | $ .00 | $ | .00 |
| 0005 | 167431 | CONCRETE SERVICES | $ .00 | $ | .00 |
| 0006 | 406703 | JOE THOMAS | $ .00 | $ | .00 |
| 0007 | 144702 | GRADY TOLLEY | $ .00 | $ | .00 |
| 0008 | 507608 | CONCRETE INC | $ .00 | $ | .00 |
| 0009 | 136159 | DOWLING LUMBER | $ 53.78 | $ | .00 |
| 0010 | 004345 | LOFTINS EQUIPMENT SALES | $ .00 | $ | .00 |
| 0011 | 080121 | WEST BUILDING SUPPLY | $ .00 | $ | .00 |
| 0013 | 032491 | GENEVA FURNITURE | $ 9.05 | $ | 14.10 |
| 0014 | 194051 | ARNOLDS AUTOMOT | $ .00 | $ | .00 |
| 0015 | 013504 | LOWES | $ .00 | $ | .00 |
| 0016 | 312574 | JENKINS BRICK CO | $ .00 | $ | .00 |
| 0017 | 416898 | DOORS FLOORS & MORE | $ .00 | $ | .00 |
| 0018 | 039864 | JIMMYS HEATING & COOLING | $ .00 | $ | .00 |
| 0019 | 226866 | FRANK RAMIREZ | $ .00 | $ | .00 |
| 0020 | 017539 | SCOTTY STARLING | $ .00 | $ | .00 |
| 0021 | 488679 | GAMALIL COLESIO | $ .00 | $ | .00 |
| 0022 | 175052 | SOLOMON GRAYSON | $ .00 | $ | .00 |
| 0023 | 061920 | SOUTHEAST AL MEDICAL CENT | $ .00 | $ | .00 |
| 0024 | 003087 | GENEVA BUILDING SUPPLY IN | $ .00 | $ | .00 |
| 0025 | 081329 | EQUIFAX RMS | $ .00 | $ | .00 |
| 0026 | 137269 | PAUL & PAUL | $ .00 | $ | .00 |
| 0027 | 015897 | RONS FIRESTONE | $ .00 | $ | .00 |
| 0028 | 000246 | AMERICAN BANK | $ .00 | $ | .00 |
| 0029 | 064585 | HENRY PATE JR | $ .00 | $ | .00 |
| 0032 | 106523 | INTERNAL REVENUE | $ .00 | $ | .00 |
| 0033 | 207882 | J PAUL SOTO MD | $ .00 | $ | .00 |
| 0034 | 277893 | TRIAD | $ .00 | $ | .00 |
| 0035 | 218471 | TRI STATE LEGAL & COLLECT | $ .00 | $ | .00 |
| 0036 | 359095 | MANGINI LAKHIA & ASSOC | $ .00 | $ | .00 |
| 0037 | 022433 | SOUTHEASTERN CREDIT BUREA | $ .00 | $ | .00 |
| 0038 | 087999 | GIBBONS & DAY | $ .00 | $ | .00 |
| 0039 | 437599 | STERLING PRACTICE | $ .00 | $ | .00 |
| 0040 | 521583 | WEST HOUSTON MED CTR | $ .00 | $ | .00 |
| 0041 | 564186 | GC SERVICES | $ .00 | $ | .00 |
| 0042 | 377313 | COLLINS FISHER | $ .00 | $ | .00 |

## PAYMENTS TO CREDITORS

se Number - 96-0718

| Clm# | Cred# | Creditor | | Interest | | Principal |
|------|-------|----------|---|---|---|---|
| 0043 | 173529 | HOUSTON HEART CENTRE | $ | .00 | $ | .00 |
| 0044 | 147699 | TV INDEX | $ | .00 | $ | .00 |
| 0045 | 010833 | FINANCIAL CORP OF AMERICA | $ | .00 | $ | .00 |
| 0046 | 006142 | SOUTH CENTRAL BELL | $ | .00 | $ | .00 |
| 0047 | 073417 | KENNETH C SHEETS JR | $ | .00 | $ | .00 |
| 0049 | 079983 | BANKERS TRUST OF MADISON | $ | .00 | $ | .00 |
| 0050 | 176481 | INTERNAL REVENUE SERVICE | $ | .00 | $ | .00 |
| 2001 | 039712 | BANKERS TRUST OF MADISON | $ | .00 | $ | .00 |
| 2031 | 003751 | INTERNAL REVENUE SERVICE | $ | .00 | $ | .00 |

TOTAL PAYMENTS TO UNSECURED CREDITORS  $     14.10

**PRIORITY CREDITORS**

| Clm# | Cred# | | Interest | | Principal |
|------|-------|---|---|---|---|
| | | | Interest | | Principal |
| 0030 | 006352 | STATE OF ALABAMA | $ | .00 | $ | .00 |

TOTAL PAYMENTS TO PRIORITY CREDITORS  $     .00

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                           Case No. 96-0718-APG
                                                Chapter 13
WINSTON DAVIS
Soc. Sec. No. 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

MARIA A DAVIS
Soc. Sec. No. 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

4358 OLD RAILROAD BED RD
HARVEST AL  35749

                        Debtor.



FILED

JUN 1 9 1997

KATHRYN M. HAVA, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

### FINAL REPORT

The chapter 13 trustee, Curtis C. Reding, respectfully reports to the court as follows:

The costs of administration and all claims filed and allowed in this case have been paid according to the records of my office as evidenced by the attached final account.

The trustee requests that notice of the account be given to the debtor, the attorney for the debtor, and any other parties in interest.

The trustee further requests that the account be approved and that the trustee be discharged and relieved of his trust.

This the 02nd day of June, 1997.

                                    _____
                                    Curtis C. Reding, Trustee


c: Debtor
   Attorney for Debtor

# United States Bankruptcy Court
## Middle District of Alabama
*** AMENDED ***
### Notice of Commencement of Case Under Chapter 13 of the
Bankruptcy Code, Meeting of Creditors, and Fixing of Dates

**96-0718-APG**
Case Number

**FILED**

**JUN  5 1996**

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

| In Re: (Name of Debtor) | | |
|---|---|---|
| WINSTON DAVIS | **Address of Debtors**<br>506 W MAIN ST<br>HARTFORD AL 36344 | **SS/Tax Id Nos.**<br>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 |
| MARIA A DAVIS | **Date Petition Filed:**<br>Tue Feb 20, 1996 | 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 |

| Name and Address of Attorney for Debtor: | Name and Address of Trustee |
|---|---|
| KENNETH C SHEETS JR<br>P O BOX 2093<br>DOTHAN AL  36302<br>Telephone<br>(334) 671-4280 | CURTIS C REDING<br>CHAPTER 13 TRUSTEE<br>P.O. BOX 173<br>MONTGOMERY, AL 36101-0173<br>Telephone<br>(334) 262-8371 |

Deputy Clerk

**DEADLINE FOR FILING CLAIMS:**     September 12, 1996     Government Agencies:     August 18, 1996

**DATE, TIME, AND LOCATION OF MEETING OF CREDITORS:**
Date: Fri Jun 14, 1996  Time: 10:00 AM  Location: UNITED STATES COURTHOUSE, DOTHAN, AL 36301

**FILING OF PLAN AND DATE, TIME, AND LOCATION OF HEARING OF CONFIRMATION OF PLAN:**
The debtor has filed a plan. The plan or a summary of the plan is enclosed. Hearing on confirmation will be held:
Date: Wed Jun 26, 1996  Time: 10:00 AM  Location: TELEPHONE HEARING *

**COMMENCEMENT OF CASE.**  An individual's debt adjustment case under Chapter 13 of the Bankruptcy code has been filed in this court by the debtor or debtors named above, and an order for relief has been entered.  You will not receive notice of all documents filed in this case. All documents filed with the court, including lists of the debtor's property and debts, are available for inspection at the office of the clerk of the bankruptcy court.

**CREDITORS MAY NOT TAKE CERTAIN ACTIONS.**  A creditor is anyone to whom the debtor owes money.  Under the Bankruptcy Code, the debtor is granted certain protection against creditors.  Common examples of prohibited actions by creditors are contacting the debtor to demand repayment, taking action against the debtor to collect money owed to creditors or to take property of the debtor, and starting or continuing foreclosure actions, repossessions, or wage deductions.  Some protection is also given to certain codebtors of consumer debts.  If unauthorized actions are taken by a creditor against a debtor, or a protected codebtor, the court may penalize that creditor.  A creditor who is considering taking action against the debtor or the property of the debtor, or any codebtor, should review Sections 362 and 1301 of the Bankruptcy Code and may wish to seek legal advice.  The staff of the clerk of the bankruptcy court is not permitted to give legal advice.

**MEETING OF CREDITORS.**  The debtor (both husband and wife in a joint case) is required to appear at the meeting of creditors on the date and at the place set forth above in the box labeled "Date, Time, and Location of Meeting of Creditors" for the purpose of being examined under oath.  Attendance by creditors at the meeting is welcomed, but not required.  At the meeting, the creditors may examine the debtor and transact such other business as may properly come before the meeting.  The meeting may be continued or adjourned from time to time by notice at the meeting, without further written notice to the creditors.

**PROOF OF CLAIM.**  Except as otherwise provided by law, in order to share in any payment from the estate, a creditor must file a proof of claim by the date set forth above in the box labeled "Filing Claims"  The place to file the proof of claim, either in person or by mail, is the office of the clerk of the bankruptcy court.  Proof of claim forms are available in the clerk's office of any bankruptcy court.

**PURPOSE OF A CHAPTER 13 FILING.**    Chapter 13 of the Bankruptcy Code is designed to enable a debtor to pay debts in full or in part over a period of time pursuant to a plan.  A plan is not effective unless approved by the bankruptcy court at a confirmation hearing.  Creditors will be given notice in the event the case is dismissed or converted to another chapter of the Bankruptcy Code.

**OBJECTIONS TO CHAPTER 13 PLAN.**  Objections should be in writing, filed with the Clerk of the Bankruptcy Court, and served on the debtor, the trustee, and the debtor's attorney.  Objections should be filed not later than 7 days prior to the confirmation hearing.  Only objections filed and served as stated above will be considered at the hearing.

**DUTIES OF THE DEBTOR.**  The Debtor is required to commence making the payments proposed by the plan within 30 days after the plan is filed.  The Debtor must be current on the date of the confirmation hearing on all payments to be made directly to creditors and have all creditors' interests insured on property securing debts.

**\*TELEPHONE HEARING.**  Objection to confirmation will be heard by telephone on the date and time specified above.  Each party desiring to participate in the confirmation hearing must furnish, IN ADVANCE, the telephone number at which the party can be reached and keep the line open for the hearing.  Objections not advanced at the hearing will be deemed waived.

**CERTIFICATE OF MAILING.**  The undersigned hereby certifies that a copy of this document was mailed this date to all parties in interest herein as required by the Bankruptcy Code and Rules of Bankruptcy Procedure.

Date: _6/3/96_

For the Court:     Kathryn M. Hawk, Clerk of the Bankruptcy Court

_May 31, 1996_
Date

000000
KATHRYN M HAWK
CLERK OF BANKRUPTCY COURT
P O BOX 1248
MONTGOMERY AL  36104

Address of the Clerk of Court
KATHRYN M. HAWK
CLERK OF BANKRUPTCY COURT
P.O. BOX 1248
MONTGOMERY, AL  36102

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ON DAVIS                              )
A DAVIS                               )     Chapter 13
                                      )     Case No. 96-0718-APG

CHAPTER 13 PLAN OR SUMMARY

JTS TO TRUSTEE: The debtor(s) shall pay $    1,000.00  to the Chapter 13
trustee monthly                 beginning Thu Mar 21, 1996.

:BUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:

ADMINISTRATIVE CLAIMS under 11 USC §503(b).  The debtor's attorney's
fee is $      900.00 .

SECURED CLAIMS:

a. Secured claims being paid through the trustee.

| r | Debt Amount | Collat. Val. | Int. | Monthly Pmt. |
|---|---|---|---|---|
| TRUST OF MADISON | 16,353.20 | 14,500.00 | .00 % | .00 |
| PLUMBING | 4,900.00 | 4,900.00 | .00 % | .00 |
| ONKLIN | 624.00 | 624.00 | .00 % | .00 |
| SERVICES | 412.00 | 412.00 | .00 % | .00 |
| INC | 91.87 | 91.87 | .00 % | .00 |
| LUMBER | 1,607.20 | 1,607.20 | .00 % | .00 |
| SUPPLY | 400.00 | 400.00 | .00 % | .00 |
| URNITURE | 217.00 | 217.00 | .00 % | .00 |
| | 938.05 | 938.05 | .00 % | .00 |
| OORS & MORE | 1,449.36 | 1,449.36 | .00 % | .00 |
| TE JR | 500.00 | 500.00 | .00 % | .00 |
| TRUST OF MADISON | 16,353.21 | 13,500.00 | .00 % | .00 |

b. Prepetition defalts being cured through the trustee.

| : | Arrears Amount | Annual Int | Monthly Payment |
|---|---|---|---|
| TRUST OF MADISON | .00 | .00 % | .00 |

PRIORITY CLAIMS (11 USC §507(a)(2) to (8)):

| | Debt Amount | Monthly Payment |
|---|---|---|
| REVENUE SERVICE | 13,726.73 | .00 |

UNSECURED CLAIMS, including the unsecured portion of secured claims,
a pro rata amount equal to    5.00 % of the claim.  If unsecured
creditors are to receive less than 100% of their claims, the
debtor(s) will pay all projected income to the trustee for at least
36 months.

ROVISIONS:

p 28

341 Letter Certification Report   05/31/1996   Page 001
For:

er 13

WINSTON DAVIS                          96-0718-APG
MARIA A DAVIS

                KENNETH C SHEETS JR
                COURT
                TRUSTEE
                WINSTON DAVIS
                MARIA A DAVIS
                BANKERS TRUST OF MADISON
                KIRKLAND PLUMBING
                SHERWIN WILLIAMS COMPANY
                ROBERT CONKLIN
                CONCRETE SERVICES
                JOE THOMAS
                GRADY TOLLEY
                CONCRETE INC
                DOWLING LUMBER
                LOFTINS EQUIPMENT SALES
                WEST BUILDING SUPPLY
                DRYWALL SUPPLY
                GENEVA FURNITURE
                ARNOLDS AUTOMOT
                LOWES
                JENKINS BRICK CO
                DOORS FLOORS & MORE
                JIMMYS HEATING & COOLING
                FRANK RAMIREZ
                SCOTTY STARLING
                GAMALIL COLESIO
                SOLOMON GRAYSON
                SOUTHEAST ALABAMA MEDICAL CTR
                GENEVA BUILDING SUPPLY INC
                EQUIFAX RMS
                PAUL & PAUL
                RONS FIRESTONE
                AMERICAN BANK
                HENRY PATE JR
                STATE OF ALABAMA
                INTERNAL REVENUE SERVICE
                INTERNAL REVENUE
                J PAUL SOTO MD
                TRIAD
                TRI STATE LEGAL & COLLECTION
                MANGINI LAKHIA & ASSOC
                SOUTHEASTERN CREDIT BUREAU INC
                GIBBONS & DAY
                STERLING PRACTICE
                WEST HOUSTON MED CTR
                GC SERVICES
                COLLINS FISHER
                HOUSTON HEART CENTRE

341 Letter Certification Report    05/31/1996    Page 002
For:

WINSTON DAVIS                                96-0718-APG
MARIA A DAVIS

        KENNETH C SHEETS JR
        COURT
        TRUSTEE
        WINSTON DAVIS
        MARIA A DAVIS
        TV INDEX
        FINANCIAL CORP OF AMERICA
        SOUTH CENTRAL BELL
        KENNETH C SHEETS JR
        BANKERS TRUST OF MADISON
        BANKERS TRUST OF MADISON
        INTERNAL REVENUE SERVICE



**FILED**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

96 MAY 28 AM 10: 35

IN RE:                          CASE NO:  96-00718

WINSTON DAVIS and               CHAPTER 13         U.S. BANKRUPTCY COURT
MARIA A. DAVIS                                      MONTGOMERY, ALABAMA

MOTION TO AMEND, MOTION TO DELETE CREDITORS,
AND MOTION TO ADD

COMES NOW the Debtors, by and through their undersigned counsel, and petitions this Honorable Court to allow the Debtors to amend Schedules A-J, Summary of Schedules, Statement of Financial Affairs, Debtors' Statement of Intentions, Disclosure of Compensation of Attorney for Debtors, Numbered Listing of Creditors, Matrix, and the Chapter 13 Plan or Summary of the Chapter 13 referenced above.

Further, Debtors petition this Court to allow them to delete the following creditors from the Chapter 13:

Sherwin Williams Paint
Joe Thomas
Grady Tolley
West Building Supply
Frank Ramirez
Gamalil Colesio
SAMC
Equifax RMS
Loftins Rentals
Arnolds Automot.
Jenkins Brick Co.
Jimmy's Heating & Cooling
Solomon Grayson
Geneva Building Supply
Paul & Paul
American Bank
J. Paul Soto, MD
Tri-State Legal and Collection Serv.
Mangini, Lakhia & Assoc.
Gibbons & Day
West Houston Med. Ctr.
GC Services
Collins-Fisher Radiology Associates
Financial Corporation of America

31

Also, Debtors petition this Court to allow them to delete the following creditors from Schedule F (Unsecured Creditors) and to include them on the Schedule D (Secured Creditors):

        Concrete Services
        Concrete, Inc.
        Doors, Floors, & More
        Dowling Lumber Co.
        Drywall Supply
        Geneva Appliance
        Kirkland Plumb. & Elec.
        Lowes of Dothan
        Harry Pate, Jr.
        Robert Conklin

Furthermore, Debtors petition this Court to allow them to add the following as interested parties:

        Harry P. Hall, II
        David F. Holmes
        Douglas Valeska, Houston County District Attorney
        Houston County District Court
        David Emery, Geneva County District Attorney
        Geneva County District Court

Finally, Debtors petition this Honorable Court to allow them to delete the following creditors from Schedule E (Unsecured Creditors with Priority Claims) and to include them on Schedule F (Unsecured Creditors Nonpriority Claims.:

        Internal Revenue Service  (1991 Claim)
        Dept. of Revenue (Alabama)

Respectfully submitted this the 24th day of May, 1996.

                                KENNETH C. SHEETS, JR.
                                Attorney for Debtors
                                P. O. Box 2093
                                Dothan, AL 36302
                                (334) 671-4280

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

NSTON DAVIS                          )
                                     )          Chapter 13
MARIA A. DAVIS                       )          Case No.    96
                                     )

**FILED**

96 MAY 28 AM 10 36

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

**CHAPTER 13 PLAN OR SUMMARY**

1. **PAYMENTS TO TRUSTEE:** The debtor(s) shall pay $1,000.00 to the Chapter 13 trustee each _month_ beginning 6/22/96

2. **DISTRIBUTIONS BY TRUSTEE FROM THE PAYMENTS RECEIVED SHALL BE MADE AS FOLLOWS:**

First:     **ADMINISTRATIVE CLAIMS** under 11 USC §503(b).  The debtor's attorney's fee is $  900.00

Second:   **SECURED CLAIMS:**

a.  **Secured claims being paid through the trustee:**

| Creditor | Amount of Debt | Value of Collateral | Interest Under Plan | Specified Monthly Payment |
|---|---|---|---|---|
| | | | | |

SEE ATTACHED LIST.

b.  **Prepetition defaults being cured through the trustee:**

| Creditor | Amount of Arrearage | Annual Interest | Date Post-Petition Payment Will Resume | Specified Monthly Payment |
|---|---|---|---|---|
| | | | | |

BANKERS TRUST OF MADISON     (unk)

c.  **Secured claims to be paid directly by the debtor or other party to the creditor:**

| Creditor | Amount of Debt | Value of Collateral | Contractual Payment |
|---|---|---|---|
| | | | |

NONE

d.  **Secured claims to be satisfied by the surrender and return of collateral:**

| Creditor | Description of Collateral | Amount of Debt | Value of Collateral |
|---|---|---|---|
| | | | |

NONE

Third:     **PRIORITY CLAIMS** (11 USC §507(a)(2) to (8)):

| Creditor | Amount of Debt | Specified Monthly Payment |
|---|---|---|
| INTERNAL REVENUE   SERVICE | 13,726.73 | (unk) |

30

**SPECIALLY CLASSIFIED UNSECURED CLAIMS:**

| Creditor | Basis for Classification | Amount of Debt Specially Classified | Specified Monthly Payment |
|---|---|---|---|
| | | | |

Fifth:   **UNSECURED CLAIMS**, including the unsecured portion of secured claims, a pro rata amount equal to _____5_____ % of the claim. If unsecured creditors are to receive less than 100% of their claims, the debtor(s) will pay all projected disposable income to the trustee for at least 36 months.

3. **DURATION OF PLAN**

The expected duration of this plan is ____60____ months.

4. **PROVISIONS FOR UNSCHEDULED, POSTPETITION, OR LATE FILED CLAIMS ARE AS FOLLOWS:**

   TO BE DETERMINED BY THIS COURT

5. **PROVISIONS FOR PROPERTY OF THE ESTATE (See 11 U.S.C. §1303, §1306 and §1327):**

   NONE

6. **PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES (See 11 U.S.C. §1322(b)(7) and §365):**

   NONE

7. **OTHER PROVISIONS:**

_Winston Davis_
DEBTOR

_Maria S. Davis_
JOINT DEBTOR

DATED: 5-22-96                    19____

## ATTACHMENT TO CHAPTER 13 PLAN OR SUMMARY

### (a)

SECURED CREDITORS BEING PAID THROUGH THE TRUSTEE

| | |
|---|---:|
| BANKERS TRUST OF MADISON   (GMC TRUCK) | 16,353.20 |
| BANKERS TRUST OF MADISON   (BMW CAR) | 16,353.21 |
| CONCRETE SERVICES | 412.00 |
| CONCRETE, INC. | 91.87 |
| DOORS, FLOORS, & MORE | 1,449.36 |
| DOWLING LUMBER CO. | 1,607.20 |
| DRYWALL SUPPLY | 400.00 |
| GENEVA APPLIANCE | 217.00 |
| KIRKLAND PLUMB. & ELEC. | 4,900.00 |
| LOWES OF DOTHAN | 938.05 |
| HARRY PATE, JR. | 500.00 |
| ROBERT CONKLIN | 624.00 |

D-35

FILED

MAY 2 8 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

re Davis, Winston                                    96-00718
                                                     Case No. (if known)
   Davis, Maria A.
   Debtors

### NOTICE TO INDIVIDUAL CONSUMER DEBTORS

If you intend to file a petition for relief under the bankruptcy laws
of the United States, and your debts are primarily consumer debts, the
Clerk of Court is required to notify you of each chapter of the
Bankruptcy Code under which you may seek relief.  You may proceed under:

    Chapter  7 -- Liquidation, or
    Chapter 11 -- Reorganization, or
    Chapter 12 -- Adjustment of Debts of a Family Farmer With Regular
                  Annual Income, or
    Chapter 13 -- Adjustment of Debts of an Individual With Regular
                  Income

If you have any questions regarding the information contained in this
notice, you should consult with your attorney.

                                          _____
                                          Clerk of Court

### ACKNOWLEDGEMENT

I hereby certify that I have read this notice.

_____        Date: _5-22-96_____
Debtor

_____        Date: _5-22-96_____
Joint Debtor

29

e Davis, Winston

    Davis, Maria A.
    Debtors

96-00718
Case No. (if known)

ATTACHMENT TO VOLUNTARY PETITION

---------------- ADDITIONAL PRIOR BANKRUPTCY CASES --------------------

Location where filed: Southern District of Texas, Houston Division
           Case number: 93-47244-H2-13
             Date filed: 9/23/93

D-31

FILED

MAY 2 8 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re: Davis, Winston
and
Davis, Maria A.
Debtors

96-00718
Case No. (if known)

========================= SUMMARY OF SCHEDULES =========================

| Schedule name | No. Sheets | Assets | Liabilities | Other |
|---|---|---|---|---|
| X (mark if attached) | | | | |
| ___ A - Real Property | 1 | 0.00 | | |
| ___ B - Personal Property | 3 | 75,333.55 | | |
| ___ C - Property Claimed as Exempt | 1 | | | |
| ___ D - Creditors Holding Secured Claims | 6 | | 43,845.89 | |
| ___ E - Creditors Holding Unsecured Priority Claims | 2 | | 13,726.73 | |
| ___ F - Creditors Holding Unsecured Non-priority Claims | 3 | | 18,941.00 | |
| ___ G - Executory Contracts and Unexpired Leases | 1 | | | |
| ___ H - Codebtors | 1 | | | |
| ___ I - Current Income of Individual Debtors | 2 | | | 2,580.00 |
| ___ J - Current Expenditures of Individual Debtors | 4 | | | 1,535.00 |

| | | | | |
|---|---|---|---|---|
| Summary Sheet | 1 | ************************************ | | |
| Total No. Sheets | 25 | ************************************ | | |
| Total Assets -> | | 75,333.55 | ************************** | |
| Total Liabilities -> | | | 76,513.62 | ******* |
| Total No. of Creditors -> | | | 22 | ******* |

p- 38

re Davis, Winston

    Davis, Maria A.
    Debtors

96-00718
Case No. (if known)

## SCHEDULE A - REAL PROPERTY

| Description and location of property | Current market value of debtor interest in the property without deducting any secured claim or exemption |
|---|---|
| Nature of Debtor interest in property | Amount of secured claim |

None

Total:                    0.00

$p$-39

Davis, Winston                                    96-00718
                                                  Case No. (if known)
Davis, Maria A.
Debtors

## SCHEDULE B - PERSONAL PROPERTY

| Type of property<br>---------------------------------<br>Description and location of property | Current market value of debtor<br>interest in property without<br>deducting any secured claim |
|---|---|

1. **Cash on hand.**
   None
2. **Checking, savings, or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives.**
   None
3. **Security deposits with public utilities, telephone companies, landlords, and others.**
   None
4. **Household goods and furnishings, including audio, video, and computer equipment.**

   household goods, supplies, and          Debtor interest:          1,200.00
   furnishings
   Owner: Joint
   Location: In debtor possession.

5. **Books, pictures, and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles.**
   None
6. **Wearing apparel.**

   wearing apparel and other personal      Debtor interest:            800.00
   property
   Owner: Joint
   Location: In debtor possession.

7. **Furs and jewelry.**
   None
8. **Firearms and sports, photographic, and other hobby equipment.**
   None
9. **Interests in insurance policies.**
   None
10. **Annuities.**
    None
11. **Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.**
    None
12. **Stock and interests in incorporated and unincorporated businesses.**

P-40

Davis, Winston                          96-00718
                                        Case No. (if known)
Davis, Maria A.
Debtors


ne
terests in partnerships or joint ventures.
ne
vernment and corporate bonds and other negotiable and non-
gotiable instruments.
ne
counts receivable.

ady Tolley-2,808.00              Debtor interest:      44,533.55
ck Lewellyn-2,640.00
ck Lewellyn-17,860.00
arles Ward-5,385.55
vid McQueen-840.00
ss profits/bank-15,000.00

TAL: 44,533.55
ner: Joint
cation: In debtor possession.

imony, maintenance, support, and property settlements to which
e debtor is or may be entitled.
ne
ner liquidated debts owing debtor including tax refunds.
ne
uitable or future interests, life estates, and rights or
vers exercisable for the benefit of the debtor other than
ose listed in Schedule of Real Property.
ne
ntingent and noncontingent interests in estate of a
cedent, death benefit plan, life insurance policy, or trust.
ne
ner contingent and unliquidated claims of every nature,
cluding tax refunds, counterclaims of the debtor, and
ghts to setoff claims.
ne
tents, copyrights, and other intellectual property.
ne
censes, franchises, and other general intangibles.
ne
tomobiles, trucks, trailers, and other vehicles or accessories.

99 BMW car                       Debtor interest:      13,500.00
ner: Wife
rson holding: lien holder
                 Bankers Trust of Madison
                 P. O. Box 108
                 Huntsville, AL 35804

**Page 2**

p-41

Davis, Winston

96-00718
Case No. (if known)

Davis, Maria A.
Debtors

Secured creditor: Bankers Trust of Madison
Amount of claim: 16,353.21

1993 GMC Yukon truck                     Debtor interest:        14,500.00
Owner: Wife
Location: In debtor possession.
Secured creditor: Bankers Trust of Madison
Amount of claim: 16,353.20

24. Boats, motors, and accessories.
    None
25. Aircraft and accessories.
    None
26. Office equipment, furnishings, and supplies.
    None
27. Machinery, fixtures, equipment, and supplies used in business.
                                          Debtor interest:         800.00

    Small tools used in profession
    Owner: Husband
    Location: In debtor possession.

28. Inventory.
    None
29. Animals.
    None
30. Crops - growing or harvested.
    None
31. Farming equipment and implements.
    None
32. Farm supplies, chemicals, and feed.
    None
33. Other personal property of any kind not already listed.
    None

                                  Total:      75,333.55

                                          Page 3

p-42

re Davis, Winston                                    96-00718
    Davis, Maria A.                                  Case No. (if known)
    Debtors

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:

11 U.S.C. sec. 522(b)(2)

Exemptions available under applicable non-bankruptcy federal laws, state
or local law where the debtor domicile has been located for the 180 days
immediately preceding the filing of the petition or for a longer portion
of the 180 day period than in any other place, and the debtor interest
as a tenant by the entirety or joint tenant to the extent the interest
is exempt from process under applicable non-bankruptcy law.

Debtors are married.

| Description of property<br>Specify exemption law and value claimed exempt | Current market value of property without deducting exemption |
|---|---|
| Small tools used in profession<br>Exemption law: ALABAMA CODE 1975, 6-10-6<br>Value exempt:  800.00 | Debtor Interest:          800.00 |
| household goods, supplies, and furnishings<br>Exemption law: ALABAMA CODE 1975, 6-10-6<br>Value exempt:  1,200.00<br>Exemption law: ALABAMA CODE 1975, 6-10-6<br>Value exempt:  0.00<br>Total exempt:  1,200.00 | Debtor Interest:        1,200.00 |
| wearing apparel and other personal property<br>Exemption law: ALABAMA CODE 1975, 6-10-6<br>Value exempt:  800.00 | Debtor Interest:          800.00 |

P-43

re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

| Creditor's name and complete mailing address including zip code — Date claim was incurred, nature of lien, and description and market value of property subject to the lien | Amount of claim without deducting value of collateral — Unsecured portion, if any |
|---|---|
| Account no.: 0402188670<br>Bankers Trust of Madison<br>P. O. Box 108<br>Huntsville, AL 35804<br>Liable: Wife<br>Date incurred: 1/20/95<br>Nature of lien: 1993 GMC Yukon truck<br>Claim is: Fixed and liquidated.<br>Collateral description: 1993 GMC Yukon truck<br>Collateral market value: 14,500.00<br>Lien seniority: 0<br>Total collateral value: 14,500.00 | Claim amount: 16,353.20<br>Unsecured: 1,853.20 |
| Account no.: 0402188670<br>Bankers Trust of Madison<br>P. O. Box 108<br>Huntsville, AL 35804<br>Liable: Wife<br>Date incurred: 1/20/95<br>Nature of lien: 1989 BMW car<br>Claim is: Fixed and liquidated.<br>Collateral description: 1989 BMW car<br>Collateral market value: 13,500.00<br>Lien seniority: 0<br>Total collateral value: 13,500.00 | Claim amount: 16,353.21<br>Unsecured: 2,853.21 |
| Account no.:<br>Concrete Services<br>500 Hillcrest Ave.<br>Hartford, AL 36344<br>Liable: Husband<br>Date incurred: | Claim amount: 412.00<br>Unsecured: 412.00 |

Subtotal this page:       33,118.41

re Davis, Winston                              96-00718
                                               Case No. (if known)
    Davis, Maria A.
    Debtors

Nature of lien: construction materials
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: legal action is pending in Geneva County
                        District Court

Claim assigned to: Collection agent
                   Geneva County District
                   Court Worthless Check
                   Unit
                   P. O. Box 86
                   Geneva, AL 36340


Account no.:                        Claim amount:        91.87
Concrete, Inc.                        Unsecured:         91.87
611 Rogers Rd.
Dothan, AL 36301
Liable: Husband
Date incurred:
Nature of lien: construction materials
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: Creditor is holding a NSF check in the amount of
                        91.87.


Account no.:                        Claim amount:     1,449.36
Doors, Floors, & More                 Unsecured:      1,449.36
2331 Ross Clark Cir. SW
Dothan, AL 36301
Liable: Husband
Date incurred:
Nature of lien: construction supplies
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00

                          Subtotal this page:        1,541.23

                                                      Page 2

P45

re Davis, Winston                          96-00718
                                           Case No. (if known)

   Davis, Maria A.
   Debtors

Additional information: NSF check for $1,449.36, plus charges, pending
                        in Geneva County District Court

Claim assigned to: Collection agent
                   Geneva County District
                   Court Worthless Check
                   Unit
                   P. O. Box 86
                   Geneva, AL 36340


                                    Claim amount:      1,607.20
                                    Unsecured:         1,607.20
Account no.:
Dowling Lumber Co.
507 Dothan Highway
Hartford, AL 36344
Liable: Husband
Date incurred:
Nature of lien: construction supplies
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF check pending in Geneva County District
                        Court

   Claim assigned to: Attorney
                      David F. Holmes
                      103 E. Highway 52
                      Slocomb, AL 36375


                                    Claim amount:        400.00
                                    Unsecured:           400.00
Account no.:
Drywall Supply
377 Murray Rd.
Dothan, AL 36301
Liable: Husband
Date incurred:
Nature of lien: miscellaneous purchases of materials
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00


                          Subtotal this page:        2,007.20

                                                     Page 3



*p4/6*

In re Davis, Winston

    Davis, Maria A.
    Debtors

96-00718
Case No. (if known)

Account no.:
Geneva Appliance
700 E. Town St.
Geneva, AL 36340
Liable: Husband
Date incurred:
Nature of lien: miscellaneous purchases.
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF check for $192.00, plus charges, was sent to
    Geneva County District Attorney for collection.

Claim amount: 217.00
Unsecured: 217.00

Claim assigned to: Collection agent
    Geneva County District
    Court, Worthless Check
    Unit
    P. O. Box 247
    Geneva, AL 36340

Account no.:
Kirkland Plumb. & Elec.
Rt. 2, Box 51
Slocomb, AL 36375
Liable: Husband
Date incurred:
Nature of lien: miscellaneous purchases
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF charges filed with the District Attorney of
    Geneva County Worthless Check Unit.

Claim amount: 4,900.00
Unsecured: 4,900.00

Claim assigned to: Attorney
    David F. Holmes
    103 E. Highway 52
    Slocomb, AL 36375

Account no.:

Claim amount: 938.05

Subtotal this page: 6,055.05

Page 4

ᐯ-47

n re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

Lowes of Dothan                                    Unsecured:          938.05
2961 Ross Clark Circle
Dothan, AL 36301
Liable: Husband
Date incurred:
Nature of lien: miscellaneous purchases.
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF check in the amount of $938.05, plus
                        charges, now pending in Houston County District
                        Court.

Claim assigned to: Collection agent
                   Douglas Valeska, D.A.
                   Houston County, Alabama
                   Worthless Check Unit
                   P. O. Box 1632
                   Dothan, AL 36302


Account no.:                          Claim amount:        500.00
Harry Pate, Jr.                       Unsecured:           500.00
101 E. Campbell St.
Geneva, AL 36340
Liable: Husband
Date incurred:
Nature of lien: contract work.
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF check for $500.00 pending in Geneva County.


Account no.:                          Claim amount:        624.00
Robert Conklin                        Unsecured:           624.00
803 Whitestone Dr.
Geneva, AL 36340
Liable: Joint
Date incurred:
Nature of lien: arrearage on lease/purchase of land and trailer.

                              Subtotal this page:        1,124.00

                                                        Page 5

p48

e Davis, Winston                                    96-00718
                                                    Case No. (if known)
    Davis, Maria A.
    Debtors

              Property was foreclosed and given back to creditor.
Claim is: Fixed and liquidated.
Collateral description: << Incomplete >>
Collateral market value:
Lien seniority: 0
Total collateral value: 0.00
Additional information: NSF check charges in the amount of $624.00, plus
                        charges, now pending in Geneva County District
                        Court.

Claim assigned to: Collection agent
                   Geneva County, Alabama
                   District Court
                   David Emery, Prosecutor
                   P. O. Box 86
                   Geneva, AL 36340

                            Subtotal this page:              0.00
                                          Total:         43,845.89

                                                        Page 6

*りくそ*

In re Davis, Winston                                96-00718
    Davis, Maria A.                         Case No. (if known)
    Debtors

### SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

| | Debtor has no creditors holding unsecured priority claims.

**TYPES OF PRIORITY CLAIMS:**

| | Wages, Salaries, and Commissions

    Wages, salaries, and commissions, including vacation, severance,
and sick leave pay owing to employees, up to a maximum of $2000 per
employee, earned within 90 days immediately preceding the filing of
the original petition, or the cessation of business, whichever
occurred first, to the extent provided in 11 U.S.C. sec. 507(a)(3).

| | Contributions to Employee Benefit Plans

    Money owed to employee benefit plans for services rendered within
180 days immediately preceding the filing of the original
petition, or the cessation of business, whichever occurred first to
the extent provided in 11 U.S.C. sec. 507(a)(4).

| | Certain Farmers or Fishermen

    Claims of certain farmers or fishermen, up to a maximum of $2000
per farmer or fisherman, against the debtor, as provided in 11
U.S.C. sec. 507(a)(5).

| | Deposits by Individuals

    Claims of individuals up to a maximum of $900 for deposits for the
purchase, lease, or rental of property or services for personal,
family, or household use, that were not delivered or provided.  11
U.S.C. sec. 507(a)(6).

|X| Taxes and Certain Other Debts Owed to Governmental Units

    Taxes, customs duties, and penalties owing to federal, state, and
local governmental units as set forth in 11 U.S.C. sec. 507(a)(7).

| | Commitments to Maintain Capital of Insured Depository Institution

    Claims based on commitments to the FDIC, RTC, Director of the
Office of Thrift Supervision, Controller of the Currency, or Board
of Governors of the Federal Reserve System, or their predecessors
or successors, to maintain the capital of an insured depository
institution.  11 U.S.C. sec. 507(a)(8).

$P\ 50.$

re Davis, Winston                    Case No. 96-00718
and                                            (if known)
Davis, Maria A.
Debtors

SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

Taxes
Type of Priority

| Creditor name and complete mailing address including zip code | Amount entitled to priority |
|---|---|
| Date claim was incurred and consideration for claim | Total amount of claim |

Account no.: 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              Priority amount:      13,726.73
Internal Revenue Service             Amount of claim:       13,726.73
Austin, TX 73301
Liable: Joint
Date incurred: 12/31/94
Consideration for claim: individual income tax for tax period ending
                         12/31/94.
Claim is: Fixed and liquidated.

Subtotal this page:      13,726.73
Total:      13,726.73

Page 2

re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

| Creditor's name and complete mailing address including zip code<br>Date claim was incurred and consideration for claim. If claim is subject to setoff, so state. | Amount of claim |
|---|---|

Account no.: 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
Dept. of Revenue
P. O. Box 327420
Montgomery, AL 36132
Liable: Joint
Date incurred: 12/31/91
Consideration for claim: individual income tax for period ending
                        12/31/91
Claim is: Fixed and liquidated.

Amount of claim:     1,579.58

Account no.: 7955-9115
Houston Heart Centre
9034 Westheimer, #425
Houston, TX 77063
Liable: Husband
Date incurred:
Consideration for claim: medical services
Claim is: Fixed and liquidated.

Amount of claim:     157.50

Account no.: 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
Internal Revenue Service
Austin, TX 73301
Liable: Joint
Date incurred: 12/31/91
Consideration for claim: individual 1040 taxes for tax period ending
                        12/31/91.
Claim is: Fixed and liquidated.

Amount of claim:     13,994.92

Account no.: 652679
Ron's Firestone
818 E. Town Avenue
Geneva, AL 36340

Amount of claim:     592.36

Subtotal this page:     16,324.36

p52

re Davis, Winston

  Davis, Maria A.
  Debtors

96-00718
Case No. (if known)

Liable: Husband
Date incurred:
Consideration for claim: miscellaneous purchases
Claim is: Fixed and liquidated.

Account no.: 2054616305164
Southeastern Credit
Bureau
P. O. Box 248
Gastonia, NC 28053
Liable: Husband
Date incurred: 7/27/93
Consideration for claim: collection agent for Bell-South for telephone
                         services
Claim is: Fixed and liquidated.

Amount of claim:          189.64

Account no.:
Scotty Starling
Rt. 1, Box 189
Midland City, AL 36350
Liable: Husband
Date incurred:
Consideration for claim: contract labor
Claim is: Fixed and liquidated.

Amount of claim:        1,350.00

Claim assigned to: Collection agent
                   Harry P, Hall, II
                   P. O. Box 1165
                   Dothan, AL 36302

Account no.: 0012137196
Sterling Practice
MGMT GRP of FL, Inc.
P. O. Box 200071
Dallas, TX 75320
Liable: Husband
Date incurred: 9/14/94
Consideration for claim: medical services
Claim is: Fixed and liquidated.

Amount of claim:          177.00

Account no.: 288894

Amount of claim:          380.00

Subtotal this page:     2,096.64

Page 2

p- 5-3

re Davis, Winston                                    96-00718
                                                     Case No. (if known)
    Davis, Maria A.
    Debtors

TRIAD
P. O. Box 691027
Houston, TX 77269-1027
Liable: Husband
Date incurred:
Consideration for claim: medical services
Claim is: Fixed and liquidated.


Account no.: K1195196              Amount of claim:          520.00
TV Index
1403 27th St.
Kenner, LA 70062
Liable: Husband
Date incurred: 11/95
Consideration for claim: advertising
Claim is: Fixed and liquidated.


                          Subtotal this page:          520.00
                                     Total:       18,941.00

                                                  Page 3

re Davis, Winston                              96-00718
                                               Case No. (if known)
    Davis, Maria A.
    Debtors

         SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

| Name and mailing address, including zip code, of other parties to lease or contract. | Description of contract or lease and nature of debtor interest. State whether lease is for non-residential real property. State contract number of any governmental contract. |
| --- | --- |

None

P-55

re Davis, Winston                                          96-00718
                                                           Case No. (if known)
    Davis, Maria A.
    Debtors

## SCHEDULE H - CODEBTORS

=================================================================
| Name and address of codebtor     | Name and address of creditor     |
=================================================================

**None**

p-56

Davis, Winston                                    96-00718
                                                  Case No. (if known)
Davis, Maria A.
Debtors

## SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTORS

========================================================================

DEBTOR MARITAL STATUS: Married and living together

DEPENDENTS OF DEBTOR
    No dependents

========================================================================

| EMPLOYMENT: | DEBTOR/JOINT-1 | SPOUSE/JOINT-2 |
|---|---|---|
| Occupation: | construction contractor | NONE |
| Employer name: | self | |
| How long employed: | | |
| Employer address: | 506 W. Main St. | |
| | Hartford, AL 36344 | |

========================================================================

INCOME: (Estimate of average monthly income)

| | HUSBAND | WIFE |
|---|---|---|
| Current monthly gross wages, salary, and commissions.......... | 0.00 | 0.00 |
| Estimated monthly overtime....... | 0.00 | 0.00 |
| SUBTOTAL | 0.00 | 0.00 |
| LESS PAYROLL DEDUCTIONS | | |
| a.  Payroll taxes and social security............. | 0.00 | 0.00 |
| b.  Insurance................... | 0.00 | 0.00 |
| c.  Union dues.................. | 0.00 | 0.00 |
| d.  Other (specify): | 0.00 | 0.00 |
| SUBTOTAL OF DEDUCTIONS | 0.00 | 0.00 |
| TOTAL NET MONTHLY TAKE HOME PAY | 0.00 | 0.00 |
| Regular income from operation of business or profession or farm... (SEE ATTACHMENT TO SCHEDULE J) | 2,580.00 | |
| Income from real property....... | 0.00 | 0.00 |
| Interest and dividends.......... | 0.00 | 0.00 |

*P S 7*

re Davis, Winston

      Davis, Maria A.
      Debtors

96-00718
Case No. (if known)

| | | |
|---|---|---|
| Alimony, maintenance, or support payments payable to the debtor for the debtor's use or that of dependents listed above.......... | 0.00 | 0.00 |
| Social security or other government assistance: | 0.00 | 0.00 |
| Pension or retirement income..... | 0.00 | 0.00 |
| Other monthly income: | 0.00 | 0.00 |
| TOTAL MONTHLY INCOME: | 2,580.00 | 0.00 |
| TOTAL COMBINED MONTHLY INCOME.... | 2,580.00 | |

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:

   None

**Page 2**

*p58*

Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

## ATTACHMENT TO SCHEDULE J - BUSINESS INCOME AND EXPENDITURES

CURRENT MONTHLY BUSINESS INCOME

Total:   2,580.00
Source:

| CURRENT MONTHLY BUSINESS EXPENSES | HUSBAND |
|---|---|
| 1.  Rent/Mortgage payment | 0.00 |
| 2.  Repair/Upkeep | 0.00 |
| 3.  Electricity and heating fuel | 0.00 |
| 4.  Water and sewer | 0.00 |
| 5.  Telephone | 0.00 |
| 6.  Garbage | 0.00 |
| 7.  Security | 0.00 |
| 8.  Other utilities: | 0.00 |
| 9.  Insurance: | 0.00 |
| 10. Taxes: | 0.00 |
| 11. Installment payments on equipment: | 0.00 |
| 12. Rental/lease payments: | 0.00 |
| 13. Maintenance of equipment: | 0.00 |
| 14. Advertising | 0.00 |
| 15. Bank service charges | 0.00 |
| 16. Interest | 0.00 |
| 17. Depreciation | 0.00 |
| 18. Office expenses | 0.00 |
| 19. Dues and publications | 0.00 |
| 20. Laundry or cleaning | 0.00 |
| 21. Supplies and materials | 0.00 |
| 22. Freight | 0.00 |
| 23. Travel and entertainment | 0.00 |
| 24. Wages and salaries | 0.00 |
| 25. Commissions | 0.00 |
| 26. Employee benefit programs | 0.00 |
| 27. Pensions/profit sharing plans | 0.00 |
| 28. Production costs: | 0.00 |
| 29. Other expenses: | 0.00 |
| Total Current Monthly Expenses | 0.00 |
| Excess of Income over Expenses | 2,580.00 |

P - 5 9

re Davis, Winston                          96-00718
                                           Case No. (if known)
   Davis, Maria A.
   Debtors

### SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTORS

Complete this schedule by estimating the average monthly expenses of the
debtor and the debtor's family. Prorate any payments made bi-weekly,
quarterly, semi-annually, or annually to show monthly rate.

| | Check this box if a joint petition is filed and debtor's spouse
maintains a separate household. Complete and label a separate
schedule of expenditures.

Rent/home mortgage payments (include mobile home lot)..          400.00

    Are real estate taxes included?  Yes | |    No |X|
    Is property insurance included?  Yes | |    No |X|

Utilities: Electricity and heating fuel...............           200.00
           Water and sewer.............................             0.00
           Telephone...................................            45.00
           Garbage.....................................             0.00
           Security....................................             0.00
           Cable.......................................             0.00

Home maintenance (repairs and upkeep).................             0.00
Food..................................................           400.00
Clothing..............................................            25.00
Laundry and dry cleaning..............................            20.00
Medical and dental expenses...........................             0.00
Transportation (not including car payments)...........           300.00
Recreation, clubs and entertainment,
newspapers, magazines, etc............................             0.00
Charitable contributions..............................            25.00

Insurance: (not deducted from wages or included in
            home mortgage payments.)
           Homeowner's or renter's......................            0.00
           Life.........................................          120.00
           Health.......................................            0.00
           Auto.........................................            0.00

Taxes: (not deducted from wages or included in home                0.00
        mortgage payments.) (specify)

Installment payments: (In chapter 12 & 13 cases, do not
             list payments to be included in the plan.)            0.00

p-60

re Davis, Winston

    Davis, Maria A.
    Debtors

96-00718
Case No. (if known)

Alimony, maintenance, and support paid to others.......        0.00

Payments for support of additional dependents
not living at your home.................................        0.00

Regular expenses from operation of business,
profession, or farm (attach detailed statement)........        0.00
(See Attachment to Schedule J)

                                              -------------------
TOTAL MONTHLY EXPENSES (Report also on Summary)........     1,535.00
                                              -------------------

[FOR CHAPTER 12 AND 13 DEBTORS ONLY]
Provide the requested information below, including whether plan payments
are to be made bi-weekly, monthly, annually, or at some other regular
interval.

A.   Total projected monthly income....................    2,580.00
B.   Total projected monthly expenses..................    1,535.00
C.   Excess income (A minus B).........................    1,045.00
D.   Amount paid into Plan Monthly                      0.00

**Page 2**



*P61*

In re Davis, Winston                                          96-00718

       Davis, Maria A.                              Case No. (if known)
       Debtors

(The penalty for making a false statement or concealing property is a
fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. secs. 152 and 3571.)

### DECLARATION

I, Winston Davis, and I, Maria A. Davis, named as the debtor in this
case, declare under penalty of perjury that I have read the foregoing
Summary and Schedules, consisting of 25 sheets (including this
declaration), and that it is true and correct to the best of my
information and belief.


Signature: _Winston Davis_        Date: _5-22-96_
     Winston Davis


Signature: _Maria A. Davis_       Date: _5-22-96_
     Maria A. Davis


Page 3

p-62

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re: Davis, Winston                        96-00718
       and                                   Case No. (if known)
       Davis, Maria A.
       Debtors

STATEMENT OF FINANCIAL AFFAIRS

---

1.  Income from employment or operation of business.

NONE    State the gross amount of income the debtor has received from
| |     employment, trade, or profession, or from operation of debtor's
        business from the beginning of this calendar year to the date this
        case was commenced.  State also the gross amounts received during
        the two years immediately preceding this calendar year.

        HUSBAND

        This year:       1996                 Amount:
        Source:          unknown at this time
        Last year:       1995 .               Amount:        18,000.00
        Source:          self-employment
        Previous year:   1994                 Amount:        48,626.00
        Source:          self-employment

        WIFE

        This year:       1996                 Amount:
        Source:          none
        Last year:       1995                 Amount:         9,000.00
        Source:          Competion Sales
        Previous year:   1994                 Amount:        19,500.00
        Source:          Competion Sales

---

2.  Income other than from employment or operation of business.

NONE    State the amount of income received by the debtor other than from
|X|     employment, trade, profession, or operation of the debtor's
        business during the two years immediately preceding the
        commencement of this case.

---

3.  Payments to creditors.

NONE    a. List all payments on loans, installment purchases of goods or

*p.63*

re Davis, Winston                                    96-00718
                                                     Case No. (if known)
    Davis, Maria A.
    Debtors

|X|   services, and other debts, aggregating more than $600 to any
      creditor, made within 90 days immediately preceding the
      commencement of this case.

---

NONE  b. List all payments made within one year immediately preceding
|X|   the commencement of this case to or for the benefit of creditors
      who are or were insiders.

---

      4.   Suits and administrative proceedings, executions,
           garnishments, and attachments.

NONE  a. List all suits and administrative proceedings to which the
| |   debtor is or was a party within one year immediately preceding the
      filing of this bankruptcy case.

      Lowes of Dothan            Status: Lawsuit is pending.
      State of Alabama v. Winston Davis
      DC-96-681, Houston County, Alabama

---

NONE  b. Describe all property that has been attached, garnished, or
|X|   seized under any legal or equitable process within one year
      immediately preceding the commencement of this case.

---

      5.   Repossessions, foreclosures, and returns.

NONE  List all property that has been repossessed by a creditor, sold
| |   at a foreclosure sale, transferred through a deed in lieu of
      foreclosure or returned to the seller, within one year immediately
      preceding the commencement of this case.

      Bankers Trust of Madison
      P. O. Box 108
      Huntsville, AL 35804
      repossession of BMW car on 2/19/96 by creditor
      1993 GMC Yukon is in Debtor's possession

---

      6.   Assignments and receiverships.

NONE  a. Describe any assignment of property for the benefit of
|X|   creditors made within 120 days immediately preceding the
      commencement of this case.

---

p- 64

re Davis, Winston

96-00718
Case No. (if known)

Davis, Maria A.
Debtors

NONE
|x|

b. List all property which has been in the hands of a custodian, receiver or court-appointed official within one year immediately preceding the commencement of this case.

7.  Gifts.

NONE
|x|

List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient.

8.  Losses.

NONE
|x|

List all losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case or since the commencement of this case.

9.  Payments related to debt counseling or bankruptcy.

NONE
|x|

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within one year immediately preceding the commencement of this case.

10. Other transfers.

NONE
|x|

List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case.

11. Closed financial accounts.

NONE
|x|

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within one year immediately preceding the commencement of this case.

12. Safe deposit boxes.

Page 3

*D-65*

re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

NONE
|x|

List each safe deposit box or other box or depository in which the debtor has or had securities, cash, or other valuables within one year immediately preceding the commencement of this case.

**13. Setoffs.**

NONE
|x|

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 days preceding the commencement of this case.

**14. Property held for another person.**

NONE
|x|

List all property owned by another person that the debtor holds or controls.

**15. Prior address of debtor.**

NONE
| |

If the debtor has moved within the two years immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case.

HUSBAND    501 East Palmetto St. Geneva, AL 36340
3214 Westwick, Houston, TX 77079

WIFE       501 East Palmetto St. Geneva, AL 36340
3214 Westwick, Houston, TX 77079

**16. Nature, location, and name of business.**

NONE
| |

a. For individuals, list the names and addresses of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the two years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the two years immediately preceding the commencement of this case.

Husband

Business name:    self
Address:          506 W. Main St.

**Page 4**

In re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

Nature:            Hartford, AL 36344
Operation dates:   construction contractor

NONE |X|  b. If the debtor is a partnership, list the names and addresses of all businesses in which the debtor was a partner or owned 5 percent or more of the voting securities, within the two years immediately preceding the commencement of this case.

NONE |X|  c. If the debtor is a corporation, list the names and addresses of all businesses in which the debtor was a partner or owned 5 percent or more of the voting securities, within the two years immediately preceding the commencement of this case.

17. Books, records, and financial statements.

NONE | |  a. List all bookkeepers and accountants who within the six years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

Winston Davis

NONE |X|  b. List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

NONE | |  c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor.

Winston Davis

NONE |X|  d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the two years immediately preceding the commencement of this case by the debtor.

18. Inventories.

Page 5

96-00718
Case No. (if known)

In re Davis, Winston

      Davis, Maria A.
      Debtors

NONE
|X|
  a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

NONE
|X|
  b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

19. Current Partners, Officers, Directors, and Shareholders.

NONE
|X|
  a.  If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

NONE
|X|
  b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting securities of the corporation.

20. Former partners, officers, directors, and shareholders.

NONE
|X|
  a. If the debtor is a partnership, list each member who withdrew from the partnership within one year immediately preceding the commencement of this case.

NONE
|X|
  b. If the debtor is a corporation, list all officers or directors whose relationship with the corporation terminated within one year immediately preceding the commencement of this case.

21. Withdrawals from a partnership or distributions by a corporation.

NONE
|X|
If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during one year immediately preceding the commencement of this case.

Page 6

P-68

In re Davis, Winston                          96-00718
                                              Case No. (if known)
      Davis, Maria A.
      Debtors

(The penalty for making a false statement or concealing property is a
fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. secs. 152 and 3571.)

### DECLARATION

I, Winston Davis, and I, Maria A. Davis, named as the debtor in this
case, declare under penalty of perjury that I have read the foregoing
Statement of Financial Affairs, consisting of 7 sheets (including
this declaration), and that it is true and correct to the best of my
information and belief.


Signature: _Winston Davis_____     Date: _5-22-96_____
      Winston Davis


Signature: _Maria A. Davis_____     Date: _5-22-96_____
      Maria A. Davis


**Page 7**

Kenneth C. Sheets, Jr.
KENNETH C. SHEETS, JR.
P.O. BOX 2093
148 E. MAIN ST.
DOTHAN, ALABAMA   36302
(205) 671-4280
Attorney for the Petitioners

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re                                    Case No.: 96-00718
Winston Davis
Social Security No.: 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         Debtor Statement of Intention

Maria A. Davis                           Chapter 13
Social Security No.: 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
Debtors

FOR:  Husband

1.    I, the debtor, have filed a schedule of assets and liabilities
      which includes consumer debts secured by property of the estate.

2.    My intention with respect to the property of the estate which
      secures those consumer debts is as follows:

      a.    PROPERTY TO BE SURRENDERED

            No property to be surrendered.

      b.    PROPERTY TO BE RETAINED

            No property to be retained.

3.    I understand that section 521(2)(B) of the Bankruptcy Code requires
      that I perform the above-stated intentions within 45 days of the
      filing of this statement with the court, or within such additional
      time as the court, for cause, within such 45-day period fixes.

Date: 5-22-96                            Winston Davis
                                         Signature of debtor

In re Davis, Winston                              96-00718
                                                  Case No. (if known)
        Davis, Maria A.
        Debtors

FOR:  Wife

1.    I, the debtor, have filed a schedule of assets and liabilities
      which includes consumer debts secured by property of the estate.

2.    My intention with respect to the property of the estate which
      secures those consumer debts is as follows:

      a.  PROPERTY TO BE SURRENDERED

          No property to be surrendered.

      b.  PROPERTY TO BE RETAINED

          Property Description
              (Creditor Name)                Method of Retention

          1993 GMC Yukon truck               Retain - reaffirm
          (Bankers Trust of Madison)         (524(c))

          1989 BMW car                       Motion for Return of
          (Bankers Trust of Madison)         Vehicle has been filed
                                             with this Court.

3.    I understand that section 521(2)(B) of the Bankruptcy Code requires
      that I perform the above-stated intentions within 45 days of the
      filing of this statement with the court, or within such additional
      time as the court, for cause, within such 45-day period fixes.

Date: 5 - 22 - 96            Maria A. Davis
                          Signature of debtor

Page 2

Kenneth C. Sheets, Jr.
KENNETH C. SHEETS, JR.
P.O. BOX 2093
148 E. MAIN ST.
DOTHAN, ALABAMA  36302
(205) 671-4280
Attorney for the Petitioners

UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re                                          Case No.: 96-00718
Winston Davis
Winston Davis Contractor                       Rule 2016(b) - Statement of
Debtor                                         Attorney Compensation
Social Security No.: 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               Chapter 13

Maria A. Davis
Debtor
Social Security No.: 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

DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1.  Pursuant to 11 U.S.C. sec. 329(a) and Bankruptcy Rule 2016(b), I
    certify that I am the attorney for the above-named debtor(s) and
    that compensation paid to me within one year before the filing of
    the petition in bankruptcy, or agreed to be paid to me, for services
    rendered or to be rendered on behalf of the debtor(s) in
    contemplation or in connection with the bankruptcy case is as
    follows:

    For legal services, I have agreed to accept....... See below

    Prior to the filing of this statement, I have
    received.......................................... 0.00

    Balance Due....................................... See below
    $900.00 or an amount to be determined by this Court

2.  The source of the compensation paid to me was: N/A

    | | Debtor   | | Other (specify) No previously paid compensation.

3.  The source of compensation to be paid to me is:

    |x| Debtor   | | Other (specify)

4.  |x| I have not agreed to share the above-disclosed compensation with
        any other person unless they are members and associates of my
        law firm.

    | | I have agreed to share the above-disclosed compensation with a

*P - 73*

In re Davis, Winston

      Davis, Maria A.
      Debtors

96-00718
Case No. (if known)

      person or persons who are not members or associates of my law
      firm.  A copy of the agreement, together with a list of the
      names of the people sharing in the compensation, is attached.

5.  In return for the above-disclosed fee, I have agreed to render legal
    service for all aspects of the bankruptcy case, including:

    a.  Analysis of the debtor's financial situation, and rendering
       advice to the debtor in determining whether to file a petition
       in bankruptcy;

    b.  Preparation and filing of any petition, schedules, statement of
       affairs and plan which may be required;

    c.  Representation of the debtor at the meeting of creditors and
       confirmation hearing, and any adjourned hearings thereof;

    d.  Representation of the debtor in adversary proceedings and other
       contested bankruptcy matters;

    e.  Other provisions:

       None

6.  By agreement with the debtor(s), the above-disclosed fee does not
    include the following services:

  N/A

**Page 2**

In re Davis, Winston

    Davis, Maria A.
    Debtors

96-00718
Case No. (if known)

---------------------------------------------------------------

## CERTIFICATION

I certify that the foregoing is a complete statement of any
agreement or arrangement for payment to me for representation of the
debtor(s) in this bankruptcy proceeding.

_5/24/56_
  Date

_____
Signature of Attorney

        KENNETH C. SHEETS, JR.
        Name of law firm

---------------------------------------------------------------

Page 3

*p-75*

Kenneth C. Sheets, Jr.
KENNETH C. SHEETS, JR.
P.O. BOX 2093
148 E. MAIN ST.
DOTHAN, ALABAMA  36302
(205) 671-4280
Attorney for the Petitioners

### UNITED STATES BANKRUPTCY COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

In re                                    Case No.: 96-00718
Winston Davis
Winston Davis Contractor                 Numbered Listing of Creditors
Debtor
Social Security No.: 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         Chapter 13

Maria A. Davis
Debtor
Social Security No.: 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

| Creditor name and mailing address | Category of claim | Amount of claim |
|---|---|---|
| 1. Bankers Trust of Madison P. O. Box 108 Huntsville, AL 35804  0402188670 | Secured claims | 16,353.20 |
| 2. Bankers Trust of Madison P. O. Box 108 Huntsville, AL 35804  0402188670 | Secured claims | 16,353.21 |
| 3. Concrete Services 500 Hillcrest Ave. Hartford, AL 36344 | Secured claims | 412.00 |
| 4. Concrete, Inc. 611 Rogers Rd. Dothan, AL 36301 | Secured claims | 91.87 |
| 5. Dept. of Revenue P. O. Box 327420 Montgomery, AL 36132 | Unsecured claims | 1,579.58 |

P-76-

96-00718
Case No. (if known)

In re Davis, Winston

   Davis, Maria A.
   Debtors

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

6. Doors, Floors, & More     Secured claims          1,449.36
   2331 Ross Clark Cir. SW
   Dothan, AL 36301

7. Dowling Lumber Co.     Secured claims          1,607.20
   507 Dothan Highway
   Hartford, AL 36344

8. Drywall Supply     Secured claims          400.00
   377 Murray Rd.
   Dothan, AL 36301

9. Geneva Appliance     Secured claims          217.00
   700 E. Town St.
   Geneva, AL 36340

10. Houston Heart Centre     Unsecured claims          157.50
   9034 Westheimer, #425
   Houston, TX 77063

7955-9115

11. Internal Revenue Service     Priority claims -          13,726.73
   Austin, TX 73301             taxes and other debts
                             owed to governmental
                             units

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

12. Internal Revenue Service     Unsecured claims          13,994.92
   Austin, TX 73301

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

13. Kirkland Plumb. & Elec.     Secured claims          4,900.00
   Rt. 2, Box 51
   Slocomb, AL 36375

14. Lowes of Dothan     Secured claims          938.05

Page

Page

pg. 77

In re Davis, Winston

Davis, Maria A.
Debtors

96-00718
Case No. (if known)

2961 Ross Clark Circle
Dothan, AL 36301

| | | | |
|---|---|---|---|
| 15. | Harry Pate, Jr.<br>101 E. Campbell St.<br>Geneva, AL 36340 | Secured claims | 500.00 |
| 16. | Robert Conklin<br>803 Whitestone Dr.<br>Geneva, AL 36340 | Secured claims | 624.00 |
| 17. | Ron's Firestone<br>818 E. Town Avenue<br>Geneva, AL 36340<br><br>652679 | Unsecured claims | 592.36 |
| 18. | Southeastern Credit<br>Bureau<br>P. O. Box 248<br>Gastonia, NC 28053<br>2054616305164 | Unsecured claims | 189.64 |
| 19. | Scotty Starling<br>Rt. 1, Box 189<br>Midland City, AL 36350 | Unsecured claims | 1,350.00 |
| 20. | Sterling Practice<br>MGMT GRP of FL, Inc.<br>P. O. Box 200071<br>Dallas, TX 75320<br>0012137196 | Unsecured claims | 177.00 |
| 21. | TRIAD<br>P. O. Box 691027<br>Houston, TX 77269-1027<br><br>288894 | Unsecured claims | 380,00 |
| 22. | TV Index<br>1403 27th St.<br>Kenner, LA 70062 | Unsecured claims | 520.00 |

Page 3

P- 78

In re Davis, Winston                              96-00718
                                                  Case No. (if known)
    Davis, Maria A.
    Debtors

    K1195196

**Page 4**

In re Davis, Winston

     Davis, Maria A.
     Debtors

96-00718
Case No. (if known)

(The penalty for making a false statement or concealing property is a fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. secs. 152 and 3571.)

## DECLARATION

I, Winston Davis, and I, Maria A. Davis, named as the debtor in this case, declare under penalty of perjury that I have read the foregoing Numbered Listing of Creditors, consisting of 5 sheets (including this declaration), and that it is true and correct to the best of my information and belief.

Signature: _____     Date: 5-22-96
       Winston Davis

Signature: _____     Date: 5-22-96
      Maria A. Davis

**Page 5**

ER 13 MEMORANDUM OF MEETING OF CREDITORS AND PLAN - Fri Apr 12, 1996

me: WINSTON DAVIS          Case No. 96-00718   DP ✓ IO ___
     MARIA A DAVIS                             (self-emp)

NOTES _____

Cont'd to 6-14-96 @ 10:00, conf. 6-26 for attorney to snd notice of 10 of plan to creditors

_____

_____

_____

Attorney: KENNETH C SHEETS JR          Attorney Fee: $ 900.00

Payments under the plan are fixed at $.00 , 300 mo.        and the pl
proposes to pay the value of the security on each secured claim and to pay t
unsecured balances and other unsecured claims at the rate of 10.00 percent
Plan months:          Value _____ 1st Mortgage _____
Composition Plan:
  1) Home _____ 2nd Mortgage _____ Other liens _____

  2) Other Real Estate _____ Value _____ Mortgage _____

  3) Real Estate Transfers _____ Value _____ Date _____

  4) Property Unscheduled _____ Value _____

Is the amount to be paid to unsecured creditors equal to or greater than
that such creditors would receive in a Chapter 7 Case? _____

                            YES   NO                              YES   NO
Does the plan comply with the         Has the plan been proposed
the provisions of Chapter 13?  ___ ___ in good faith?            ___   ___

Has good cause been shown for         Has the debtor claimed the
plan extending beyond 3 years? ___ ___ Avoiding powers of 522(f)? ___   ___

The following creditors either hold claims or have been determined to be
secured to the extent of the value of the collateral as reflected below,
and the following specified monthly payments are proposed by the debtor
and recommended.

| PAYMENT | CREDITOR | INTEREST RATE | COLLATERAL | VALUE OF COLLATERAL |
|---------|----------|---------------|------------|---------------------|
|         | Damalil Colesio |        | spec. class. | 200.00 |
|         | Frank Ramirez   |        | spec. class. | 400.00 |
|         | IRS             |        | Priority     | 27,791.65 |
|         | Ala Dept of Revenue |    | Priority     | 1,579.58 |

Recommended for Confirmation? _____

Presiding Officer ___J Jacobs___

27x8

**FILED**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY

96 MAY 20  AM 11: 55

[M. HANK, CLERK]
[U.S. BANKRUPTCY COURT]
[MONTGOMERY, ALABAMA]

| | | |
|---|---|---|
| IN RE: | ) | CASE NO:  96-0011 |
| | ) | CHAPTER 13 |
| WINSTON DAVIS, | ) | |
| MARIE A. DAVIS, | ) | |
| | ) | |
| DEBTORS. | ) | |

## ANSWER TO PETITION FOR REPLEVIN

COMES NOW, BANKERS TRUST OF MADISON, and responds to debtors' Petition for Replevin as follows:

1. Bankers Trust of Madison is without sufficient information to admit or deny the allegations contained in paragraphs 1, 2, 3 of the Petition.

2. Bankers Trust of Madison denies the allegations contained in paragraphs 4 and 6.

3. Bankers Trust of Madison did not attempt to repossess the vehicle until the bank was notified by Arnold's Automotive that the vehicle in question, 1989 BMW, had been abandoned by the debtors.

4. The debtors have survived without the use of this vehicle since October, 1995 and, therefore, said vehicle is not needed for reorganization.

_____
W. MCCOLLUM HALCOMB
Attorney for

OF COUNSEL:

SIROTE & PERMUTT, P.C.
2222 Arlington Avenue South
Birmingham, Alabama 35205
Telephone :  205/930-5255

WMH382105.LGS

26

## CERTIFICATE OF SERVICE

I hereby certify that on this the ____ day of May, 1996, a copy of the foregoing pleading was served on counsel for all parties to this proceeding by placing a copy of same in the U. S. Mail, properly addressed and first-class postage prepaid, to:

Kenneth C. Sheets, Esq.
P.O. Box 2093
Dothan, Alabama 36302

Curtis Reding, Trustee
P.O. Box 173
Montgomery, AL 36101

_____
OF COUNSEL

WMH382105.LGS

FILED

APR 9 96

KAT... M... ... ...
U.S. ...
MONTGOMERY, ALABAMA

In re Davis, Winston

    Davis, Maria A.
    Debtors

Case No. (if known)

96-05718-APG

## SCHEDULE A - REAL PROPERTY

| Description and location of property | Current market value of debtor interest in the property without deducting any secured claim or exemption |
|---|---|
| Nature of Debtor interest in property | Amount of secured claim |

None

Total:                                0.00

In re Davis, Winston

    Davis, Maria A.
    Debtors

Case No. (if known)
96-0718-APS

## SCHEDULE B - PERSONAL PROPERTY

| Type of property<br>Description and location of property | Current market value of debtor interest in property without deducting any secured claim |
|---|---|
| 1. Cash on hand.<br>   None | |
| 2. Checking, savings, or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives.<br>   None | |
| 3. Security deposits with public utilities, telephone companies, landlords, and others.<br>   None | |
| 4. Household goods and furnishings, including audio, video, and computer equipment.<br><br>   household goods, supplies, and furnishings<br>   Owner: Joint<br>   Location: In debtor possession. | Debtor interest:    1,200.00 |
| 5. Books, pictures, and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles.<br>   None | |
| 6. Wearing apparel.<br><br>   wearing apparel and other personal property<br>   Owner: Joint<br>   Location: In debtor possession. | Debtor interest:    800.00 |
| 7. Furs and jewelry.<br>   None | |
| 8. Firearms and sports, photographic, and other hobby equipment.<br>   None | |
| 9. Interests in insurance policies.<br>   None | |
| 10. Annuities.<br>   None | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.<br>   None | |
| 12. Stock and interests in incorporated and unincorporated businesses. | |

p - 85

In re Davis, Winston

      Davis, Maria A.
      Debtors

Case No. (if known)
96-0718-APB

   None
13. Interests in partnerships or joint ventures.
   None
14. Government and corporate bonds and other negotiable and non-
   negotiable instruments.
   None
15. Accounts receivable.

Grady Tolley-2,808.00
Rick Lewellyn-2,640.00
Rick Lewellyn-17,860.00
Charles Ward-5,385.55
David McQueen-840.00
Loss profits/bank-15,000.00

Debtor interest:    44,533.55

TOTAL: 44,533.55
Owner: Joint
Location: In debtor possession.

16. Alimony, maintenance, support, and property settlements to which
   the debtor is or may be entitled.
   None
17. Other liquidated debts owing debtor including tax refunds.
   None
18. Equitable or future interests, life estates, and rights or
   powers exercisable for the benefit of the debtor other than
   those listed in Schedule of Real Property.
   None
19. Contingent and noncontingent interests in estate of a
   decedent, death benefit plan, life insurance policy, or trust.
   None
20. Other contingent and unliquidated claims of every nature,
   including tax refunds, counterclaims of the debtor, and
   rights to setoff claims.
   None
21. Patents, copyrights, and other intellectual property.
   None
22. Licenses, franchises, and other general intangibles.
   None
23. Automobiles, trucks, trailers, and other vehicles or accessories.

1989 BMW car
Owner: Wife
Person holding: lien holder
             Bankers Trust of Madison
             P. O. Box 108
             Huntsville, AL 35804

Debtor interest:    13,500.00

Page 2

P 86

In re Davis, Winston

      Davis, Maria A.
      Debtors

Case No. (if known)
96- 0718 APB

Secured creditor: Bankers Trust of Madison
Amount of claim: 16,353.21

1993 GMC Yukon truck           Debtor interest:     14,500.00
Owner: Wife
Location: In debtor possession.
Secured creditor: Bankers Trust of Madison
Amount of claim: 16,353.20

24. Boats, motors, and accessories.
    None
25. Aircraft and accessories.
    None
26. Office equipment, furnishings, and supplies.
    None
27. Machinery, fixtures, equipment, and supplies used in business.

Small tools used in profession    Debtor interest:     800.00
Owner: Husband
Location: In debtor possession.

28. Inventory.
    None
29. Animals.
    None
30. Crops - growing or harvested.
    None
31. Farming equipment and implements.
    None
32. Farm supplies, chemicals, and feed.
    None
33. Other personal property of any kind not already listed.
    None

Total:     75,333.55

Page 3

FILED

APR 1 0 1996

KATHRYN M HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                    Case No. 96-0718-APG
                                         Chapter 13
WINSTON DAVIS
MARIA A. DAVIS,

            Debtors.

**ORDER SETTING PRELIMINARY HEARING**
**ORDER TREATING MOTION AS A COMPLAINT**

Winston Davis filed a "motion" on March 5, 1996 to stay
prosecution for charges for nonsufficient fund checks.

An adversary proceeding is required to obtain an
injunction or other equitable relief.  Fed. R. Bankr. Proc.
7001(7).  Accordingly, it is

ORDERED that the "motion" shall be treated as a
"complaint."  It is

FURTHER ORDERED that the clerk of court shall assign the
complaint an adversary proceeding number and issue a summons to
the debtor for service on the proper parties.

A preliminary hearing on the complaint will be held
**April 17, 1996 by telephone** at **10:00 a.m.**

Each party desiring to be heard must furnish the clerk
of court, **in advance**, a telephone number to be used and keep
the line open **at least one hour** for the hearing.  This case
will be called as soon as possible.

ORDERED this  9  day of April, 1996.

_____
United States Bankruptcy Judge

c: Debtor
   David C. Emery, District Attorney for Geneva County
   Kenneth C. Sheets, Jr.
   Solomon Grayson
   Harry Pate, Jr.
   Concrete Services
   Concrete, Inc.
   Doors, Floors, & More
   Dowling Lumber
   Lowes of Dothan
   Robert Conklin
   Kirkland Plumbing
   Sherwin Williams Paint
   Douglas Albert Valeska, District Attorney for Houston Co.

15

FILED
APR 17 1996
KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:                                    CASE NO:  96-00718

WINSTON DAVIS and                         CHAPTER 13
MARIA A. DAVIS

FILED
APR 15 1996
KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

NOTICE RESETTING PRELIMINARY HEARING

The Preliminary Hearing originally scheduled for Wednesday, April 17, 1996, at 10:00 a.m. has been **reset for Tuesday, May 7, 1996, by telephone, at 9:00 a.m.** due to the death of the Grandmother of the undersigned counsel.

Each party desiring to be heard must furnish the Clerk of Court, **in advance**, a telephone number to be used and keep the line open **at least one hour** for the hearing. This case will be called as soon as possible.

Dated this the 15th day of April, 1996.

KENNETH C. SHEETS, JR.
Attorney for Debtors
P. O. Box 2093
Dothan, AL 36302
(334) 671-4280

CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Notice Resetting Preliminary Hearing upon the following parties in interest by fax to:

David C. Emery, District Attorney,
Geneva County, AL  (334) 684-3583
Concrete, Inc. (334) 794-2729
Floors, Doors, & More (334) 793-8203
Dowling Lumber (334) 588-2275
Lowes of Dothan, Attn: Lorie Baker, (334) 794-0141
Sherwin Williams Paint (334) 393-9061
Douglas Valeska, District Attorney,
Houston County, AL (334) 671-4231

P-88

16c

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

FILED

MAR 20 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

In re                                    Case No. 96-0718-APG
                                         Chapter 13
WINSTON DAVIS
MARIA A. DAVIS,

            Debtors.

## ORDER DISMISSING MOTION FOR RELEASE OF VEHICLE

The debtors filed a motion on March 18, 1996 to require creditor Bankers Trust of Madison to return a 1989 BMW SN to the debtors.

The debtors may seek this relief only by filing an adversary proceeding.  See Fed. R. Bankr. Proc. 7001.  An adversary proceeding is commenced by filing a "complaint." Fed. R. Bankr. Proc. 7003.  A complaint shall comply with the formal requisites set forth in Fed. R. Bankr. Proc. 7008.

The motion IS DISMISSED.

Done this _20_ day of March, 1996.

_____
United States Bankruptcy Judge

c: Debtors
   Kenneth C. Sheets, Jr., Attorney for Debtors
   Bankers Trust of Madison, Creditor
   Curtis C. Reding, Trustee

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

APR 23 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

TC

In re

Case No. 96-00718-APG
Chapter 13

WINSTON DAVIS
MARIA A. DAVIS,

        Debtors

## ORDER SETTING HEARING

The objection filed by Bankers Trust of Madison, on April 22, 1996, and designated OBJECTION TO CONFIRMATION, is set for telephonic hearing on June 5, 1996, at 10 a.m.

EACH PARTY DESIRING TO BE HEARD MUST FURNISH THE CLERK OF COURT, IN ADVANCE, A TELEPHONE NUMBER TO BE USED AND KEEP THE LINE OPEN AT LEAST ONE HOUR FOR THE HEARING. THE CASE WILL BE CALLED AS SOON AS POSSIBLE.

ORDERED this 23rd day of April, 1996.

_____
United States Bankruptcy Judge

c:  Debtors
    Kenneth C. Sheets, Attorney for Debtors
    W. McCollum Halcomb, Attorney for Creditor
    Curtis Reding, Trustee

P 90

22

Case No. 96-00718-APG
Chapter 13

In re

WINSTON DAVIS
MARIA A. DAVIS,

Debtors

## ORDER TERMINATING STAY CONDITIONALLY

Upon consideration of the motion of the creditor, BANKERS TRUST OF MADISON, for relief from the stay imposed by 11 U.S.C. § 362(a), the court concludes that the motion should be GRANTED CONDITIONALLY. Accordingly, it is

ORDERED that the stay in this case with respect to this creditor, to permit enforcement of a lien against the property of the estate or the debtors described in the motion, is TERMINATED effective 12:00 noon on May 6, 1996, without further order of the court, unless prior to the effective time a party in interest for cause files an objection with the court stating the cause and requests the stay continued in effect. On such request, the objecting party shall immediately give notice to the creditor, and the stay shall continue in effect pending the conclusion of the hearing on the objection and determination of the motion.

If the stay terminates with respect to this creditor, it is FURTHER ORDERED that any claim filed by this creditor be reduced to the amount heretofore paid on the claim by the Chapter 13 Trustee, if any, and that the Chapter 13 Trustee shall pay any amended claim for a deficiency balance that is filed and allowed.

Done this 23rd day of April, 1996.

United States Bankruptcy Judge

c: Debtors
   Kenneth C. Sheets Jr., Attorney for Debtors
   W. McCollum Halcomb, Attorney for Creditor
   Curtis C. Reding, Trustee

*P91*

orders.23

*21.*

*44*



FILED

FEB 22 1996

KATHRYN M. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

Name of Debtor _Davis, Winston + Mark._

Case No. _____
(Court Use Only)

FILING OF PLAN

For Chapter 9, 11, 12 and 13 cases only. Check appropriate box.
☐ A copy of debtor's proposed plan dated _____ is attached.

☒ Debtor intends to file a plan within the time allowed by statute, rule, or order of the court.

**PRIOR BANKRUPTCY CASE FILED WITHIN LAST 6 YEARS (If more than one, attach additional sheet.)**

| Location Where Filed | Case Number | Date Filed |
|---|---|---|
| | | |

**PENDING BANKRUPTCY CASE FILED BY ANY SPOUSE, PARTNER, OR AFFILIATE OF THE DEBTOR (If more than one, attach additional sheet.)**

| Name of Debtor | Case Number | Date |
|---|---|---|
| | | |
| Relationship | District | Judge |
| | | |

**REQUEST FOR RELIEF**

Debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

**SIGNATURES**

X _____  Feb 20, 1996
Signature                 Date

**INDIVIDUAL/JOINT DEBTOR(S)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

X _____
Signature of Debtor

_____
Date

X _____
Signature of Joint Debtor

_____
Date

**CORPORATE OR PARTNERSHIP DEBTOR**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that the filing of this petition on behalf of the debtor has been authorized.

X _____
Signature of Authorized Individual

_____
Print or Type Name of Authorized Individual

_____
Title of Individual Authorized by Debtor to File this Petition

_____
Date

**EXHIBIT "A" (To be completed if debtor is a corporation requesting relief under chapter 11.)**
☐ Exhibit "A" is attached and made a part of this petition.

**TO BE COMPLETED BY INDIVIDUAL CHAPTER 7 DEBTOR WITH PRIMARILY CONSUMER DEBTS (See P.L. 98-353 § 322)**

I am aware that I may proceed under chapter 7, 11, or 12 or 13 of title 11, United States Code, understand the relief available under each chapter, and choose to proceed under chapter 7 of such title.

If I am represented by an attorney, exhibit "B" has been completed.

X _____                _____
Signature of Debtor                Date

X _____                _____
Signature of Joint Debtor          Date

**EXHIBIT "B" (To be completed by attorney for individual chapter 7 debtor(s) with primarily consumer debts.)**

I, the attorney for the debtor(s) named in the foregoing petition, declare that I have informed the debtor(s) that (he, she, or they) may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _____       Feb 20, 1996     5
Signature of Attorney          Date

GRAHAM PIERCE LEGAL PRINTERS • PO BOX 1868 • FAIRVIEW HEIGHTS IL 62208 • PHONE 1 800 851 3899, (IN ILLINOIS) 1-800-237-1607, 1-618 632-5600

47

p93

## Form 1. VOLUNTARY PETITION

| UNITED STATES BANKRUPTCY COURT | VOLUNTARY PETITION |
|---|---|

**Middle** DISTRICT OF **Alabama**

| IN RE (Name of debtor-if individual, enter: Last, First, Middle) | NAME OF JOINT DEBTOR (Spouse) (Last, First, Middle) |
|---|---|
| **Davis Winston** | **Davis Maria A.** |
| ALL OTHER NAMES used by the debtor in the last 6 years (include married, maiden, and trade names) | ALL OTHER NAMES used by the joint debtor in the last 6 years (include married, maiden, and trade names) |
| **Winston Davis, Contractor** | |
| SOC. SEC./TAX I.D. NO. (If more than one, state all) | SOC. SEC./TAX I.D. NO. (If more than one, state all) |
| **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** | **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** |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code) | STREET ADDRESS OF JOINT DEBTOR (No. and street, city, state, and zip code) |
| **506 W. Main st. Hartford, AL 36344** | COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS **Geneva** |
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS **Geneva** | |
| MAILING ADDRESS OF DEBTOR (If different from street address) | MAILING ADDRESS OF JOINT DEBTOR (If different from street address) |

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from addresses listed above) | VENUE (Check one box) |
|---|---|
| | ☒ Debtor has been domiciled or has had a residence, principal place of business or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| | ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

**TYPE OF DEBTOR**
- ☐ Individual
- ☒ Joint (Husband & Wife)
- ☐ Partnership
- ☐ Other:
- ☐ Corporation Publicly Held
- ☐ Corporation Not Publicly Held
- ☐ Municipality

**NATURE OF DEBT**
- ☒ Non-Business/Consumer
- ☒ Business - Complete A & B below

**A. TYPE OF BUSINESS (Check one box)**
- ☐ Farming
- ☐ Professional
- ☐ Retail/Wholesale
- ☐ Railroad
- ☐ Transportation
- ☐ Manufacturing/Mining
- ☐ Stockbroker
- ☐ Commodity Broker
- ☒ Construction
- ☐ Real Estate
- ☐ Other Business

**B. BRIEFLY DESCRIBE NATURE OF BUSINESS**

**CHAPTER OR SECTION OF BANKRUPTCY CODE UNDER WHICH THE PETITION IS FILED (Check one box)**
- ☐ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☒ Chapter 13
- ☐ Sec. 304-Case Ancillary to Foreign Proceeding

**FILING FEE (Check one box)**
- ☒ Filing fee attached
- ☐ Filing fee to be paid in installments. (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b): see Official Form No. 3.

**NAME AND ADDRESS OF LAW FIRM OR ATTORNEY**
**Kenneth C. Sheets, Jr.**
**P.O. Box 2093**
**Dothan, AL 36302**
**Telephone No. (334) 671-4280**

**NAME(S) OF ATTORNEY(S) DESIGNATED TO REPRESENT THE DEBTOR**

☐ Debtor is not represented by an attorney

### STATISTICAL/ADMINISTRATIVE INFORMATION (28 U.S.C. § 604) (Estimates only) (Check applicable boxes)

- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

**THIS SPACE FOR COURT USE ONLY**

#160001

**ESTIMATED NUMBER OF CREDITORS**

| 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**ESTIMATED ASSETS (in thousands of dollars)**

| Under 50 | 50-99 | 100-499 | 500-999 | 1000-9999 | 10,000-99,999 | 100,000-over |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**ESTIMATED LIABILITIES (in thousands of dollars)**

| Under 50 | 50-99 | 100-499 | 500-999 | 1000-9999 | 10,000-99,999 | 100,000-over |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**EST. NO. OF EMPLOYEES - CH. 11 & 12 ONLY**

| 0 | 1-19 | 20-99 | 100-499 | 1000-over |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ |

**EST. NO. OF EQUITY SECURITY HOLDERS - CH. 11 & 12 ONLY**

| 0 | 1-19 | 20-99 | 100-499 | 500-Over |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ |

## FILED

**96 FEB 20  AM 9: 51**

PETER H. ? ?
**KATHRYN H. HAWK, CLERK**
**U.S. BANKRUPTCY COURT**
**MONTGOMERY, ALABAMA**

GRAHAM PIERCE LEGAL PRINTERS • PO BOX 1866 • FAIRVIEW HEIGHTS, IL 62208 • PHONE 1-800-851-3899, (IN ILLINOIS) 1-800-237-1607, 1-618-632-5600

## Form 1. VOLUNTARY PETITION

| UNITED STATES BANKRUPTCY COURT | VOLUNTARY PETITION |
|---|---|

*Middle* DISTRICT OF *ALAbama*

| IN RE (Name of debtor-if individual, enter: Last, First, Middle) | NAME OF JOINT DEBTOR (Spouse) (Last, First, Middle) |
|---|---|
| *Davis, Winston* | *Davis, Maria A.* |
| ALL OTHER NAMES used by the debtor in the last 6 years (include married, maiden, and trade names) | ALL OTHER NAMES used by the joint debtor in the last 6 years (include married, maiden, and trade names) |
| *Winston Davis, Contractor* | |
| SOC. SEC./TAX I.D. NO. (If more than one, state all) | SOC. SEC./TAX I.D. NO. (If more than one, state all) |
| *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* | *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* |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code) | STREET ADDRESS OF JOINT DEBTOR (No. and street, city, state, and zip code) |
| *506 W. Main St. Hartford, AL 36344* | COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS *Geneva* |
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS *Geneva* | |
| MAILING ADDRESS OF DEBTOR (If different from street address) | MAILING ADDRESS OF JOINT DEBTOR (If different from street address) |

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from addresses listed above) | VENUE (Check one box) |
|---|---|
| | ☒ Debtor has been domiciled or has had a residence, principal place of business or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| | ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |

### INFORMATION REGARDING DEBTOR (Check applicable boxes)

| TYPE OF DEBTOR | CHAPTER OR SECTION OF BANKRUPTCY CODE UNDER WHICH THE PETITION IS FILED (Check one box) |
|---|---|
| ☐ Individual  ☐ Corporation Publicly Held | ☐ Chapter 7   ☐ Chapter 11   ☒ Chapter 13 |
| ☒ Joint (Husband & Wife)  ☐ Corporation Not Publicly Held | ☐ Chapter 9   ☐ Chapter 12   ☐ Sec. 304-Case Ancillary to Foreign Proceeding |
| ☐ Partnership  ☐ Municipality | |
| ☐ Other: | FILING FEE (Check one box) |
| **NATURE OF DEBT** | ☒ Filing fee attached |
| ☒ Non-Business/Consumer   ☒ Business - Complete A & below | ☐ Filing fee to be paid in installments. (Applicable to individuals only.) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b): see Official Form No. 3. |
| A. TYPE OF BUSINESS (Check one box) | |
| ☐ Farming  ☐ Transportation  ☐ Commodity Broker | NAME AND ADDRESS OF LAW FIRM OR ATTORNEY |
| ☐ Professional  ☐ Manufacturing/Mining  ☒ Construction | *Kenneth C. Sheets, Jr.* |
| ☐ Retail/Wholesale  ☐ Real Estate | *P.O. Box 2093* |
| ☐ Railroad  ☐ Stockbroker  ☐ Other Business | *Dothan, AL 36302* |
| B. BRIEFLY DESCRIBE NATURE OF BUSINESS | Telephone No. *(334) 671-4280* |
| | NAME(S) OF ATTORNEY(S) DESIGNATED TO REPRESENT THE DEBTOR |
| | *Kenneth C. Sheets* |
| | ☐ Debtor is not represented by an attorney |

| STATISTICAL/ADMINISTRATIVE INFORMATION (28 U.S.C. § 604) (Estimates only) (Check applicable boxes) | THIS SPACE FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors. | *#16000 ½* |
| ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

**ESTIMATED NUMBER OF CREDITORS**

| 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

**ESTIMATED ASSETS (in thousands of dollars)**

| Under 50 | 50-99 | 100-499 | 500-999 | 1000-9999 | 10,000-99,999 | 100,000-over |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**ESTIMATED LIABILITIES (in thousands of dollars)**

| Under 50 | 50-99 | 100-499 | 500-999 | 1000-9999 | 10,000-99,999 | 100,000-over |
|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**EST. NO. OF EMPLOYEES - CH. 11 & 12 ONLY**

| 0 | 1-19 | 20-99 | 100-499 | 1000-over |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ |

**EST. NO. OF EQUITY SECURITY HOLDERS - CH. 11 & 12 ONLY**

| 0 | 1-19 | 20-99 | 100-499 | 500-Over |
|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ |

**FILED**

96 FEB 20 AM 9: 57

KATHRYN H. HAWK, CLERK
U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

GRAHAM PIERCE LEGAL PRINTERS • PO BOX 1868 • FAIRVIEW HEIGHTS, IL 62208 • PHONE 1-800-851-3899, (IN ILLINOIS) 1-800-237-1607, 1-618-632-5600

Name of Debtor *DAVIS, Winston & Maria*

Case No. _____
(Court Use Only)

## FILING OF PLAN

For Chapter 9, 11, 12 and 13 cases only. Check appropriate box.

☐ A copy of debtor's proposed plan dated _____ is attached.

☑ Debtor intends to file a plan within the time allowed by statute, rule, or order of the court.

### PRIOR BANKRUPTCY CASE FILED WITHIN LAST 6 YEARS (If more than one, attach additional sheet.)

| Location Where Filed | Case Number | Date Filed |
|---|---|---|
| | | |

### PENDING BANKRUPTCY CASE FILED BY ANY SPOUSE, PARTNER, OR AFFILIATE OF THE DEBTOR (If more than one, attach additional sheet.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| | | |
| Relationship | District | Judge |

### REQUEST FOR RELIEF

Debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

### SIGNATURES

X _____    _____
Signature                         Date

| INDIVIDUAL/JOINT DEBTOR(S) | CORPORATE OR PARTNERSHIP DEBTOR |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. | I declare under penalty of perjury that the information provided in this petition is true and correct, and that the filing of this petition on behalf of the debtor has been authorized. |
| *Winston Davis* <br> Signature of Debtor | X _____ <br> Signature of Authorized Individual |
| *2/16/96* <br> Date | |
| X *Maria Ann Davis* <br> Signature of Joint Debtor | Print or Type Name of Authorized Individual |
| *2/16/96* <br> Date | Title of Individual Authorized by Debtor to File this Petition |
| | Date |

### EXHIBIT "A" (To be completed if debtor is a corporation requesting relief under chapter 11.)

☐ Exhibit "A" is attached and made a part of this petition.

### TO BE COMPLETED BY INDIVIDUAL CHAPTER 7 DEBTOR WITH PRIMARILY CONSUMER DEBTS (See P.L. 98-353 § 322)

I am aware that I may proceed under chapter 7, 11, or 12 or 13 of title 11, United States Code, understand the relief available under each chapter, and choose to proceed under chapter 7 of such title.

If I am represented by an attorney, exhibit "B" has been completed.

X *Winston Davis*                    Date *2/16/96*
Signature of Debtor

X *Maria Ann Davis*                  Date *2/16/96*
Signature of Joint Debtor

### EXHIBIT "B" (To be completed by attorney for individual chapter 7 debtor(s) with primarily consumer debts.)

I, the attorney for the debtor(s) named in the foregoing petition, declare that I have informed the debtor(s) that (he, she, or they) may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X *Kenneth C. Sheets, Jr.*            Date *2/16/96*
Signature of Attorney

GRAHAM PIERCE LEGAL PRINTERS • P.O. BOX 1866 • FAIRVIEW HEIGHTS, IL 62208 • PHONE 1-800-851-3899, (IN ILLINOIS) 1-800-237-1807, 1-618-632-5600

```
         9600718
#1 Information --------------+-- Debtor #2 Information --------------
st      WINSTON              |  18 First    MARIA A
ast     DAVIS                |  19 Last     DAVIS
Addr 1  4358 OLD RAILROAD BED RD |  20 Addr 1   4358 OLD RAILROAD BED RD
Addr 2  HARVEST AL           |  21 Addr 2   HARVEST AL
6 Addr 3                     |  22 Addr 3
7 Zip Code 35749             |  23 Zip Code 35749
8 Phone #  (000) 000-0000    |  24 Phone #  (000) 000-0000
9 SSN      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       |  25 SSN      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
10 A/K/A                     |  26 A/K/A
11 D/B/A                     |  27 D/B/A
12 Comp #   0000000          |  28 Comp #   0000000
13 Employer 002153           |  29 Employer 000000
   SELF                      |
14 Pay Freq 00               |  30 Pay Freq 00
15 Pay Amt         .00       |  31 Pay Amt           .00
16 Dir Freq 04 monthly       |  32 Dir Freq 00
17 Dir Amt    1,600.00       |  33 Dir Amt           .00
================================================================================
```

P 95

RECEIVED

0 - 1996

KATHRYN H HAWK, CLERK
U.S. BANKRUPTCY COURT
M. ... COUNTY, ALABAMA

Winston Davis
506 W. Main St.
Hartford, AL 36344

Maria A. Davis
506 W. Main St.
Hartford, AL 36344

Kenneth C. Sheets, Jr.
P.O. BOX 2093
148 E. MAIN ST.
DOTHAN, ALABAMA  36302

Internal Revenue Service
Austin, TX 73301

Bankers Trust of Madison
P. O. Box 108
Huntsville, AL 35804

Concrete Services
500 Hillcrest Ave.
Hartford, AL 36344

Concrete, Inc.
611 Rogers Rd.
Dothan, AL 36301

Dept. of Revenue
P. O. Box 327420
Montgomery, AL 36132

Doors, Floors, & More
2331 Ross Clark Cir. SW
Dothan, AL 36301

Harry P. Hall, II
P. O. Box 1165
Dothan, AL 36302

Dowling Lumber Co.
507 Dothan Highway
Hartford, AL 36344

Drywall Supply
377 Murray Rd.
Dothan, AL 36301

Geneva Appliance
700 E. Town St.
Geneva, AL 36340

Houston Heart Centre
9034 Westheimer, #425
Houston, TX 77063

Kirkland Plumb. & Elec.
Rt. 2, Box 51
Slocomb, AL 36375

Lowes of Dothan
2961 Ross Clark Circle
Dothan, AL 36301

Harry Pate, Jr.
101 E. Campbell St.
Geneva, AL 36340

Robert Conklin
803 Whitestone Dr.
Geneva, AL 36340

Ron's Firestone
818 E. Town Avenue
Geneva, AL 36340

Southeastern Credit
Bureau
P. O. Box 248
Gastonia, NC 28053

Scotty Starling
Rt. 1, Box 189
Midland City, AL 3635

Sterling Practice
MGMT GRP of FL, Inc.
P. O. Box 200071
Dallas, TX 75320

TRIAD
P. O. Box 691027
Houston, TX 77269-102

TV Index
1403 27th St.
Kenner, LA 70062

David F. Holmes
103 E. Highway 52
Slocomb, AL 36375

Douglas Valeska, D.A.
Houston County, Alaba
Worthless Check Unit
P. O. Box 1632
Dothan, AL 36302

Geneva County Distric
Court, Worthless Chec
Unit
P. O. Box 247
Geneva, AL 36340

Geneva County Distric
Court Worthless Check
Unit
P. O. Box 86
Geneva, AL 36340

New 5/28/96
96-00718

44

STATE OF ALABAMA
BOARD OF PARDONS AND PAROLES

## SUPERVISOR'S REPORT ON DELINQUENT PROBATIONER

Probationary Judge: **Hon. Charles L. Woods**    Court: **Circuit**

Probationer: **Winston Davis**    Ct. No.: **CC96-219-221**    County: **Geneva**

Race, Sex, Age: **WM-56**    Date of Conviction: **10/31/97**

Offense: **Theft by Deception 1ˢᵗ ; Theft by Deception 2ⁿᵈ**    Date of Probation: **10/31/97**

Sentence: **4 years state penitentiary concurrent**    Probation Period: **3 years**

Date of Delinquency: _____    Probation Expires: **10/31/2000**

Restitution Paid $ **1,280.00 - Balance: $6,399.42**    Supervision Fee Paid $ **two months in arrears**
**($60.00)**

| DELINQUENT CHARGE OR CHARGES |
|---|

*CHARGE NO. 1:*
Violation of Condition No. 1
New Offense - Theft by Deception

*LEGAL FACTS:*

On 7/29/99, the Geneva County Grand Jury indicted Winston Davis for Theft by Deception. Mr. Davis turned
pr------ to Geneva County on a $5,000 cash and a $50,000 -- bond. -- Authorization to Arrest a Probation
Violator will be issued by Probation Officer Greg Hughes. Geneva County.

*DETAILS:*

-- were submitted to this officer by the District Attorney's Office in Geneva County. -- --
Probation Officer Greg Hughes, Geneva County, faxed to me a copy of the Grand Jury indictment from Geneva
County stating. "One Winston Davis, did knowingly obtain by deception unauthorized control over United
States Currency, the property of Alice Kelley in an amount exceeding $1,000.00, with intent to deprive the
owner of said property, in violation of Section 13A-8-3 of the Code of Alabama." A copy of an appearance
bond and also a copy of the writ of arrest was faxed to this officer.

*[handwritten: PETITIONER WINSTON DAVIS'S EXHIBIT 16]*

**FILED IN OFFICE**

**AUG 17 1999**

**CLERK**

## SUPERVISION SUMMARY:

Mr. Davis has been under my supervision since 4/13/99. He has kept me informed of the events occurring during this time on probation.

## RECOMMENDATION:

I recommend that Mr. Davis be brought before Judge Woods to explain his delinquent behavior.

Signed and dated at Huntsville, Alabama, this the 9th day of August, 1999.

*Melanie H. Donaldson*
**Melanie H. Donaldson**
**Alabama Probation and Parole Officer**

MHD/mwt

```
FE52    CRIMINAL FEE SHEET           COUNTY: 34 GENEVA      OFFICE: 1    FEEFE52
CASE: CC 1996 000220 00  PARTY: D 001 DAVIS WINSTON              DOB: 04171943
PAYMENT:   AMT:            ITEM:           KK:      DSB: CC19952 ALT:   00000
-----------------------------------------------------------------------------
CRTACT: C CONVICTED        09301997 WAR: N RCL:    CMP: N SPRO: U  EST: A PST: O
DATE: 1 10311997 DESC: PROB Q: 001 FRE: M AMOUNT: 0000004000  DUEDATE: 03252000
-----------------< ACCOUNTS W/OUTSTANDING BALANCES ONLY: N >------------------
A P  TRANS AMT S F A PR NO ACCT   TO   TOTAL DUE   AMT PAID    BALANCE   HOLD AMT
     000000000 A N  10 01 CF00       0000017700 0000017700 0000000000 0000000000
     000000000 A N  11 01 CF30       0000003200 0000003200 0000000000 0000000000
     000000000 A N  50 01 CF71       0000002500 0000002500 0000000000 0000000000
     000000000 A N  51 01 CF72       0000002500 0000002500 0000000000 0000000000
     000000000 A N  53 01 SO75       0000001000 0000001000 0000000000 0000000000
     000000000 H Y  60 01 R001 R001 0000490000 0000017500 0000472500 0000017500



           CASE GRAND TOTALS: 0000516900 0000044400 0000472500 0000017500
COMMENT:
*** THERE ARE NO MORE ACCOUNTS ON-FILE FOR CASE/PAYOR ***
01=MNU 02=FEE 03=NDX 04=PTY 05=CLR 06=OCS 07=SUG 08=ENF 09=D$$ 10=PHT 11=FWD
12=FIL 13=SNT 14=NXC 15=NXN 16=NAB 17=BOT 18=SAB 19=PRT 20=OFF 22=PFM 24=HLP
```

PETITIONER WINSTON DAVESS
EXHIBIT M

```
FE52      CRIMINAL FEE SHEET              COUNTY: 34 GENEVA      OFFICE: 1    FEEFE52
CASE: CC 1996 00022I 001 PARTY: D 001 DAVIS WINSTON              DOB: 04171943
PAYMENT:   AMT:          ITEM:              KK:     DSB: CC19952 ALT:    00000
----------------------------------------------------------------------------------
CRTACT: C CONVICTED            09301997 WAR: N RCL:    CMP: N SPRO: U  EST: A PST: O
DATE: 1 10311997 DESC: PROB Q: 001 FRE: M AMOUNT: 0000005000   DUEDATE: 10281999
----------------< ACCOUNTS W/OUTSTANDING BALANCES ONLY: N >------------------
A P TRANS AMT S F A PR NO ACCT  TO   TOTAL DUE   AMT PAID     BALANCE   HOLD AMT
  000000000 A N   10 01 CF00      0000017700 0000017700 0000000000 0000000000
  000000000 A N   11 01 CF30      0000002400 0000002400 0000000000 0000000000
  000000000 A N   50 01 CF71      0000002500 0000002500 0000000000 0000000000
  000000000 A N   51 01 CF72      0000002500 0000002500 0000000000 0000000000
  000000000 A N   53 01 SO75      0000001000 0000001000 0000000000 0000000000
  000000000 H Y   60 01 R001 R001 0000155342 0000000182 0000155160 0000000182



           CASE GRAND TOTALS: 0000181442 0000026282 0000155160 0000000182
COMMENT:
*** THERE ARE NO MORE ACCOUNTS ON-FILE FOR CASE/PAYOR ***
01=MNU 02=FEE 03=NDX 04=PTY 05=CLR 06=OCS 07=SUG 08=ENF 09=D$$ 10=PHT 11=FWD
12=FIL 13=SNT 14=NXC 15=NXN 16=NAB 17=BOT 18=SAB 19=PRT 20=OFF 22=PFM 24=HLP
```

PETITIONER WINSTON DAVIS'S
EXHIBIT 18

IN THE 33RD CIRCUIT COURT OF
GENEVA COUNTY, ALABAMA

WINSTON DAVIS
    DEFENDANT,

**FILED IN OFFICE**

FEB 0 2 2006

CLERK

v.

CASE NO. CC-99-126

STATE OF ALABAMA
    PLAINTIFF.

MOTION FOR ORDER TO EXTEND
THE STATUTE OF LIMITATIONS
FOR FILING PETITION FOR RELIEF
FROM FINAL JUDGMENT PURSUANT
TO CODE OF ALABAMA 1975 §
6-2-3 FOR 30 DAYS OR PENDING
THE OUT COME OF PETITIONER'S

PETITIONER WINSTON DAVIS'S
    EXHIBIT 19

PETION FOR RELIEF FROM FINAL
JUDGEMENT, FOR CASES CC-96-219, 220
AND 221.


DONE THIS 2/02/06    RESPECTFULLY
                     Wineta Davis
                     518 SANTOLINA RD.
                     DOTHAN, ALABAMA
                     334 671-8152
                     334 797-4091

CERTIFICATE OF SERVICE

I HERE BY CERTIFY THAT ON 2-02-06
I HAND DELIVERED THE FOREGOING
ON THE CLERK OF COURT AND FOR
CLERK TO COPY AND SUBMIT TO THE
GENEVA COUNTY DISTRICT ATTORNEY.

                     Wineta Davis

1

*SUPPRESSED BY THE DISTRICT ATTORNEY DAVID EMERY OBTAINED ON FEB. 28-04*

(The following interview of Winston Davis was taken by Jimmy Hand
(on the 14th day of July, 1999.



*PETITIONER WINSTON DAVIS'S EXHIBIT 20*

"Geneva.19"

2

INTERVIEW:


HAND:  Okay, today's date is July the 14th, 1999, present is myself Jimmy Hand, Investigator with the DA's Office and Mr. Winston Davis.

If you would, state your name and your address and telephone number and date of birth for the Record?


DAVIS:  My name is Winston Davis, I live at 2100 Trawick Road, Trailer House No. 14, telephone number is 334-677-7755.


HAND:  Okay, and your --


DAVIS:  That's a temporary address.


HAND:  Right.  Your date of birth is --


DAVIS:  6-17-43.


HAND:  Okay.  Mr. Davis, I hold in front of you a Waiver Of Counsel Form that I filled out earlier, and it says, "DA's Office, 7-14-99, time 10:50 a.m., highest grade in school" and you stated that you went through the seventh grade?

3

1    DAVIS:  Yes, sir.

2

3    HAND:  And got a GED through the military --

4

5    DAVIS:  Yes, sir.

6

7    HAND:  -- through the twelfth, and you have two years of

8    technical school?

9

10    DAVIS:  Yes.

11

12    HAND:  And have you read over this form of your constitutional

13    rights?

14

15    DAVIS:  Yes, sir, I have.

16

17    HAND:  And do you understand what each and every one of

18    your rights are?

19

20    DAVIS:  Yes, sir, and -- I'm sorry.

21

22    HAND:  Go ahead.

23

24    DAVIS:  At the bottom there's a paragraph there, there may be

25    some questions that I do not want to answer without an attorney present.

4

HAND:  And we have discussed that in the sense that it's going to sort of be an open format, interview, where I may ask questions and, if you don't -- if you desire not to answer them, you just state that you do not want to answer them without an attorney.

DAVIS:  I understand that.

HAND:  And then we'll continue on and that's the way you'll not answer certain questions?

DAVIS:  Yes, sir.

HAND:  Okay?  Is that the way -- is that the way you want to do it?

DAVIS:  Yes, sir.

HAND:  Okay.  Let's just start off with the fact that -- what we're discussing is in reference to a contract you entered into with a lady from Destin, Florida in reference to repairing a house on Cambell Street in Geneva, Alabama?

DAVIS:  Yes, sir.  What is that address?

HAND:  Let me find it in here.  (Pause)  I'm not sure of the

5

specific address, but it's about middle ways of Cambell Street.

DAVIS:  Yes, sir.  The reason I'm asking, I'm reviewing some checks that they had issued to a Barbara Morris, Winston Davis, and another one from Winston Davis.  One address has 113 East Cambell and one has 115 East Cambell.

HAND:  Okay.

DAVIS:  I only did work on one of those houses.

HAND:  Right.  What it is, that Barbara Morris lives -- you know the house that you did work on?

DAVIS:  Right.

HAND:  She lives in the next house up.

DAVIS:  Yes, sir.

HAND:  She's a sister to Alice Kelly who you, I guess, were doing the work for.

DAVIS:  Yes, sir.

6

HAND:  Okay.  Do you recall when you went into an agreement with this lady in regards to repairing this house?

DAVIS:  In August of 1998.

HAND:  Okay.  And in that particular agreement, what was the context of that?

DAVIS:  Well, if you will notice, you have a basic contract that says what the contractor and the home owner is responsible for, and then there is a page with a lot of writing from room to room.  That's actually a set of plans that I used to do the repairs item by item and each item has a cost by that item.

HAND:  You're referring, I guess, to these sheets here?

DAVIS:  Yes, sir, handwritten pages.

HAND:  Right.  Okay.

DAVIS:  I believe it was one through fifteen.  And that was the original agreement that I do and then about a week or so after I had started on the existing house, she decided that she wanted a bathroom and a screen -- or a porch enclosure built onto the house.

*gave Davis selection on 11-14-98*

7

HAND: Uh-huh.

DAVIS: And in the original -- when I talked to her -- when I went down to her house on a weekend, prior to commencing work on this one, I had told her I would -- the existing house, do the repairs in there within thirty days after she picked out her kitchen cabinets. And it was three weeks after the day before she gave me a selection on the carpet, the painting, and the cabinets she needed. And by this time, she had changed and there was no way that I could complete the job in thirty days because of the hold-up on the selections of the cabinets, and she understood. I told her I need them as soon as possible and she gave them to me approximately three weeks later.

HAND: Okay.

DAVIS: But when the room addition was added on, the bathroom and the porch enclosure, that's the three months additional to that.

HAND: Okay. Did she pay you some money up front --

DAVIS: Yes, sir.

HAND: -- on this job?

DAVIS: She did.

8

1    HAND:  Do you recall how much that was?

2

3    DAVIS:  It was around ten thousand dollars, roughly ten

4    thousand dollars, and I don't see a copy of that check in here.

5

6    HAND:  Let's see, it appeared it was $10,458.40?

7

8    DAVIS:  Yes, sir, that sounds right.

9

10   HAND:  And that was done on August the 17th of '99, does that

11   sound reasonable?

12

13   DAVIS:  Let me check the dates that I signed the written --

14   handwritten estimate on the exhibit, 8-17-98.

15   *for alir Stolime + To Hand, 99, Hand knew at that
     Time alie had lied This was one month/yr*

16   ✗    HAND:  Yeah -- '99, well, no, it would have been '98, I guess.

17

18   DAVIS:  Yes, sir.

19

20   HAND:  Okay, and then that was for $10,458.40, right?

21

22   DAVIS:  Yes, sir.

23

24   HAND:  And --

25

*Hand cuts Davis short*

9

DAVIS:  Approximately that, I don't have a copy of --

HAND:  Right, you don't have a copy of the check?

DAVIS:  No, sir.  So, it's approximately that.

HAND:  But that's approximate?

DAVIS:  Yes, sir.

HAND:  Now, originally you agreed to do the -- the first contract you agreed to do the work for a total of what, do you recall?

DAVIS:  Twenty six thousand, it's written on the last page of that house.

HAND:  $26,146 -- and I can't quite tell, it's fifty something cents, it looks like.  Is this -- is this the figure you're talking about?

DAVIS:  Yes, sir, that is page number 13, I believe.  Let me check mine.

HAND:  Alright.

DAVIS:  (Pause)  $26,146.54 is the interior of the house.

10

HAND:  Okay, and what that figure represents, and correct me if I'm wrong, that represents on the handwritten paperwork Page 1 through this Page 13?

DAVIS:  Yes, sir, and the draw schedule is actually Page 14.

HAND:  Okay.  But, what I'm saying is that $26,000.00, this is the work -- 1 through --

DAVIS:  Thirteen.

HAND:  -- all these pages that you were supposed to do in regards to the total price of $26, 146.00?

DAVIS:  Yes, sir.

HAND:  Alright.  Now, originally when you signed this or came up with this figure, this is the one you're talking about was to be done like in a 30-day period, based on this set of figures, is that correct?

DAVIS:  Commencing upon the date that she gave me --

*cut short m answer*

HAND:  Thirty days from the date that she gave you --

DAVIS:  -- because  it would take me four weeks, or a little

11

longer, to get these cabinets after she made her selections.

HAND: Okay. Let me just look over this right here. I guess the simplest way for me to go through this is you've got -- let's start with Page 1.

DAVIS: Alright, sir.

HAND: Okay. Page 1, Item No. 1, it says "Remove existing plumbing, water lines, drains, cabinets, petition, hot water heater, and windows over sink, etc." And have you completed Item 1?

DAVIS: Yes, sir, I have.

HAND: Okay. Item 2, "Erect new wall between bath and kitchen area."

DAVIS: Yes, sir, that's completed.

HAND: Okay. Item No. 3, "Remove existing electric heater in walls"?

DAVIS: Yes, sir, that is completed.

HAND: Okay. No. 4, "Frame any existing window openings"?

DAVIS: Yes, sir.

12

1    HAND:  Okay.

2

3

4    DAVIS:  That was completed.

5    HAND:  Item 5, "Remove Celotex from ceiling and install

6    sheetrock".  What does "HFT" --

7

8    DAVIS:  Hung, finish and texture.

9

10    HAND:  Okay.

11

12    DAVIS:  That's completed.

13

14    HAND:  So, that's completed.  No. 6, "Cut opening to the

15    laundry room and install 36-inch interior door", is that completed?

16

17    DAVIS:  That's completed with the frame, but the door is not

18    installed.

19

20    HAND:  Is the door on the premises?

21

22    DAVIS:  No, sir, I don't think so.

23

24    HAND:  Do you have the door?

25

13

1    DAVIS:  No, sir.

2

3    HAND:  Have you purchased the door?

4

5    DAVIS:  No, sir.

6

7    HAND:  Okay.

8

9    DAVIS:  I think that I was re-using the door that I taken out from

10   the existing part of the house.

11

12   HAND:  Okay.  No. 7, "Install exterior door units, half wrench,

13   two-inch."  Have you done that?  *Hand does Not know what*

14   *He Talking about*

15   DAVIS:  Yes, sir, I have.

16

17   HAND:  And they're installed and hung?

18

19   DAVIS:  Yes, sir.

20

21   HAND:  Okay.  No. 8, "Install base trim 3 1/2 inch to match

22   existing base trim."  Has that been done?

23

24   DAVIS:  Yes, sir.  Now, if I can interrupt you right there.

25

14

HAND:  Yeah, uh-huh.

DAVIS:  Because whoever built the house put the base trim and the window trim -- because you notice there's only 76 linear foot there.

HAND:  Uh-huh.

DAVIS:  Okay, and it was put in backwards and I didn't want it to look like a sore thumb when I put my new back in correctly, because you can't put it in backwards and the new without putting it in backwards too.  I replaced all the base and the door trim in there, which is approximately twice that amount of linear foot, and I did not charge them one penny for that.

*This was an additional cost and payel for myatil 10-16-98*

HAND:  Okay, but that's been completed, right?

DAVIS:  Yes, sir.

HAND:  Alright.  No. 9, "Prime and prep walls"?

DAVIS:  Yes, sir.

HAND:  Has that been done?

DAVIS:  Yes, sir.

15

HAND:  No. 10, "Install sheetrock on new walls."

DAVIS:  Yes, sir.

HAND:  That has been done?

DAVIS:  Yes, sir.

HAND:  And No. 11, "Install base cabinets",  has that been done?

DAVIS:  No, sir, because it was not ready for the cabinets to be installed.

HAND:  Okay.  Do you have the cabinets?

DAVIS:  Yes, I do.

HAND:  Are they at the house or --

DAVIS:  No, sir.

HAND:  Where are they at?

DAVIS:  That's one of the questions that I will not answer

16

1  without an attorney here present.
2

3            HAND:  Okay.  "Install new wall cabinets."  Have they been
4  installed?
5

6            DAVIS:  No, sir.
7

8            HAND:  Same?
9

10           DAVIS:  Yes, sir, same one because your base goes with your
11 walls.
12

13           HAND:  Okay.  So, you don't want to answer any questions
14 about that?
15

16           DAVIS:  No, sir, about the cabinets.
17

18           HAND:  Okay.  "Install bay window unit with window seat."
19 Has that been completed?
20

21           DAVIS:  No, sir, it has not.  The frame is in.
22

23           HAND:  Okay.
24

25           DAVIS:  But the trim, the wood is there to be done.  The

17

windows have <u>not</u> been delivered to the job.

HAND:  Okay.  Have they been paid for?

DAVIS:  No, sir, they have not.

HAND:  So, you don't have -- you haven't bought the bay
window unit, but you've got everything else --

DAVIS:  I've got the wood framed, the trim is sitting there to be
installed around it.

HAND:  Okay.

DAVIS:  And I would like to comment on why that has not been
done.

HAND:  Yeah, sure.

DAVIS:  Back in March I go up to see Mrs. Townsend, I have to
go to my probation officer.  A couple of weeks earlier, Claude Barwisk had
asked about changing out the electrical panel and new wires -- service wires
going to the outside of the unit.  I gave his bid to Rachel Townsend.  I did not
have anything to do with it.  I suggested that she two or three other bids
because I thought it was too high for what he wanted.  And when I left from

18

their house on Sunday -- Monday morning, I go to my probation officer, I come straight back down here and I don't have any electrical, I don't have no power.

HAND:  Uh-huh.

DAVIS:  And the power was off for three days.  And that's why the windows were not -- and the bay window was not completed.

HAND:  Okay.  Barwick was -- he was not sub-contracting through you?  He was independent --

DAVIS:  Some he contracted through me.

HAND:  Okay, but the electrical part --

DAVIS:  And some that he --

HAND:  -- was not a sub-contract through you?

DAVIS:  The wiring inside the existing house, he did some on that on a sub-contract basis.

HAND:  Through you?

19

1    DAVIS:  Yes, from me.

2

3    HAND:  Okay.

4

5    DAVIS:  But the changing out the electrical panel, he did that

6    through Rachel Townsend and through the _____.

7    *What is the Blank for?*

8    HAND:  Okay.  No. 15 says, "Paint wall latex, two coats, owner

9    choice of color."  Has the wall been painted?

10

11    DAVIS:  _____.

12    *Same?*

13    HAND:  Okay.  No. 16, "Install new plugs and --"  I can't tell

14    what that other --

15

16    DAVIS:  Plugs and switches.

17

18    HAND:  " -- and lots of plugs at corners."  Has that --

19

20    DAVIS:  The plugs have been installed, the wiring and the plugs

21    have been relocated and installed.  Okay, the switch plate covers have not

22    been installed and they were on the job when I left.

23

24    HAND:  Okay.  Is the wiring hooked up?

25

20

1  DAVIS:  Yes, sir.

3  HAND:  Okay.

5  DAVIS:  The breaker is off in the breaker box.

7  HAND:  Okay.  No. 17, "Install some formica counter tops"?

9  DAVIS:  Yes, sir.

11  HAND:  Has that been done?

13  DAVIS:  No, sir, for the reason as I have asked for much for a
14  selection and I can't install it without installing the cabinets, but I just got the
15  selection on the River Rat -- the day of the River Rat Festival and she gave
16  me a formica chip of the color that she wanted.

18  HAND:  Okay.  Has the counter top been purchased?

20  DAVIS:  No, it has not because I was working in the bathroom
21  when they terminated me.

23  HAND:  Okay.  No. 18, "Install ceiling fans with light kits in the
24  breakfast area."  Has that been done?

21

1    DAVIS:  No, sir, that's the final trim that was on the job and it

2    has not been purchased.

4    HAND:  No. 19, "Install light fixtures over the sink and ceiling,

5    allowance two-inch."

7    DAVIS:  No, sir, that has not been done because the sink is not in

8    because the cabinets are not in.

10    HAND:  Right.  "Install vinyl flooring."  Has that been done?

12    DAVIS:  No, sir, they had changed from vinyl flooring to a

13    ceramic tile.  Now, the ceramic tile was put on hold so I would have enough

14    of it.  *Check The page of Tape recorder I do Not*

15    *remember saying That*

16    HAND:  Okay.

18    DAVIS:  But I had not purchased it.

20    HAND:  Okay.  Alright 21, "Install shoe trim."

22    DAVIS:  No, sir, that's not installed until your ceramic tile or your

23    vinly has --

25    HAND:  Right.  No. 22, "Install water line to ice maker."

22

DAVIS:  No, sir, that's not installed until the cabinets are installed and it runs behind the cabinets to your refrigerator.

HAND:  Right.  "Install 220-volt for new stove."

DAVIS:  No, sir, it changed from electric to a gas, the gas line is installed.

HAND:  So, this Item 23 was changed to gas and the line has been run, right?

DAVIS:  Yes, sir.  Now, a 110 plug has been put there to plug the stove in.

HAND:  Right.

DAVIS:  Okay.  So, I didn't pay anything for the gas line.  The gas company installed it for the homeowner at no cost.

HAND:  Right.

DAVIS:  But I did put a 110-volt there to switch your -- plug your stove in so you would have lights and a timer.

HAND:  Right.  No. 24, "Vent hood for the stove."

23

DAVIS: No, sir.

HAND: That hasn't been put in because the cabinets are not in?

DAVIS: The cabinets are not in.

HAND: And has it been purchased yet?

DAVIS: No, sir.

HAND: Okay. No. 25, "Prime and paint door with oil-base paint."

DAVIS: All the doors are primed and painted.

HAND: Okay. No. 26, "Install cased opening to new kitchen area."

DAVIS: Now, this was in the original contract, okay. There was to be a -- that was a -- they went to an arched door. The arched door is complete.

HAND: Okay. Alright, so, this was changed to an arched type door?

24

1     DAVIS:  Yes, and the dry wall, the metal is in there for the arch.

2    The dry wall has been hung, finished, and painted -- textured and painted, and

3    the base board has been trimmed.

4

5     HAND:  Okay.  Then on Page 4, is that correct, we're going to

6    Page 4 now?

7

8     DAVIS:  Yes, sir, and then it says, "Kitchen area", sub-total at the

9    top.

10

11     HAND:  Right, $11,464.24?

12

13     DAVIS:  Yes, sir.

14

15     HAND:  And then it says, "Bathroom, new size, 8X12.8"?

16

17     DAVIS:  Yes, sir.  That was after I moved the wall.  If you

18    remember in the first area in the kitchen area, it was to remove that wall.

19

20     HAND:  Right.

21

22     DAVIS:  To enlarge that bathroom.

23

24     HAND:  Okay.  Item No. 1 on Page 4 says, "Tear out ceramic tile

25    tub, plumbing lines, commode, celetex ceiling, sheetrock wall, etc."  Has that

25

been done?

        DAVIS:  Yes, sir.

        HAND:  Okay.  Item No. 2, "Install new wall for shower unit
with _____?_____ of 42 X 42."  *Shower Ceramic Tile Was*
*moved (allowance) To New Bath*
*The Fiberglass Shower Was Extra*
*see invoice 10-98*

    *?*    DAVIS:  No, sir, she changed that as well and went from a --
now, it was built.  I did have that wall built for it, okay.

        HAND:  Uh-huh.

        DAVIS:  But she wanted -- she came up here and Diane came up
the day -- if you'll look at that last page, that has a -- I think it's No. -- Page No.
16 is where they wanted the hall bathroom to go back to a minimum size and
a big bathroom be put out in the addition on the back side and cut a hole
through the master bedroom so that Gordon would have his own bathroom
and have a bigger bathroom because there was not enough room to put a five
by five -- five foot by five foot shower, they only had a 42-inch by 42-inch
shower.

        HAND:  Okay.

        DAVIS:  Now, they changed that bath on me three different
times.  Where the plumbing went, I busted the concrete out three different

26

1  time, I re-ran my water lines and I re-ran my drain lines in that bathroom three

2  different times trying to satisfy them on where everything was to be located in

3  there.

4

5      HAND:  Okay.

6

7      DAVIS:  But the wall was built and it was tore out and then a

8  fiberglass shower was put in there, according to their wishes. *and agreed*

9  *To Pay Extra Cost and They did all removed 10-16-98*

10     HAND:  Okay.  Item No. 3, "Erect a new wall for linen cabinet."

11

12     DAVIS:  Yes, sir, I did that and she didn't like how the room was

13  compact.  The bathroom was compact and she said she wanted the larger area

14  for the commode, so, I tore that out.

15

16     HAND:  Okay.  No. 4, "Install wiring for new bathroom."

17

18     DAVIS:  Yes, sir.

19

20     HAND:  And that's been completed?

21

22     DAVIS:  That's completed.

23

24     HAND:  And "install wiring", that means hooked up?

25

27

DAVIS:  No switches and switch plate, but -- *cut off*
*By Hand, World Not let Davis*
*Explain*

HAND:  But I mean the wiring --

DAVIS:  The wires are hooked into the meter base.

HAND:  Okay.

DAVIS:  Or to the breaker box.

HAND:  To the breaker box, right.  No. 5 -- Item No. 5, "Install new exhaust fans."

DAVIS:  Yes, sir, that was completed.

HAND:  Alright.  Item No. 6, "Install waterproof sheetrock on ceiling and walls." *see Cascani Statement, ask The Court if we can cut on a piece of sheetrock and Have it Tested*

DAVIS:  Yes, sir.

HAND:  And that's been --

DAVIS:  That was complete, finished and textured and painted.

HAND:  Okay.  Item No. 8 --

28

DAVIS:  "Primed", let me correct that, that was primed.

HAND:  Okay.  "Install --"

DAVIS:  "Install vinyl liner -- "

HAND:  Oh, "Vinyl liner for shower."

DAVIS:  Yes, sir.  Now, remember, we had a 42-inch by 42-inch --

HAND:  Right.

DAVIS:  -- ceramic tile shower going in there and it went to a fiberglass shower, okay, which don't require a liner.

HAND:  Right.

DAVIS:  Now, at this time, Mr. Hand, let me bring to your attention --

HAND:  Right.

DAVIS:  I had -- and the next one down will explain to -- this is where they wanted the expensive or the stuff going from the hall bath to the

29

master bath in the addition that I was building on.

HAND: Uh-huh.

DAVIS: So, the ~~175~~ was not to be in this bathroom in the hall, it was to be moved to the bathroom in the addition.

HAND: Okay. Alright, No. 9, "Install ceramic tile in shower and floor, on wall." Has that been done?

DAVIS: No, sir, this was the 42 X 42 shower in the hall bath and existing bathroom, and this is where, I believe, a dispute came between me and the Granthams and the Townsends because, if you'll look there, I have 114 square foot at $8.25.

HAND: Uh-huh.

DAVIS: That's installed, grouted and all, and it's purchased.

HAND: Right.

DAVIS: I had over 140 square foot, 200 -- 230 square foot going into the new addition and I told them that would be an additional cost and they refused to pay it because they had checked the price of the tile and they said they could still buy the tile that they wanted for $8.25 a square foot.

30

and the labor would take care of it. And I tried to explain to them, "Well, in each one of these items I have a labor and I have a profit built into each one to purchase the material with and I'm entitled to an additional -- total came to $1,897.50."

HAND: Uh-huh.

DAVIS: But they only wanted to pay the $940.00.

HAND: Okay.

DAVIS: Because I had purchased -- you did not see in that bathroom, in the hall bathroom, a ceramic tile -- I mean a fiberglass shower combination. I had purchased that and I had told them that if I'm moving the stuff from the hall bath to out there, then someone needs to pay me for the ceramic tile and the difference in the shower. *Shower was payed 10-16-98 See invoice*

HAND: Okay.

DAVIS: The fiberglass shower.

HAND: So, the ceramic tile and shower is installed though, right? *Hand is Tyring To lead Davis own*

DAVIS: Just the shower, not the ceramic tile.

31

HAND: Okay.

DAVIS: Okay. Then this is where that they didn't --

*Hand Trying To Lead Davis By Not letting Davis Explain The earliest*

HAND: Came into the -- this is about the square footage, right?

DAVIS: Right, yes, sir, and that's why I did go as far as going and picking up tile samples and taking them down to Mrs. Kelly. I met her up here at Barbara's house on the River Rat Day, gave her the tile samples. I had been trying for weeks to get her to come up and I have a memo here that I gave her sister to have her come to Dothan to pick out the ceramic tile.

HAND: So, is this the tile that you say that you've got more or less on lay-away? You've got it -- *Hand is Trying To put Words in Davis mouth There is nothing about A Lay away in My statement.*

DAVIS: No, sir, now I did not pay for it. There was no intentions of me paying for it until I was -- they sent the supply house a check, and this is what I told the supply house, "I will call them, I have given you the *Check verified* square foot, you have given me the price of the tile, and I need them to pay for it because they are holding close to twelve hundred dollars that they had set aside for the ceramic tile." (

HAND: Okay.

DAVIS: And they refused to send it to them.

32

HAND:  Alright.  Item No. 10, "Install shower and door glass."

DAVIS:  No, sir, it's not installed because the ceramic tile has to be in first.

HAND:  Right.  Item No. 11, "Install 36-inch base vanity with drawers on one side and doors on the other."

DAVIS:  I had that -- no, that's the vanity, no, sir.

HAND:  Okay. Has the vanity --

DAVIS:  That has been ordered with the cabinets.

HAND:  Okay.

DAVIS:  And that's a question that, you know, I'm on record on.

HAND:  Right.  Item No. 12, "Install vanity bowl and top one piece."

DAVIS:  No, sir, that has not been installed because you can't install it without the cabinets.

HAND:  Item No. 13, "Install base trim", and I guess the same

33

1    thing, that hasn't been installed because you can't do it until --

2

3        DAVIS:  Yes, sir.  Now, the base trim has been primed and

4    painted and on the job.

5

6        HAND:  Okay.  Alright.

7

8        DAVIS:  Or, it was on the job when the last day I worked over

9    there.

10

11        HAND:  Item No. 14, "Install linen cabinet", and it gives the

12    dimensions of it.  Has that been installed?

13

14        DAVIS:  I installed the frame for it and she said that she didn't

15    want it and she wanted more room for the other, but I built the walls -- it's a

16    slide-in and it fits in the walls.  It's only eleven and-a-half inches deep and I

17    built a two-foot wall there so it would match with the shower.  I just extended

18    the shower wall so that you could put a hollow wall here and slide the cabinet

19    in.

20

21        HAND:  And it says, "Prime and paint walls with latex paint, two

22    coats."

23

24        DAVIS:  It's been primed.

25

34

HAND: It's been primed.

DAVIS: And I believe there's one coat of paint on it, but it needs one more and that was one of the things that I was doing when I walked out of the master bathroom because it needs another coat touched up on the walls and the doors and stuff like that and then it's finished, nobody goes in and skin it -- skins it up.

HAND: Right. Item No. 16, "Install new faucets and water supply for vanity and shower."

DAVIS: The shower faucets have been installed, the vanity hasn't because it's a cabinet. But the water supply lines, yes, sir, they're installed.

HAND: Item No. 17, "Install mirror over vanity."

DAVIS: No, sir, that has not been installed.

HAND: Has the mirror been purchased?

DAVIS: No, sir.

HAND: Item No. 18, "Install light fixtures, one ceiling and two bulbs."

35

DAVIS:  No, sir, it has not been installed or purchased.

HAND:  Okay.

DAVIS:  But now these items that you're asking me if I purchased, I still have almost two thousand dollars of their money to purchase these items.

HAND:  Alright.  Item No. 19, "Prime and paint base with oil paint, two coats."

DAVIS:  That's on the job, it has not been installed, and it's been primed and painted once.  It needs one more coat of paint on it.

HAND:  Item 20, "Prime and paint door, two coats oil on each."

DAVIS:  The door is there and I believe it's been primed and I believe it's got one coat of paint on it.

HAND:  Item 21, "Install new vinyl flooring, eleven yards."

DAVIS:  No, sir, they never gave me a selection of the vinyl to go in that bathroom.  I have a memo here that I gave them for it, it needed the vinyl selections.

36

HAND:  Okay.

DAVIS:  And this was -- it was turned into Rachel Townsend in March of '99.

HAND:  Item 22, "Install new shoe trim."

DAVIS:  No, sir, that's not installed and it has not been purchased.  I had too much stuff there to keep bringing the stuff out to the job and they kept wanting me to deliver it and I knew they would terminate me if I delivered all the material and this is the same thing that Richard Lewellen done to me.  That's why I got in trouble last time.  I sent all the material out there and I was fired.

HAND:  Item No. 23, "Install new commode."

DAVIS:  No, sir, the commode has not been purchased.

HAND:  Okay.

DAVIS:  And not installed.

HAND:  Item 24, "Install handicap handrail at commode and in shower."

37

1    DAVIS:  There is support -- remember the shower was supposed

2    to have been ceramic tile?

3

4    HAND:  Right.

5

6    DAVIS:  And it goes to fiberglass and there is no way you can

7    install a handicap rail in a fiberglass shower.

8

9    HAND:  Okay.

10

11    DAVIS:  But the supports were put in the wall before I put the

12    wall there.  It was already in the wall when it went from a fiberglass shower --

13    a fiberglass tub to a fiberglass tub and shower.  *Check , recorder*

14

15    HAND:  Okay.  Item No. 1, "Remove celotex from ceiling in -- "

16

17    DAVIS:  This is the master bedroom and closet?

18

19    HAND:  Master bedroom and closet, yeah.

20

21    DAVIS:  Yes, sir.

22

23    HAND:  "Remove the celotex from ceiling and hang --

24

25    DAVIS:  Hang, finish and texture sheetrock --

38

HAND:  -- hang sheetrock?

DAVIS:  Yes, sir, it's complete.

HAND:  Okay, Item No. 2, "Install base trim in closet."

*see invoice 10-16-98*
*Alice Kelly pay ed for New Base, Window & Door Trim*

DAVIS:  That's complete.

HAND:  Three, remove --

DAVIS:  If we could stop there for just a second?

HAND:  Yeah, uh-huh, yeah.

DAVIS:  In the closet, there was no base trim in the closet.  If you will inspect that house, you will find all new baseboard throughout that addition -- in that room, rather, in the master bedroom, and they were not charged one penny for it.  And if I remember correctly, they -- and I do remember correctly, _____?_____ says, "If you can't get a bay window into there, because it's a block wall, not brick, and I thought it was a brick house, I'll trade you out the bay window for the new baseboard and the window trim and the door trim in the house.  And I really believe that's -- that I believe that.  I mean I think that's what she -- I know that's what she said.

*↑ check recorder*

39

HAND:  Okay.  Let's see --

DAVIS:  So, you're talking about probably another $150.00 added onto that twenty-three that I did, and I paid for it and started.

HAND:  Okay.  Item No. 3, "Remove electric heater from wall."

DAVIS:  Yes, sir, complete.

HAND:  Alright.  Item No. 4, "Prime and prep wall."

DAVIS:  Yes, sir, it's complete.

HAND:  Alright.  Item No. 5, "Prime, prep and paint, oil, all wood doors, two coats."

DAVIS:  Yes, sir, that's complete.  And if I could stop you just a second and go back to No. 4, Item No. 4.

HAND:  Alright.

DAVIS:  This undoubtedly is where the lady lived more in the house and there was so much nicotine on the wall that my paint and my sheetrock finish texture, or my prep, fell off and I had to completely redo that and I did not complain.  That bedroom has got about five or six coats of paint.

40

instead of two.

HAND:  Okay.  Alright, Page 8, Item No. 6, "Prime and paint base trim, two coats of oil."

DAVIS:  That's complete.

HAND:  Item No. 7, "Paint wall, two coats of latex."

DAVIS:  That's complete.  That's the one that I'm saying that's got about five coats --

HAND:  Five coats on it?

DAVIS:  Yes, sir.

HAND:  Item No. 8, "Ceiling fan with --

DAVIS:  No, sir.

HAND:  -- light kit."

DAVIS:  That's not been installed, but I have the money to pay for it.

41

HAND: Alright. It hasn't been installed?

DAVIS: No, sir.

HAND: And you haven't purchased it, but you do have the money for it?

DAVIS: Yes, sir. But see, that's the -- one of the last things that --

HAND: Right, I understand. That's a final part of it?

DAVIS: Yes, sir, that's the "trim-out" they call it.

HAND: Right. No. 9, "Sand and refinish --

DAVIS: Hardwood floors.

HAND: -- hardwood floors."

DAVIS: No, sir, that has not been done because she wanted carpet instead of the refinishing of the hardwood floors. And this was one of the changes that was made after the work was done.

HAND: Okay.

42

DAVIS:  I'm a floor finisher and I have done it at the Townsend's house up there in the room addition that I built and they told me that I done a beautiful job, okay?

HAND:  Uh-huh.

DAVIS:  So, this was some of the items that I was doing to -- to save the cost and make as much money -- I'm not a carpet installer.

HAND:  Right.

DAVIS:  But there was no complaint from me.  I was trying to give Mrs. Kelly what she wanted --

HAND:  Right.

DAVIS:  -- because there was still enough money in there -- that's $18.00 a yard with the pad installed, okay?

HAND:  Right.

DAVIS:  Okay, nine square foot to a yard, so, it came out to equal the same thing, other than I'm paying it out to somebody else instead of making part of that money myself.

43

HAND:  Right, right.  Alright, then we show front end bedroom and closet?

DAVIS:  Yes, sir.

HAND:  Item No. 1, "Remove celotex from ceiling, install sheetrock and hand -- "

DAVIS:  Yes, sir.

HAND:  That's been done?

DAVIS:  Yes, sir.

HAND:  Item No. 2, "Install base trim in closet."

DAVIS:  Yes, sir.  And if you'll notice again, all of the base trim and the window trim and the door trim was replaced in there.

HAND:  Alright.  Item No. 3, "Remove electric heater from wall."

DAVIS:  Yes, sir, that was complete.

HAND:  Alright.  Item No. 4, "Prime and prep wall."

44

DAVIS:  Yes, sir, that was complete.

HAND:  Item No. 5, "Prime and prep paint, oil, on doors, two coats."

DAVIS:  Yes, sir, and I actually put about four or five coats on those doors because they had been stained and varnished before and they were in bad shape and they still don't look like brand new doors.

HAND:  Right.

DAVIS:  But they are a hundred percent better than what they were.

HAND:  Item No. 6, "Paint walls, latex two coats."

DAVIS:  Yes, sir.

HAND:  Item No. 7, "Paint base trim, oil, two coats."

DAVIS:  Yes, sir.

HAND:  Item No. 8, "Ceiling fan and light kit."

DAVIS:  No, sir, that's one of those items that I have the money

45

1  for --

3  HAND:  Right, but you are waiting to finish up the room and let
4  that be last?

6  DAVIS:  Yes, right.

8  HAND:  Item No. 9, "Refinish --

10  DAVIS:  Hardwood floors.

12  HAND:  -- hardwood floors"?

14  DAVIS:  Yes, sir.  There again, they wanted carpet.

16  HAND:  Alright.  That went to carpet also?

18  DAVIS:  Yes, sir.

20  HAND:  Alright, first bedroom and closet --

22  DAVIS:  Yes, sir.

24  HAND:  It says, "Remove celotex from ceiling, hang sheetrock
25  and hang and finish the trim."  Has that been done?

46

DAVIS:  Yes, sir.

HAND:  Alright.  No. _____, "Install base trim in closet."

DAVIS:  Yes, sir.

HAND:  Three --

DAVIS:  There again, all of the base trim has been replaced, and the window trim and the door trim.

HAND:  Item No. 3, "_____ heater to wall."

DAVIS:  Yes, sir, that's complete.

HAND:  Four is prep the wall?

DAVIS:  Yes, sir, that's complete.

HAND:  Five is prime and prep and paint doors, oil, two coats?

DAVIS:  Yes, sir, that's complete.

HAND:  Paint wall latex, two coats?

47

DAVIS:  Yes, sir.

HAND:  Seven is prime and paint base trim?

DAVIS:  Yes, sir.

HAND:  Eight is ceiling fan and light kit and _____

_____?

DAVIS:  _____

_____, light fixtures, that goes in last.

HAND:  And then nine says refinish --

DAVIS:  Hardwood floors.

HAND:  Oh, okay, hardwood floors.  Was this also --

DAVIS:  _____ the carpet, yes, sir.  _____

_____ the carpet.

HAND:  It says hall 18 X 4, remove celotex from ceiling and
hang sheetrock and finish --

DAVIS:  Completed.

48

HAND:  Alright, _____ the walls?

DAVIS:  Completed.

HAND:  Item 3, paint the walls, two coats?

DAVIS:  Completed.

HAND:  Item 4, prime and paint base trim?

DAVIS:  Completed.

HAND:  Item 5, prime and paint doors and oil, two coats?

DAVIS:  _____

_____, the doors going into the bathroom and the air

condition room door, I believe, needs another coat.

HAND:  Okay.  Item No. 6?

DAVIS:  The light fixtures, and they've _____ been

completed.

HAND:  Okay.  Item No. 7, "Sand and finish hardwood floors",

was that changed to carpet?

1    DAVIS:  Change to carpet, yes, sir.

2

3    HAND:  Item -- let's see, the living room.  Item No. 1, "Remove

4    the celotex and hang sheetrock."  Has that been done?

5

6    DAVIS:  Yes, sir.

7

8    HAND:  _____?

9

10    DAVIS:  Yes, sir.

11

12    HAND:  _____ remove electrical heater?

13

14    DAVIS:  Yes, sir.

15

16    HAND:  _____ walls?

17

18    DAVIS:  Yes, sir.

19

20    HAND:  Four, _____

21    _____?

22

23    DAVIS:  Yes, sir.

24

25    HAND:  Five, paint the walls, latex two coats?

50

DAVIS:  Yes, sir, complete.

HAND:  _____, oil base, two coats?

DAVIS:  Yes, sir, complete.

HAND:  Seven, "Install exterior front door unit."

DAVIS:  Yes, sir, that's complete.

HAND:  No. 8, "Install ceiling fans", and that would be not installed, right?

DAVIS:  Right.

HAND:  Same answer?

DAVIS:  Yes, sir.

HAND:  Refinish hardwood floors.  That was changed to carpet?

DAVIS:  Changed to carpet, yes, sir.

HAND:  No. 10 says prime and paint door, two coats.

51

DAVIS:  Yes, sir, and they're metal doors, _____

_____, they _____

_____ three coats.


HAND:  Alright. _____

_____, has that been done?


DAVIS: _____

_____ and I believe it's two coats of paint on it and it needs

one more.


HAND:  Alright.  No. 2, "Install hot water heater."


DAVIS:  Yes, sir, that's complete.


HAND:  That's complete?


DAVIS:  Yes, sir.


HAND:  No. 3, "Install cold water and hot water _____

_____ in the back."


DAVIS:  Yes, sir, complete.


HAND:  No. 4, "Install _____

52

_____?

DAVIS:  The dryer outlet -- the vent has not been installed, but the washer has a _____, if I can remember correctly, I think that's it, because we _____ -- we wrapped them with insulation.

HAND:  No. 5, "Install light fixtures?

DAVIS:  There's a light fixture there, I have not installed it yet. There again, I have to wait _____.

HAND:  Right.  Now, that pretty well gets what you had agreed to on the first contract, right?

DAVIS:  Yes, sir.

HAND:  And that was for a total of some $26,000.00?

DAVIS:  $_____.

HAND:  Then there came a point in time that, other than the changes that we've discussed such as the ceramic tile in the bathroom changes and the carpet changes, was there some other changes that came about?

53

DAVIS:  Other than the tile in the kitchen floor and it went to ceramic tile.

HAND:  Okay.

DAVIS:  All the _____

_____ the house from the meter at the street were galvanized and they had rusted through and I didn't want to complete the house and then water lines bust, so, I had those replaced.  And that's not anywhere in my estimate.  *Payed By alice 10-16-78*
*Payed 10-16-98*

HAND:  Okay. _____ No. 16?

DAVIS:  _____

_____.

(Tape inaudible for the rest of this side.  Moving to second (side of tape as follows:

HAND:  Okay.

DAVIS:  And Diane was there.

HAND:  Okay.

54

DAVIS:  We were sitting -- I already had my sheetrock stocked in the building and we were sitting there on a two and-a-half foot I striking sheetrock.

*Check reorder*

HAND:  Right.

DAVIS:  Okay.  Then I would adjust my contract back down to $36,500.00 because you -- you can look on my copies that there's a roof and there's vinyl siding in the other seventeen, I believe it is seventeen -- one through six -- no, this is one through fifteen.

HAND:  Right.

DAVIS:  Alright.  Now, she agreed that if I had to hire some help to get the room addition dried in, then I could do the rest of the work myself.  And one man, it's going to take him a while.  She -- and I understand.  And I said, "You have an allowance in these items in here.  We have to go by those allowances.  This is going to be a builder's grade house, not a designer's grade for this amount of money", and they agreed on it.  Now, this is where they got turned around, Mr. Hand.

HAND:  Uh-huh.

DAVIS:  And you can go ahead and read what was in there, okay.

55

HAND: Alright, it says all items _____ -- and this was dated 8-22-88 or '98. It says '88, but I'm sure they meant '98.

DAVIS: Yes, sir. *This is Where Davis Will make His defence on alice Kelly misunderstanding of The contract.*

HAND: It says, "All items in Page No. 1 through 16 will be completed at the contract price, thirty-six five, this includes an addition on hte north side of the house --

DAVIS: Yes, sir.

HAND: Bath 8 X 14 turn key.

DAVIS: Right.

HAND: And porch enclosure 14 X 20 turn key.

DAVIS: Yes, sir.

HAND: "Bath will be a handicap tub and shower and closet."

DAVIS: Yes, sir.

HAND: And it's signed "Alice Kelly", August 22nd and dated and looks like a place to be --

56

DAVIS:  Yes, sir, I signed it too.  Now, this is where it got turned around, Mr. Hand.

HAND:  Uh-huh.

DAVIS:  It was supposed to have been a porch enclosure.

HAND:  Uh-huh.

DAVIS:  And I have a letter here that I sent to them when they wouldn't sit down with me and listen to me, and I tried to explain the best I could in the letter.  The porch enclosure was twenty dollars a square foot, the bathroom was forty or forty-five; I'll have to look back in my letter that I sent to them.

HAND:  Uh-huh.

DAVIS:  And when they enclosed that porch enclosure to a room addition, they're going to call it a "den", then it required electrical which is done, insulation which is done, wiring which is done.  And they were cussing me and you ask Margaret and Wayne Mixon, I was staying at their house, and it was every night how Mrs. Kelly cussed me for an hour.  What can one man do each day to -- in the amount of work?  I had just got out of the hospital with surgery and they have a copy of it over here --

*Check recorder*

57

HAND:  Uh-huh.

DAVIS:  -- that I was not supposed to work until the doctor released me.

HAND:  Right.

*The Following Thursday The Contact To Deal With Davis was Turn over To Rachel Townsend*

*check Date*

DAVIS:  But I was trying my best, but no one -- two weeks before the River Rat Festival the Granthams got together and they were going to ride down the river to Barbara's fish place, okay.  She was supposed to have been up early enough so I could meet with her and go over this and there was a bad rumor started that I had taken their money, and I wanted to show her the money and I wanted to show her the receipts, okay?

HAND:  Uh-huh.

DAVIS:  And she was supposed to have been up early on a Friday.  Well, she didn't get in -- I didn't get hold of her until late on Friday evening and she said, "Well, I'm going to be real busy", and I said, "What time are you getting up tomorrow morning?", and she said, "Seven o'clock, and then I'm going down the river.  Would you please give me five minutes tomorrow morning?"  So, I get up and I go over there and she doesn't want to talk to me, she said she's busy.  And I said, "Ma'am, these rumors have got to stop.  I've got your money and I've got the material that I've told you purchased and I have purchased.  We've got to stop this.  It's not supposed to

*This I know I did Not say this Way check The records*

58

be a porch -- I mean it's supposed to be a porch, not a room addition. We
need to sit down and talked." She hugged my neck, bless her heart, she did.
And then I really don't think she meant to do this. And she told me I could
come down on a Wednesday, okay. So, I got Claude Barwick over there
helping me and about 1:00, because I was going to be there about 3:30 or
5:00 -- 3:00 is when it was, I was getting ready to leave and Barbara comes
over and tells me that Alice can't see me and she has to work late and she'll
call me later. Well, she called me the next night and told me that she was
turning it over to Rachel Townsend in Huntsville and I would be dealing with
her, okay. And then that weekend I go to Huntsville and I've got my contract
and I sit down at her kitchen table and my wife is sitting there at her kitchen
table and I said, "Rachel, have you seen this contract?", because Rachel was
beginning to call down here and cuss me, wanting to know what I had done
in front of my wife.

     HAND: Uh-huh.


     DAVIS: And my wife is one of the honest persons in this world
and Mrs. Kelly told Dinda, your wife out there, that she was an honest
loveable person, okay.


     HAND: Uh-huh.


     DAVIS: And if my wife thought I intentionally cheated
somebody, she would divorce me in a heartbeat, Mr. Hand.

59

HAND:  Uh-huh.

DAVIS:  And I've been accused of a lot of things, but these were my friends and you ask the Townsends what kind of room addition that I built on their house, only one east of the Mississippi, I built for them and I know I saved them at least twenty thousand dollars and I got paid roughly five thousand dollars in money --

HAND:  Uh-huh.

DAVIS:  -- for taking care of it and running it for them.

HAND:  Uh-huh.

DAVIS:  And I didn't complain and I'm not complaining today. And then I built them a ten thousand dollar deck for roughly five thousand dollars.

HAND:  Uh-huh.

DAVIS:  They recommended me to Alice.  Alice had been up there, they had 150 people at his retirement party.  Everybody loved this addition.  I love doing quality work, but when they changed this, Mr. Hand, I -- I've got a copy of the letter.  Did they send you a letter -- a copy of it that I wrote them?  It's trying to explain to them from a porch enclosure to --

*[handwritten annotation at top:]* have known that it was a Contract disagreement and he did Bill Land was after me for special interest group CB other

HAND:  Yeah, I saw that --

DAVIS:  Okay.

HAND:  Where it makes a difference in the price per square foot.

DAVIS:  Yes, sir.

HAND:  Right, uh-huh.

DAVIS:  And then --

HAND:  Are you talking about the letter dated May 23rd, 1999?

DAVIS:  Yes, sir.  And then three months ago, Mr. Hand, and let me finish and then I'll go back and I'll answer your questions for you, okay?

HAND:  Uh-huh.

DAVIS:  _____ down here working and there's a rumor going around that my wife had left me, and we were homeless I'll tell you the truth.  I was down here working, I was staying with my sister and Margaret and Wayne, and my wife -- Rachel wanted my wife to move in with them.  And I heard a rumor that my wife has taken sides with the Townsends. She really thinks that I cheated them, okay, and that she was leaving me.  So,

61

I call her up and ask her to come down. I had rented me a trailer house up here temporarily because I didn't have no where to live and I can't keep staying with family and eating off of them.

HAND: Uh-huh.

DAVIS: So, she came down and I said, "Maria, are you going to leave me?", and she said, "I don't know what you're talking about." And I said, "Well, there's something going on and it's going to hurt my civil suit too." And I said, "I can't afford to lose this and I can't afford these rumors. And tell me the truth, if you want a divorce, we'll divorce. But all I ask you to do is wait until after the civil suit is over because it's going to hurt me."

HAND: Uh-huh.

DAVIS: There's enough bad talk going about me down in Geneva.

HAND: Well, now you pretty well laid the groundwork for that yourself.

DAVIS: I did, I stuck my neck on the line because I was trying to hang on to what I had and not lose my contracts, Mr. Hand. And I was wrong for writing those checks and I haven't complained to anybody --

62

HAND:  Well, I mean it even goes back to the house deal you did with American Bank.

DAVIS:  Well --

HAND:  And it goes back to the pickup truck that was financed with American Bank.

DAVIS:  Well, I should say something about that, Mr. Hand.

HAND:  See, I can tell you something about it too.

DAVIS:  Okay.

HAND:  Did not a Sheriff's Deputy go talk to you and tell you that truck was under a lien at the time and that he had seized it?

DAVIS:  He did.

HAND:  And then what did you do?

DAVIS:  No, no, not a Sheriff's Deputy, it was not a Deputy.

HAND:  Who was it?

63

DAVIS:  It was an -- the man who drives the truck right now, he came out to the house, but no, sir, not a Deputy came out to my house and told me it was --

HAND:  A Deputy Sheriff didn't serve --

DAVIS:  No, sir.

HAND:  -- a writ of seizure on you?

DAVIS:  No, sir, he did not.  And you know that truck was never sold and me sued for the difference, it still belongs to American Bank.  They did not sell that truck and that's the law.  You sell the truck and you sue the man who had it for the difference.

HAND:  Well, you know --

DAVIS:  And I was asked for money --

HAND:  -- the right thing to do is pay for it, but you took off to Texas with it.

DAVIS:  Well, I couldn't find no work around here.

HAND:  But listen --

64

DAVIS:  A man had asked me -- Mr. Hand, I swear to God --

HAND:  I understand, but let me -- I mean this is where you and I differ about the thing.

DAVIS:  Uh-huh.

HAND:  I mean if you can't find no work here --

DAVIS:  That's why I went back to Texas, but let me explain to you since we're on that for just a second, okay?

HAND:  Okay.  Alright.

DAVIS:  I go in to get a draw from American Bank on the house I'm building in Samson.

HAND:  Right.

DAVIS:  H.G. Hayes issues me a cashier's check for $12,004.00 --

HAND:  Uh-huh.

DAVIS:  -- for that job --

65

HAND: Uh-huh.

DAVIS: -- paid in full. I take it around to the lumber company, I endorse it to them.

HAND: Right.

DAVIS: Seven days later I'm remodeling the house behind _____. Jack Howell, he may tell you the truth and he may not. He calls me up and says, "Where are you going to be working at this morning?", and I said, "Across the street from my house because I was living there in that little house", okay. And he said, "You be watching for me, I need to talk to you." And you can give me a lie detector and ask me these questions and I'll tell you and you will see that I'm not telling a lie about it, okay?

HAND: Okay.

DAVIS: So, I was watching and when he pulled up I go out and this is January the 21st. And I sat in his truck and he said, "Mr. Davis, I'm sorry for what I'm about to do to you", and I said, "What are you talking about?", and he said, "Papa told me if I didn't do it that they were going to fire me. I'm the President of that company. Papa owns fifty -- forty-nine percent, he and the people he's got working in there, and they can vote me out and then they're going to steal me blind." And he said, "I can't tell you what I'm

66

going to do. You'll find out in a few days." In a few days there was a lien -- I only had a month left to close on that house. After issuing a cashier's check, and I've still got it, and this attorney I hired out of Dothan, okay, didn't even show up in Court and they've got a judgement against me. And I've still got a copy of the cashier's check that says "Paid In Full", I swear to you, and I'll get it and show it to you.

HAND: Uh-huh. Well, no, I mean I'm just -- I'm just speaking of what complaints that were --

DAVIS: Well, I understand, but when people -- and this is what H.G. -- and if he -- you put him right there. He'll probably lie about it, but then again, you might be able to tell he's lieing. I go in his office one day trying to get it worked out and he says, "Mr. Davis, I have to admire you. You come to town and you don't know a damn soul. You go out and you get $300,000.00 worth of work and these people that's working here, or that's been here all their life, don't have no money to pay me back." I had three burned out houses and nobody has complained, not the first thing, about me tearing those houses back and putting them together. I've got government inspectors who went out and inspected them and said it was the best job they had ever seen.

HAND: Uh-huh.

DAVIS: And everybody was paid up until the day the lien was

67

put on my house. I had a $62,000.00 commitment from First Federal Savings in Enterprise. I had agreed with the bank that he would loan me forty-two, he only loaned me $28,000.00 to build that house, and then he taken it away from me because this is what he told me. "I'm willing to forget about the people that owe me money -- "

HAND: (Coughs) Excuse me.

DAVIS: Yes, sir.

HAND: Go ahead.

DAVIS: "Because you're a hustler -- any time you go to build a room addition; and you give me a lie detector test, you build a room addition, you add ten percent more to it. I'll loan them money. They have to come to me. And when I give them the money you bring me ten percent back and cash it", and I said, "No, sir, I ain't going to have nothing to do with that and he said, "I'll run your ass out of town", and that's exactly what he done because he told Jack Howell to go file a lien against that building after I had paid it, knowing that I couldn't close.

HAND: Uh-huh.

DAVIS: So, I lost the difference between $28,000.00 and $62,000.00 off of that house. I had to move back to Houston.

68

HAND:  Okay.  Now, let's get to Page 16.  It says, "Remove and replace roof shingles."

DAVIS:  Yes, sir.

HAND:  And it's got Item No. 1 -- No. 2 is E-Metal and Item No. 3 is clean up, for a total of $27,033.50.

DAVIS:  Yes, sir.

HAND:  Ten percent, what's that?

DAVIS:  That was overhead.

HAND:  Overhead?

DAVIS:  O & P, overhead and profit.

HAND:  Alright, for a total of $3,006.85?

DAVIS:  Yes, sir.

HAND:  Now, did you do that?

DAVIS:  Now, before I answer that, I would like to elaborate for

69

just a second.

HAND:  Okay, yeah.

DAVIS:  Now, this was a change order.  This is where I gave her a price reduction.  You total those two up, they roughly come to $6,200.00. While I -- if you go back to the contract you'll see eight seventeen.  They asked me prior to that to take a look at the roof and see if it needed to be replaced.  That is why it's on a separate page because I did not believe the roof needed to be replaced right now.

HAND:  Uh-huh.

DAVIS:  But while we're down there going over my estimate, she asked me to go back and measure and see what it would cost for vinyl siding and a roof.

HAND:  Okay.

DAVIS:  And I told her nothing, I gave it to her.  If you notice I signed it.

HAND:  Uh-huh.

DAVIS:  She did not sign it.  Now, in my master contract --

70

HAND:  Wait just a minute.  She signed this copy.

DAVIS:  Well, she -- how did I get a copy.

HAND:  Well, I mean how did I get one with --

DAVIS:  Well, after they got through complaining, she was the one who made the copies for me because when she wrote this in -- okay. Mr. Hand, this is why I'm telling you, there's something wrong here.  When she wrote this in right here, and it says right here one through fifteen, is that not fifteen?

HAND:  Are you talking about --

DAVIS:  With the roof and this vinyl siding, isn't that Page No. 15?

HAND:  No, mine is 16.

DAVIS:  Okay, then let's see if -- I thought this -- yeah, here we go, "All items in Pages No. 1 through 16 will be adjusted."  That's my words, she wrote it in there.

HAND:  Uh-huh.

71

DAVIS: Okay?

HAND: Uh-huh.

DAVIS: Now, you know what I got -- I kept asking them for my contract. You know when they gave it back to me?

HAND: When?

DAVIS: I'm staying at Mrs. Grantham's house while I'm working on the house and Diane brings it up to me in February after I got out of the hospital and come back to work.

HAND: Uh-huh.

DAVIS: Now, they lied to you right there, Mr. Hand.

HAND: I mean what are you saying --

DAVIS: They signed that right there and didn't make copies of it when they signed it. It was never supposed to have been done in my contract. That's why they signed yours and didn't sign mine, because they're trying to nail my butt to the wall.

HAND: What significance has this got to do with anything?

72

DAVIS:  Because it was a free item.  And in my contract; and I went over the contract with her, is an increase or a reduction --

HAND:  Woah, woah, wait just a minute.  What do you mean a "free item"?

DAVIS:  That was going to be a free item.  This is where the $6,200.00 reduction came from.

HAND:  In other words, you're saying --

DAVIS:  In the contract price.

HAND:  -- you was going to remove -- you was going to replace the roof and do the vinyl siding, which totaled roughly $6,200.00?

DAVIS:  Yes, sir, providing -- providing that they let me do the work without hiring people to come in there and I have to pay those people money, because I didn't have it if I knocked off $6,200.00 bucks --

HAND:  Right.

DAVIS:  -- on a porch enclosure and a bathroom.

HAND:  Okay.  So, this is the trade-off part you're talking about?

73

DAVIS:  Yes, sir.

HAND:  Okay.  And I guess --

DAVIS:  And make yourself a note and ask them if they did not copy these for me.

HAND:  Okay.

DAVIS:  Because I want to get to the bottom of it too.  I don't want to cheat nobody anything.  Now, that was a trade-off to build a bathroom and a porch enclosure.  I deducted $6,200.00 roughly.

HAND:  Right.

DAVIS:  Okay.

HAND:  Alright.  Let me ask you something now.

DAVIS:  Yes, sir.

HAND:  Here's a print-out that she's saying that she made draws -- where you made draws that she wrote checks.  Alright, and I'm just going to read the bottom line of what she says.  That she paid you draws that totaled out to $36,500.00?

74

DAVIS:  No, sir, that's not --

HAND:  That's not correct?

DAVIS:  -- my way of thinking and I would like -- and I've got a letter here where I asked them several times to send me a copy of the checks that was paid to Winston Davis Contractor.

HAND:  Okay.

DAVIS:  And they won't do it, Mr. Hand.  That's why when I seen you have copies of the checks, I was really anxious to get them.  And no, sir, I don't remember and I know I didn't get no three thousand dollar check or _____.

HAND:  Well, what about additional checks down below that?  It shows additional checks down totaling roughly twenty-one more hundred dollars?

DAVIS:  Could I see what number are the checks or the amounts?

HAND:  Well, it says -- see right there is those additional checks?

]

DAVIS:  Talk with Mr. Barwick.

75

HAND:  Alright, who is Mr. Barwisk?

DAVIS:  Claude Barwick.  Now listen just a second, Mr. Hand, let me try to explain this to you.  The vinyl siding --

HAND:  Uh-huh.

DAVIS:  I'm sick, I've got the room dried in, the new addition, no water is coming into the house.  And if you're out riding around and you see a house being built and it's got felt paper on top and it's nailed down good with symflex nails --

HAND:  Uh-huh.

DAVIS:  I've got pneumonia in October and I made them aware of it.  Then Mr. Barwick goes over there and tells them the felt paper ain't going to last very long.  But I'm working out at Ft. Rucker now and some of those houses up there has had felt paper on them since I've been working there over two months.

HAND:  Uh-huh.

DAVIS:  Okay.  And he convinced them that I'm not right, and this is one of the items that I'm supposed to be doing myself --

76

1

HAND:  Uh-huh.

2

3

DAVIS:  -- and they tell him to go ahead and put the roof

4

shingles on.

5

6

HAND:  Okay.

7

8

DAVIS:  Okay?

9

10

HAND:  Uh-huh.

11

12

DAVIS:  And while he was there --

13

14

HAND:  Alright, let me stop you right there.  Had Mr. Barwick

15

had anything to do with the construction or work on this house up until --

16

17

DAVIS:  He has helped me as a sub-contractor.

18

19

HAND:  Okay.

20

21

DAVIS:  But I told them --

22

23

HAND:  So, that's how they knew him?

24

25

DAVIS:  Yes, sir, and they called me -- I supposed they -- I don't

77

know whether they knew him before or not, but they called me in and says, "He says the felt paper is not going to last long", and I said, "It's ridiculous, this is some of the items that I'm supposed to be doing and it's not anything -- it's not going to hurt anything. If it gets a little bit of water in there, there's not anything in there to hurt."

HAND: Right.

DAVIS: Okay, that's under the addition.

HAND: Uh-huh.

DAVIS: But they get him to go ahead, and I had my roofing material sitting on the job --

HAND: Uh-huh.

DAVIS: I had paid for it, I've got receipts to show it.

HAND: Uh-huh.

DAVIS: While he was there, he charged them -- he gave me the receipts and I gave them to Alice. He gave me his time and I gave it to Alice because it was -- to me, it was nothing to me.

78

HAND:  Right.

DAVIS:  Okay, for cutting off the rafter tails and squaring it up for a vinyl facia board and soffets so the vinyl would fit because it came down a steep roof with --

HAND:  Right.

DAVIS:  -- no facia and no soffet on it.

HAND:  Right.

DAVIS:  And I really believe that $2,040.00 belonged to him.

HAND:  Uh-huh.

DAVIS:  Because I paid for the material out of my pocket.  Oh, oh, and my contract, if you'll look on the roof while we're there --

HAND:  Uh-huh.

DAVIS:  "To remove and replace three-tab shingles."  It had five layers of old shingles underneath there and he charged something like $1,800.00 to take off five layers of shingles and put on there, and that was an additional cost to him.

79

HAND:  Right.

DAVIS:  Not to me.

HAND:  Okay.  Is there anything else that you would like to elaborate on in regards to this?

DAVIS:  Yes, sir, there is.

HAND:  Let me --

DAVIS:  Yes, sir, you go right ahead, Mr. Hand.

HAND:  (Answering phone)  Excuse me just a minute.  Let me switch the tape off and I'll be right back.

(Tape off and then back on)

HAND:  Tape is turned back on.

DAVIS:  Okay, you had asked me if I wanted to elaborate on anything.

HAND:  Uh-huh.

80

1   DAVIS:  And I would.  In the beginning, Col. Joseph Townsend

2   told me, "Winston, get one of those girls and _____ one of those girls.

3   Let them decide on what they want and get up with one of those girls.  Don't

4   you do anything for them that's not in that contract."  This is the brother-in-

5   law they all look to.

6

7   HAND:  Uh-huh.

8

9   DAVIS:  Alice Kelly is a book keeper for the Air Force.  Joe

10  Townsend -- Col. Joe Townsend keeps her records for her.

11

12  HAND:  Uh-huh.

13

14  DAVIS:  Because when she comes home, she's not capable of

15  keeping her own records and this is why I keep saying someone has made a

16  mistake.

17

18  HAND:  Right.

19

20  DAVIS:  This is a mistake in the beginning when I was sick and,

21  when I came back, it got blowed out of hand.

22

23  HAND:  Uh-huh.

24

25  DAVIS:  And everybody is jumping to conclusions.  In April

81

1   when Rachel Townsend taken it over, I had all my receipts in a big brown

2   folder for the cabinets.  The carpet -- now, I didn't carry -- at that time I had

3   twenty-two or twenty-three hundred dollars roughly in cash, and I did not

4   carry it out on the road with me and take a chance of something happening to

5   me and that happening to that money -- that amount of money.  And I told her

6   I said, "I do not have the cash, but here are the receipts" on Saturday night.  I

7   got there early and asked them to sit down and talk to me.  It was turned over

8   to her.  I felt that I was entitled to sit down and somebody explain to me what

9   was going on and let me show them what I had done, how much money I had

10  left, go over the contract with Rachel and say, "Rachel, that's not supposed to

11  be a porch -- that was supposed to be a porch enclosure, not an addition.  I'm

12  supposed to be doing this work myself on the original contract, not hire

13  somebody and ya'll cuss me every day of my life, you embarrass me in front

14  of my sister-in-law and my brother-in-law."  And Rachel told me she said,

15  "No, I haven't seen the contract."  "Well, let's sit down and go over it", and I

16  showed her where Alice had wrote in the porch enclosure and the bathroom,

17  8 X 14.

18

19      HAND:  Uh-huh.

20

21      DAVIS:  And her comment to me was, "Winston, you shouldn't

22  have built that addition for her", and I said, "Rachel, I signed the contract with

23  her, but it's being changed."  And this was late Saturday night when --

24

25      HAND:  Right.

82

DAVIS: -- I finally got to sit down and talk to her and I said, "Rachel, I'll leave you these papers, receipts, if you want me to so you'll have time to go through them." (She said) "That won't be necessary."

HAND: Uh-huh.

DAVIS: Now, she would call me and tell me I said something and I would tell her, "Rachel, get you a tape recorder and tape the conversations."

HAND: Uh-huh.

DAVIS: "If you think I said something else, then play it back to me."

HAND: Right.

DAVIS: So, I know they've taped my conversations, okay?

HAND: Uh-huh.

DAVIS: And I don't mind because I don't think I've said anything out of the world that I can't back up in a court of law.

HAND: Right.

83

DAVIS: Alright. Now, in April I believe it was, March, we're low on funds because I have not had a paycheck off of that job since October --

HAND: Uh-huh.

DAVIS: -- for my personal self, okay?

HAND: Uh-huh.

DAVIS: And our money is steadily running out and I'm getting late behind on my bills --

HAND: Uh-huh.

DAVIS: -- and I have to have surgery. And Rachel Townsend calls my wife and says, "While Winston is down there working, would you come over and stay with us?", and I thanked her for it.

HAND: Uh-huh.

DAVIS: A couple of days later I have a job offer at the Boeing Plant up there and they offered me a thousand dollars a week to finish sheetrock, 68 foot in the air, work seven days a week, twelve hours a day. And I said, "Maria, let me send Alice a letter and tell her I'm going to have to

84

pull off for a month. Let me make us some money because I believe they're going to hold you for ransom over there. Once you get over there, they're going to use -- do things to me that force me into doing something that I don't want to do."

HAND: Uh-huh.

DAVIS: "And they're going to use you staying here there with them."

HAND: Right.

DAVIS: Well, I said, "Oh, no, they've been my friends for forty years and they're not going to do anything like that." Now, so, I came down here and started to work. And after it was turned over to Rachel, a couple of weeks later, I was getting cussed for everything in the world you could think of by Rachel at my sister's house.

HAND: Right.

DAVIS: Now, my sister and my brother-in-law are standing there when I said, "Rachel, I'll make a deal with you. Ya'll want me to hire people and get this stuff done when I'm not supposed to do it and it's not in my contract. I'm asking you for your permission to pull off of the job for three weeks and give me a three-week head start because I have a job, it's an

85

apartment complex on Brannon Stand Road up there, and I can prove this

because I had worked one week and I made a thousand and ternty dollars, sub

labor. Give me a three-week head start and I will hire someone and buy that

extra material that ya'll want for that porch enclosure to a den and I'll pay to

get it done."

HAND: Uh-huh.

DAVIS: "I'm going to keep working and I'll come down in the

afternoons after I get off of work and check what's been done each day." No,

they would not let me. And I got to a point to where I -- the more money I

put into it, the more they wanted done.

HAND: Uh-huh.

DAVIS: And I said, "I'm not going to do this, take money out of

my pocket. I don't have a place to live."

HAND: But you -- I mean that's -- I'm missing the -- they paid

you thirty something thousand dollars --

DAVIS: No, sir, they didn't, Mr. Hand.

HAND: How much did they pay you?

86

DAVIS:  Well, I said a while ago I believe that they still owe me close to five thousand dollars.

HAND:  I didn't ask you how much they owed you, I said how much did they pay you?

DAVIS:  Well, you take five thousand dollars away from thirty-six, roughly thirty or thirty-one thousand.

HAND:  That they paid you?

DAVIS:  Yes, sir, but you go back and you add up --

HAND:  Well, wait a minute, that's what I'm saying.  How was you putting money into it -- I mean --

DAVIS:  From the porch --

HAND:  -- you didn't do thirty-one thousand dollars worth of work in that house.

DAVIS:  I guarantee you that porch enclosure is already over nine thousand dollars.

HAND:  I say in that -- I went and walked through that house.

87

DAVIS:  Uh-huh.

HAND:  Along with David Emery.

DAVIS:  Right.

HAND:  There ain't thirty-one thousand dollars worth of work been done at that house.

DAVIS:  I'm not entitled -- I was showing an eight thousand dollar profit off of the existing house, and I turn around and was going to put six thousand dollars back of that profit into that porch?

HAND:  The point I'm trying to make is how is it you figure you're putting money into it?

DAVIS:  If I finished out that room and put the ceramic tile and everything in the room, it's going to have to come out of my pocket from somewhere.  They said they wasn't going to give it to me.  And I asked them to let me go to work somewhere.

HAND:  What do you figure that house is worth, finished?

DAVIS: Finished, with the things that they had wanted in there, I figured that house would cost seventy to eighty thousand dollars completely

88

finished.

HAND:  Have you got anything else you want to say?

DAVIS:  Yes, sir, I have.

HAND:  Go ahead.

DAVIS:  I'll let you finish with the phone.

HAND:  Well, I can't get through.

DAVIS:  Now, after Mrs. Kelly come down here and told your wife Dinda --

HAND:  Uh-huh.

DAVIS:  -- what a fine upstanding citizen and an honest person that my wife is --

HAND:  Uh-huh.

DAVIS:  -- I have not seen my wife in over a month.  She didn't have no transportation, her car broke down.

89

1    HAND: Uh-huh.

2

3    DAVIS: And I got a letter wanting the truck back that they sold

4    to me and gave me a bill of sale for it, and they wanted that back, Joe

5    Townsend.

6

7    HAND: Uh-huh.

8

9    DAVIS: Wanted the tools that belonged to him. I don't have no

10   tools that belonged to him. I have receipts for everything I've got, let me

11   finish just a second, Mr. Hand, I'm getting to the point.

12

13   HAND: Alright, okay.

14

15   DAVIS: Now, I figured if he didn't specify anything -- I figured

16   if he wanted anything that I might have, he would specify it and I would get it

17   to him.

18

19   HAND: Uh-huh.

20

21   DAVIS: But I'm not driving to Huntsville up there to give it to

22   him.

23

24   HAND: Uh-huh.

25

90

1

      DAVIS:  And my wife went on a cruise with them on July 4th

2

they left.

3

4

      HAND:  Uh-huh.

5

6

      DAVIS:  They paid for her ticket last year and asked her to go

7

and stay with Mrs. Grantham in the berth, okay?

8

9

      HAND:  _____.

10

11

      DAVIS:  That was the deal, or, give her a free ticket.

12

13

      HAND:  Alright.

14

15

      DAVIS:  I was at that airport five times on Sunday in Hunstville

16

because I did not know which flight she was coming in.  My wife had not told

17

me to meet her there.

18

19

      HAND:  Uh-huh.

20

21

      DAVIS:  I was trying to get her some transportation so she would

22

have a way to and from work without bothering those people.

23

24

      HAND:  I'm trying to get somebody on the phone.

25

91

1    DAVIS: Sure.

2

3    HAND: Excuse me just a second.

4

5    DAVIS: Sure.

6

7    HAND: Alright.

8

9    DAVIS: Finally, I go back out there and I'm watching _____

10    _____ and finally my wife and the Townsends gets

11    off the plane at 4:33 in the afternoon on Sunday _____.

12

13    HAND: Well, how long have -- have you and your wife been

14    estranged up until --

15

16    DAVIS: It ain't nothing strange that she was there.

17

18    HAND: I mean ya'll wasn't living together?

19

20    DAVIS: _____-me working down here and her

21    up there, okay?

22

23    HAND: Okay.

24

25    DAVIS: It's been a month since I seen her, but this was -- she

92

had been staying with them since March or April.

HAND:  Okay.

DAVIS:  Okay, they asked her to.

HAND:  Uh-huh, okay.

DAVIS:  And then when they got off the plane and seen me standing there, they cussed me like I was a dog and then cussed my wife like a dog and kicked her out of their house and will not let her in to get nothing. She don't have no clothes to wear to work.

HAND:  Uh-huh.  Well, why don't she go to the Sheriff's Department up there?

DAVIS:  We did that Monday and the Sheriff said this is a civil matter and we can send a car out there, but you're entitled to one dress and one outfit.

HAND:  Okay.

DAVIS:  A toothbrush and toothpaste if you don't have that.

HAND:  Right.

93

DAVIS: Then the rest of it because he says Townsends say they are going to keep that stuff for the truck that they sold to me for a thousand dollars, and they gave me a bill of sale.

HAND: Uh-huh.

DAVIS: And put it in my wife's name. But they told her, "You made your decision." They've been trying to get her to divorce me.

HAND: What -- I mean why --

DAVIS: Because they don't like me and Rachel Townsend, Mr. Hand, told me when she said I believe -- I was talking to her on the phone trying to get this worked out. I said, "Rachel, I'm honoring the contract, I'm doing what the contract said and what was agreed upon."

HAND: Uh-huh.

DAVIS: She said, "Do you mean to tell me you're going to let a contract stand between our friendship?", and I said, "Rachel, that's all I've got. I don't have the money." She said, "I'll lie, steal and murder for my family and you would do the same thing", and I said, "No, I would not. If my mother or my family was in the wrong, I would tell them. I would still love them, I would be there for them, but I wouldn't steal from somebody or rob them or murder them." This is a vendetta because I would not do what they wanted

94

me to. After they've helped me and God bless them for helping me through this stuff here in '96 and '97 --

HAND: Well, here is my only point.

DAVIS: Yes, sir.

HAND: Mine and the DA, we went around there and looked at the house. The little old house is not worth --

DAVIS: Yeah, but I -- that's not my problem. They told me what they wanted and I charged them a price and they agreed upon it.

HAND: I understand, but you said when you finished, the house would be worth about $60,000.00.

DAVIS: I understand it will.

HAND: You know -- Winston, I mean you've been living in Geneva, Alabama --

DAVIS: I understand that, but you go right around the corner from where Margie Sowell lived in that little old shanty right there, she paid $25,000.00 for that little old tidbit room, one bath house, and you can see hogs through the cracks in the --

95

HAND:  How many houses in Geneva on Cambell Street, the
whole street, that sell for $60,000.00?

DAVIS:  Not many.

HAND:  That's right, they ain't --

DAVIS:  But I bet if _____ over there to
appraise it, I'm not saying that it would be -- that she could sell it for that
amount.  When I was first talking to them, you could --

HAND:  I mean how --

DAVIS:  Build you a cheaper one than you can remodel this.

HAND:  Uh-huh.

DAVIS:  I had a lot of work in there trying to --

HAND:  Well, I'm not arguing that.  My point about it is that you
got paid $31,000.00?

DAVIS:  Roughly.

HAND:  Roughly, okay.  In my opinion, and I'm not a contractor

96

1 mind you, okay, don't know jack crap about contracts --

2

3        DAVIS:  But I'm the best --

4

5        HAND:  Okay.

6

7        DAVIS:  -- when it comes to _____ and room

8 additions.

9

10        HAND:  Okay. Alright, you figured in roughly around --

11

12        DAVIS:  And ask the Townsends about theirs.  I wanted to put

13 that in there.

14

15        HAND:  Right.

16

17        DAVIS:  You ask the Townsends, get them to show you pictures

18 of that -- of that house.

19

20        HAND:  You've figured in roughly around $8,000.00 profit on

21 that job?

22

23        DAVIS:  Yes, sir, that was on -- not the room addition.

24

25        HAND:  That was before the closed-in porch?

97

DAVIS:  Yes, sir.

HAND:  Okay, but you traded out the difference in it and the tub unit, the tile thing?

DAVIS:  No, no, no, they wanted it moved out from there.

HAND:  Uh-huh.

DAVIS:  They had an allowance.

HAND:  Uh-huh.

DAVIS:  I was not going to do that in that new bathroom for what I charged there.

HAND:  Right.

DAVIS:  Because Alice had picked out a designer tile.

HAND:  Right.

DAVIS:  Okay, it was not a builder's grade tile.

HAND:  Right.

98

1    DAVIS:  And I told them, "You have an allowance and each one

2    of these have a labor and a profit.  Someone has got to go find it, pick it out,

3    and go pick it up."

4

5    HAND:  Right.

6

7    DAVIS:  "And I'm entitled to a profit on my labor when I'm out

8    searching for the things."

9

10   HAND:  Right.

11

12   DAVIS:  Okay, and that's what they couldn't understand, Mr.

13   Hand.

14

15   HAND:  Okay, alright.

16

17   DAVIS:  Or didn't want to understand.

18

19   HAND:  Right.  So, basically, your position is that yes, they paid

20   you approximately $31,000.00?

21

22   DAVIS:  Yes, sir.

23

24   HAND:  However, they still owe you some money?

25

99

1          DAVIS:  Oh, yes, sir.

2

3          HAND:  Okay.  And their position is they paid you -- and I'm just

4  using your figures, okay?

5

6          DAVIS:  Yes, sir.

7

8          HAND:  Approximately thirty something thousand dollars.  And

9  you haven't finished the job.

10

11         DAVIS:  Now, let me verify that.

12

13         HAND: Okay.

14

15         DAVIS:  I want to elaborate on that.

16

17         HAND:  Okay.  Well, I'm just trying --

18

19         DAVIS:  I understand.  Now, not the addition, but the existing

20  house, they have paid me roughly thirty thousand dollars.  And then you take

21  -- because it was twenty-six --

22

23         HAND:  Right.

24

25         DAVIS:  -- and you take twenty-six away from the thirty-one and

100

that's roughly five thousand dollars, and there ain't no way five thousand dollars would enclose that, build a bathroom, plumb it in, electrical and heating and air condition that went in there. Five thousand dollars wasn't going to do that. This was why I was willing to do the labor myself because I was making a profit, so, I actually taken profit that I was making off the other house and putting into the addition so that she could have what she wanted. And that's what they agreed upon, Mr. Hand.

HAND: Okay, alright. Is there anything else you want to elaborate on?

DAVIS: No, sir. I'm still willing to sit down and tell them my side of the story. They don't want to hear it and they've been telling me for two months they don't want to hear it. They're out to destroy me for it because I just wouldn't snap to.

HAND: Right.

DAVIS: And then kick my wife out of the house because she come over and hugged my neck. I mean that was bad, and told her, "You made your decision." And then tell me she would lie, steal, and murder for her family.

HAND: Well, are they --is your wife related to them?

101

DAVIS:  No, she --

HAND:  Just friends with them?

DAVIS:  Well, you remember Harold, he was an alcoholic and when he come home to beat the hell out of everybody on the weekend, then they would go to the Granthams, okay.  And that's how she grew up with them.

HAND:  Okay, so, she's just old-time family friends with them?

DAVIS:  Yes, sir.  And I've known Col. Townsend since he was in the first military 23 years ago.  And I've always looked up to him.

HAND:  Now, the Townsends you're talking about and making reference to, they're the ones that live in the Hunstville --

DAVIS:  Yes, sir, they're the ones who taken over and Joe Townsend told me and my wife, standing there after I signed that contract, "Mrs. Kelly is going to be a bitch to work for", and I went down and I talked to that _____ and I got a pass to go into Florida because I'm on probation from Mr. Cliff in Huntsville, and I asked that contractor, "Did Alice Kelly want to make a lot of changes and didn't want to pay for it?", and he said she liked to drove him crazy.  And she done me the same way.

102

HAND: Well, I mean that's a typical thing --

DAVIS: I understand, but when you have a pre-sold house and it's itemized list by list by list, you need to go by this. And if something that's not in the list, it's going to cost extra.

HAND: Okay.

DAVIS: And that's why I did that.

HAND: Okay.

DAVIS: Now, I talked to three different attorney about this since they told me they was going to turn it over to your office to get me for theft by deception. The attorneys advised me to file a lien against the property and sue them. That costs money and I don't have the money to do that. I just hope to sit down and settle this thing.

HAND: Okay.

DAVIS: And as it stands right now, I ain't made no eight thousand dollars off of it, I've made three. You can go back to August, September, October, and November, okay, and then starting in the first of December, January and February I was out for surgery. okay?

HAND: Uh-huh.

DAVIS: That's about eight months for three thousand dollars, that ain't counting my gas and wear and tear back up here and my food, I had to stay --

HAND: Right. Anything else you want to add?

DAVIS: No, sir.

HAND: This concludes this statement, same date, the time being 12:26 p.m..

END OF STATEMENT

This Has Been Edited The Last Statement Davis made. I want To Read The Transcript and Hear The Tape and if nothing is changed I will sign it. I Have Been asking for The Document for apprx 6 mo.

☐ TAX DEDUCTIBLE ITEM

**1278**

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

63-7807/2631

8 Sep 98

*Winston Davis*

*Seven Thousand and no/100*

7000 00

EGLIN FEDERAL CREDIT UNION
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

113 E. Campbell

⑆2631780701⑆ 000263⑈113⑈ 1278

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1280**

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

63-7807/2631

14 Sep 98

*Winston Davis*

*Fifty Three Hundred and no/100*

5300 00

EGLIN FEDERAL CREDIT UNION
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

113 E. Campbell

⑆2631780701⑆ 000263⑈113⑈ 1280

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1269**

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

63-7807/2631

1/26 98

*Winston Davis*

*Three Thousand + no/100*

3,000 00

VOID

EGLIN FEDERAL CREDIT UNION
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

115 E Campbell

Draw on construction

⑆2631780701⑆ 000263⑈113⑈ 1269

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1295**

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

63-7807/2631

29 Sep 98

*Barbara Morris*

*Three Thousand + no/100*

3000 00

EGLIN FEDERAL CREDIT UNION
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

⑆2631780701⑆ 000263⑈113⑈

---

*(handwritten note, right margin, vertical)*

NOTE DISTRIC TATTORNEY' FAX NO. TOP OF PAGE. CHECK 1269 MARKED VOID BY ALICE KELLY

PETITTONER WOULD SO UNLESS EXHIBIT 20. (A)

*(handwritten note, lower right)*

To provide cash in lieu of check # 1269 above

☐ TAX DEDUCTIBLE ITEM

**1303**
63-7807/2631

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

16 Oct 98

*Winston Davis*

*Twenty Five Hundred + no/100*

BAL FOR'D
THIS ITEM 2500
BALANCE
DEPOSIT
SHARE CHECKING
OTHER

**EGLIN FEDERAL CREDIT UNION**
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

*113 E Campbell*

⑈263178070⑈ 000 26321 13⑈ 1303

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1319**
63-7807/2631

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

14 Nov 98

*Winston Davis and Claud Barwick*

*Two Thousand Forty and no/100*

BAL FOR'D
THIS ITEM 2040 00
BALANCE
DEPOSIT
SHARE CHECKING
OTHER

**EGLIN FEDERAL CREDIT UNION**
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

*Roof for 115 Campbell*

⑈263178070⑈ 000 26321 13⑈ 1319

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1449**
63-7807/2631

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542

22 Mar 99

*Rachel Townsend*

*Twenty Nine Thousand + no/100*

BAL FOR'D
THIS ITEM 2900
BALANCE
DEPOSIT
SHARE CHECKING
OTHER

**EGLIN FEDERAL CREDIT UNION**
838 NORTH EGLIN PARKWAY
FORT WALTON BEACH, FLORIDA 32547

⑈263178070⑈ 000 26321 13⑈ 1449

NOT NEGOTIABLE

---

☐ TAX DEDUCTIBLE ITEM

**1532**
63-7807/2631

ALICE KELLY
OR DIANNE GRANTHAM
P.O. BOX 1716
EGLIN A.F.B. FL 32542
837-4023

7 MAY 99

*DAL-TILE*

*Forty-Six and 13/100*

BAL FOR'D
THIS ITEM 46 13
BALANCE
DEPOSIT
SHARE CHECKING
OTHER

**EGLIN FEDERAL CREDIT UNION**
838 EGLIN PARKWAY NE
FORT WALTON BEACH, FLORIDA 32547

*GROUT FOR CONTRACTOR*
*115 E. CAMPBELL, GENE*

⑈263178070⑈ 000 26321 13⑈ 1532

Draws and Checks paid to Winston Davis ~Grantham - work #850.883-4042~
for Construction Contract with Alice R. Kelly
115 E. Campbell Avenue, Geneva, AL 36340                    home # 850-837-4025

| | | |
|---|---|---|
| Draw from Loan # 5213862151 57 | $10,458.40 | 06/11/99 Drawn by Rachel Townsend - to purchase supplies for job. GAVE MR. DAVIS CERTIFIED CHECK. |
| Draw from Loan # 5213862151 57 | $4,141.60 | Drawn by Rachel Townsend - to purchase supplies for job. GAVE MR. DAVIS CERTIFIED CHECK. |
| Check # 1278 | $7,000.00 | Paid by Alice Kelly - Mr. Davis indicated he needed the money to purchase the cabinets, carpet, supplies, etc. since he did not have credit anywhere and would need to pay in cash. |
| Check # 1280 | $5,300.00 | 09/14/99 Paid by Alice Kelly - same reasons as above |
| Check # 1269 | $3,000.00 | Paid by Alice Kelly - same reasons as above |
| | | Mr. Davis asked to receive cash. He could not cash check at the local bank. Barbara Morris withdrew cash and paid |
| Check # 1303 | $2,500.00 | Mr. Davis (repaid Barbara Morris with Ck. # 1295 / 9/29/99) |
| Check # 1449 | | Paid by Alice Kelly - same reasons as above |
| Subtotal | | Paid by Alice Kelly - to reimburse Rachel Townsend for payment to Winston Davis/Brad Bynum for the installation of Air Conditioning to property at 115 E. Campbell. RACHEL |
| Total Contract Amount | $36,600.00 | |
| Remaining Balance on Contract | $1,200.00 | Mr. Davis has drawn down the contract amount lower than stated. There was to be at least $2500.00 remaining and if we were not happy with the work we would not have to pay the last draw. the $2500.00 is not available and we have also spent additional money toward the completion of this project. |
| Additional Payments: | | |
| Check # 1319 | | Paid by Alice Kelly to DAL-Tile for grout to be used in the installation of tile in the bathroom. |
| Check # 1532 | $46.13   05/07/00 | Paid by Rachel Townsend for sheet rock. Mr. Davis indicated the cost was over what he had contracted. Mr. Davis |
| Check # 1911 | $350.00 | Paid By Rachel Townsend - to Mr. Davis for additional labor to be hired to hang sheet rock. |
| Check # 1883 | | Paid to plumber for work done in bathroom addition - |
| Check # 1882 | 221.00 | Paid Laborer (Claud Barwick) that he has not been paid for this work yet. Mr. Davis indicated that the sheet rock could not be installed until |

*True*

PETITIONER WINSTON DAVIS'S
EXHIBIT 20(B)

Check # 1882



a plumbing problem was solved. Mr. Davis did not indicate in his subcontract what work was to be done and the plumber said that this particular step was not part of the contract/understanding he had with Mr. Davis. In order to continue the construction/renovation we had to pay this cost.

Paid for window cleaning. Mr. Davis presented an invoice to Rachel Townsend and indicated that he could not continue his work until the windows were cleaned. He informed her that her sister, Dianne Grantham, had said she would clean the windows and had not done the job. Ms. Grantham said she had told Mr. Davis she would clean the windows and just to let her know when this needed to be done. He never contacted her to tell her that he needed the windows cleaned.

Additional Amount Paid
Remaining Amount on Contract
Amount Overpaid on Contract

Mr. Winston Davis
Dothan, Alabama

Dear Winston

The purpose of this letter is to inform you officially that we do not believe it is your intention to complete the work we contracted and paid you for to renovate our Mother's home at 115 E. Campbell Avenue in Geneva, Alabama. You were given this contract because we needed the work done quickly, and you agreed to do it in 30 days. You convinced us this could be done because you and a friend from Huntsville, Alabama (Ed) would work inside, and you would use known subcontract personnel to simultaneously do the den and handicapped bath addition. You initially told us you would do it all for $25,000 and we settled on a final figure of $36,500, which included vinyl siding and soffits around the addition and all outside wood surfaces. In good faith, and because of this quick time schedule, we gave you significant and repeated installments of funds up-front to pay for all of the supplies and labor to get it done – except for funds to pay for the air conditioning and a final labor payment to you of $2,500 (if we were happy with the job)

You asked for the money up front because you said you did not have credit as the result of an on-going court case and had to pay in advance to get things ordered. ~~████████████████████████████████~~ ~~████████████████████████████████████████████~~ you had ~~████ payment locally ███ ████ week and did not have a local ███ ████ upon.~~ ~~████ █████ █████ █████ Monn ████ █████ ██ the money from a joint account███~~ Monday and give you the cash in return for the check, which Barbara and Alice then issued a check for $3,000 on 29 Sep 98 to Barbara to reimburse her. The $3,000 check to you was then voided. We accommodated you in every way possible to make it easy to do this work. Each time you came back to draw additional funds, telling us you had spent previous funding for the building supplies and to subcontract labor, we issued you more. We did this to assure you had all of the tools in hand to get this work done in the minimal time agreed to. We worked with you to select all supplies either from samples you showed us, or went to other sources with you to pick out items required to do this work. On every occasion, we selected items within the allowance you gave us, or a less costly item (as with the ceramic tile for the kitchen and den/porch addition.

It has been nine and a half months since you began this one-month job. You have been given every possible chance to make good on this contract. There have been many promises from you to meet time periods, and you have failed to keep any of them. By the 14th of November, we had issued you $34,440 against a contract price of $36,500. Since that time, we have had to pay an additional $3,871 to keep work moving – a total of $38,311. All of this against a fixed/turnkey contracted price of $36,500.

We have lived through all of the excuses for not completing this work:
  (1)  The first delay was because you said the company making the cabinets had their million-dollar machine break down, so we had to pick out cabinets from another company. You said it would take at least 6 weeks for the second set of cabinets to be ready.
  (2)  You then had the flu and had to return to Huntsville for a couple of weeks to recover.
  (3)  The flu turned into pneumonia for more than a month of additional lost time, and you said that your doctor wouldn't release you to come back.
  (4)  Your truck broke down when returning from Huntsville to start work again, so you had to turn around in Montgomery and go back home???
  (5)  You later returned to line up your subcontractors and get back to work, but you did not stay. You met Alice and Dianne in Destin, Fl. on 14 Nov after repeated requests to outline how you were going to get the remaining work accomplished. You said that you had paid for all supplies and labor except for some minimal additional items, which you outlined out of the $4,200 you said you had left. You then said the roof had cost you more than anticipated and asked for help in covering this. You ~~asked for~~ and received ~~an additional $2040~~ ~~at the roof~~ explaining that you hadn't ~~computed in a set price.~~ We gave you this money, even though we were not bound by contract, to do so. You then told us you had ~~███████████████ an extension on 20 Nov and needed time off for~~

*PETITIONER WINSTON DAVIS'S*
*EXHIBIT 20 (C)*

HELD (SUPRESSED) BY DISTRICT ATTORNEY.
SUBMITTE BBY P.O. OFFICER G. HUGHES TO COURT 6/23/2000



that. We did not agree to this further delay. Alice told you that you would have to have someone else do the work if you could not continue. You had promised us that our Mother would be in her house before Thanksgiving. This had been the third deadline promise. You left Destin and immediately returned to Huntsville....not doing any further work that month..

(6) You scheduled your operation anyway and phoned to tell us you'd get the house done by 15 December. You said that your doctor said you could return to Geneva two weeks after the operation and though you couldn't do the work yourself, that you had people lined up to get the job done. You estimated that you could still do it in approximately two weeks time once you returned.

(7) You continued to delay returning. You told us during repeated calls that you had infection from the hernia and your doctor would not let you leave.

(8) You did not meet the 15 Dec deadline. You finally returned, but minimal work was done on the house, and you continued to return to Huntsville. You came to Geneva subsequently to meet with Alice to discuss again how you would get the job done. She drove up from Destin, Florida, specifically because of this. She agreed to meet with you after lunch that day, but when she called to get together, you had headed back to Huntsville. In a conversation at the first of the week, you said you were returning to set up a schedule with your subcontractors and get back to work on the house. Our expectation was that you were back to do work. But, you left word with your sister-in-law that you couldn't stay to meet with Alice because you had to get back home before bad weather.

(9) After multiple absences, you came down in January to complete work, telling the family that you would have everything done by late February. You said the kitchen cabinets would be going in the last week of February when we pressed you for a schedule. We added an extra two weeks to your schedule and told you we would give you until the 15th of March to do the work, but this meant everything, including the siding. We did not want to move our Mother in until completed. Alice even scheduled leave for the last two weeks in March to get her moved. You made a point of emphasizing to our brother-in-law, Robert Morris, saying, "You heard me say it; I'll have everything done by 15 March, and you're going to be really happy with the job."

(10) Your next reason for leaving was that your wife got the flu and you had to go back up to look after her. You then got bronchitis, but in the phone call telling Alice this...your reason for not coming back, you assured her that you would still meet the 15 March deadline. When you were not back by 21 February, Alice talked to you and was told by phone that you would be returning the next week and that you had lined up your subcontractors to start either Tuesday or Wednesday of that week (23 or 24 February). Because Mr. Brad Bynum (Geneva subcontractor doing the A/C and heating on the house) had just asked our brother about completing his heating/air conditioning work, Alice phoned to assure he was set to begin. Mr. Bynum said that you had not contacted him since November and that he had been waiting for you to get back in touch with him so he could finish the job and get paid. When Alice phoned you back about this, you said that wasn't the case, that you knew you had talked to him in December. At that point you did call him and arrange for him to do the work. He let Alice know that you had then asked him to return to the job. (NOTE: This work was paid directly by the family later. Rachel Grantham Townsend paid Mr. Bynum $2,900 and Alice reimbursed her by check on 22 March 1999).

(11) You returned to restart work at the end of February with the promise that would not leave the job again until the work was completed...not even to join your wife and our family the week-end of the 13-14 of March because you and your subcontractors would be using that week-end to finish up the job. You did not meet the 15 March deadline.

(12) In April, you left the work site and took another job in Dothan, Alabama. You left Geneva and set up residence in Dothan, telling us you would subcontract completion of the rest of the work. You said you could get the job done better that way. But you did not subcontract the work, and when we found a family member to do a portion of it, you claimed that was work you planned to do yourself and did not have funds to pay for it (see next item number 12).

(13) When we got a family member to agree to do the tile work in the handicapped bathroom, you asked that we pick out different tile than what you and Alice had selected months earlier in Destin, FL. You said you wanted to buy directly from the distributor and save money. Alice went to DAL-Tile in Destin, FL and picked out another product. This was done and the information given to you. You told us that you had ordered the tile from a Dothan distributor and it would take a week to ten days to get in. You then told us you could not find the right grout. Alice went back to DAL-Tile, purchased the grout, and brought up to the work site on 9 May for you. We waited for the tile and



fully expected that the tile work would begin not later than the week-end of the 15th of May, and our family member was ready to do the work. You let us wait, and when the tile did not arrive and you were pressed to explain, you told us that the tile had been ordered but would not be shipped until paid for. You let us believe you had done this for over two weeks. You then said it had to be paid for out of the reminder of the money that we were holding. You also said that since you had planned to do the work yourself, we would have to pay for the labor. NOTE: The tile was discussed with you at the 14 November meeting in Destin, when you went over all you had purchased and all of the money you still had in your hands. You did this when we asked why you didn't pay the roof overage out of your remaining funds. You said you didn't have it because you had bought all the other supplies and paid for labor. You had approximately $4,200 dollars left at that time that you said had not already been spent to prepay for supplies and labor, and purchase of the tile was a part of what you itemized you still had to buy with that money – the reason you couldn't use it for the roof.

(14) You were asked why you wouldn't start instead on the kitchen cabinets (which you previously said would be picked up on the 1st of May). You gave the reason that the dining room bay window had to be completed first. You said you have to build a frame for it. But you did not offer to return to build the frame. When asked to show us receipts for the supplies that you have purchased, just to prove that they are paid for, you have repeatedly refused, saying you don't have to do this.

The facts speak for themselves: You took our money to do a job quickly....the reason we contracted with you in the first place...and you needed the work. You have defaulted repeatedly on promises to get the job done. You have walked off the job, continuing excuses why it cannot be completed. We have asked for evidence of good faith so that we can be assured that you have not actually stolen this money from us. You refuse to do that.

We do not want to believe that you would do this to us....not after the friendship we have extended to you and your family. At this very moment, your wife is living with our family. She is a dear friend, the reason we have tried to work with and believe in you. We offered you a place to stay in Geneva, we offered many times to help out on week-ends with labor just to try to push this job through.

You cannot believe the stress and anguish you have caused us. We have lost many hours of fitful sleep over this situation, and our Mother has despaired of ever having this new home. She is in ill health, as you know, and we desperately need her moved next door to our sister. My brother, Gordon, is handicapped and both of them need the shower facility we are waiting for to assist them in bathing. We have been paying for two places (rent and mortgage payment) during this, paying for utilities and insurance on an empty house for months. The words echo in our ears and keep us awake at night: "Thank you for trusting me (with the money); I would never do that to your family (take our money and spend it on something else); don't worry, I'll have this work done in a month (from 16 Aug start date) ....then I promise by 31 Oct, then 26 Nov, then 15 Dec, then 28 Feb, then 15 Mar." It is now June.

We see only one recourse to take, one we have been avoiding for months as we've tried to give you every opportunity to do this job: to file charges against you for defrauding us of our money.

In nine and a half months, you have completed the following work:

Painted the interior of the house. Put in ceiling tile inside the house. Tore out the interior bathroom fixtures, moved the wall between the kitchen and the bathroom, and sheetrocked the new wall. You have set a molded shower into the interior bathroom. You rerouted the hot water, and washer/dryer lines from the kitchen into the utility room at the back of the carport and opened up a doorway from the kitchen to this room. You put a new door on the front, side and back of house. You put a new roof on the house. You framed up the back addition, covered it with fiberboard, put in windows, and finished off the sheetrock inside. You closed up a door from the hallway into the kitchen with sheetrock and enlarged another opening into the kitchen. You put a plywood floor down in the kitchen/dining room. You have plumbing partially completed, and the heating/air conditioning has been installed.

The house is still far from complete, with most major cost items still missing:

**Kitchen** - No upper and lower cabinets, extending from the living room entrance around three walls to the back door, no formica top, double sinks and fixtures, flourescent lights, flooring (ceramic tile) or labor to install.

**Dining Room** - No flooring (ceramic tile), bay window, door to utility room, ceiling fan/lights or labor to install.

**Interior Bathroom** - No flooring, vanity cabinet/marble top, sink or faucets, fixtures for shower, handicapped toilet and wall bar, lights, or labor to install.

**Handicapped Bathroom** - 5X5 foot shower not tiled, no shower fixtures, no whirlpool tub or exterior frame, no faucets/fixtures, no handicapped toilet or wall bar, no double vanity, sinks, faucets, no flooring, no light fixtures, or labor to install.

**Den/Porch** - No flooring (ceramic tile), not painted, no ceiling fans (2) with lights, no rods, shelves in the closet, or labor to install.

**Utility Room** - No shelves, or labor to install.

**Exterior of House** - No vinyl siding around addition or outside wood, no labor to install

**Bedrooms and living room not finished** - no carpet, no light fixtures/fans in all rooms, no labor to install

**Back Step/Pad** not done or labor to install.

Please take this as notice that because of your default, we are demanding return of money for all uncompleted work. This can be in the form of supplies already purchased, or money for those supplies, and labor money for their installation.

It was our intention to offer you an opportunity to give us back supplies or the money for them, pay someone else to install them, and work out a plan for you to repay labor money if, in fact, you had paid yourself for all the labor under the contract. We were not happy with that, but we realized that you were not going to do this work, and our Mother's health continues to get worse. That was before we received your letter last week. Had we any question at that point about your character or your intent, your letter dispelled it. We are now convinced that you do not have any money to give back or supplies pre-purchased. You and we know that assertions in your letter are flagrant lies, and your demand for additional money was the ultimate insult after stealing so much from us already. The only changes ever made in the plans for the house were adjustments in where bathroom fixtures would be placed and a flip/flop of one window/door in the den. You agreed to a set layout on paper, and came back on both occasions to tell us we had to move bathroom fixtures elsewhere because you couldn't make your original agreement work. The den/porch addition was initially planned as living space to double as extra sleeping room since my Mother was moving from a four to a three bedroom place. (We covered this with Mr. Bynum in discussing the size unit necessary to air condition this back area and upgraded original plan for the A/C from a 2500 to a 3000 unit when we decided on the addition). You assured us you felt a 3000 unit was enough. Surely we wouldn't air condition a screened porch. We did exchange the placement of the back door and one of the windows before you framed up the addition to better accommodate flow through that room.

We fully intend to file criminal charges against you to assure you do not do this to anyone else. We have all evidence required to do this (contract, phone call records, records/stubs of payments to you and others, witnesses). You are leaving us with no alternative. Our Mother is going to have her house, but we will not pay for it twice without taking action against you for this unforgivable act.

Bertha Grantham Children

Signed: _____

Alice R. Kelly                    Rachel M. Townsend

# BEERS, ANDERSON, JACKSON, NELSON, HUGHES & PATTY, P. C.

### ATTORNEYS AT LAW

*MICHAEL B. BEERS
JAMES H. ANDERSON
MICHEAL S. JACKSON
RODERICK K. NELSON
CHRISTOPHER J. HUGHES
WILLIAM F. PATTY
WINSTON W. EDWARDS
CONSTANCE T. BUCKALEW
**JUDY B. VAN HEEST
KAREN L. MASTIN
THOMAS A. JONES III

*ALSO ADMITTED IN GEORGIA
**ALSO ADMITTED IN TENNESSEE

SUITE 100
250 COMMERCE STREET
MONTGOMERY, ALABAMA 36104
(334) 834-5311
FAX (334) 834-5362

MAILING ADDRESS:
P.O. BOX 1988
MONTGOMERY, AL 36102

BIRMINGHAM OFFICE

600 BEACON PARKWAY WEST
BEACON RIDGE TOWER
SUITE 104
BIRMINGHAM, ALABAMA 35209
(205) 917-3711
FAX (205) 917-3710

OF COUNSEL

JAMES E. CLARK
D. PATRICK HARRIS

January 22, 1999

Mr. Winston Davis
222 Kyser Blvd. No. 229
Madison, Alabama 35758

RE:    *Winston Davis v. Grady Tolley*
       Civil Action No. CV-97-049(W)

Dear Mr. Davis:

Enclosed please find the records which we have mutually agreed to produce pursuant to the court's Order regarding your nonparty subpoena to State Farm.

If you should have any questions, or need anything further, please do not hesitate to contact me.

Sincerely,

Theresa Vide Perkins
Legal Assistant

Enclosure

cc:  W. Phil Eldridge, Esq.

HARTFORD FIRE DEPARTMENT
P.O.BOX 117
Hartford, AL 36344
(205) 588-2192
Sept. 20, 1995

Mr. Grady Tolley
500 HillCrest
Hartford, AL 36344

SERVICE CHARGE FOR YOUR FIRE EMERGENCY ON     09/16/95

GRASS/WOODS FIRE                          ———

VEHICLE FIRE/ACCIDENT                      ———

RESIDENTIAL FIRE                       $500.00

SMOKE INVESTIGATION/REMOVAL                ———

COMMERCIAL/INDUSTRIAL FIRE                 ———

HAZ-MAT INCIDENT/ACCIDENT                  ———

OTHER                                      ———

The above assessed fees should be presented to your insurance
company for payment.

*Pleasant L. Parker III*
Pleasant L. Parker III
Fire Chief

PETITIONER WENSTON DAVESS          (A)



**State Farm Car Finance Plan**

STATE FARM FIRE AND CASUALTY COMPANY
DWELLING REPLACEMENT COST ESTIMATE
SEPTEMBER 11, 1995

PREPARED ESPECIALLY FOR:

GRADY & MARSHA TOLLEY
500 HILLCREST AVENUE
HARTFORD, ALABAMA 36344

PREPARED BY: (NH )

NICK HOLLEY
108 W COMMERCE STREET
HARTFORD, AL
36344-1646
(334) 588-2402

PHONE NUMBER: (334) 588-0911
DESCRIPTION OF THE DWELLING:

MASONRY, BASIC, ONE STORY HOME, SLAB,
YR BUILT: 1965, GROUND FLOOR SQUARE FOOT AREA: 1421

FEATURES

1 BREEZEWAY/PORCH
COMPOSITION SHINGLE ROOF

```
PETITIONER WINSTON DAVIS'S
EXHIBIT  (B)
```

ESTIMATE REPLACEMENT COST:    $53,100

E.H. BOECKH COMPANY, A Division of the Thomson Publishing Corporation

This is an estimate of the replacement cost of this dwelling.  The estimate is based on the current labor and material prices generally used in the local area for a similar style of construction.  This estimate does not consider the real estate "market value" of the dwelling and is not a "guarantee" that the home can be replaced for this value.  If you have any questions, please contact my office.

EXHIBIT (C)

# HOMEOWNERS/CONDOMINIUM UNITOWNERS APPLICATION

- [ ] State Farm Fire and Casualty Company
- [ ] State Farm General Insurance Company
- [ ] State Farm Lloyds

| Other State Farm Insurance: | [ ] Auto | [X] Fire | [ ] Life | [ ] Health |
|---|---|---|---|---|

Policy Number: **9-11-95**

Co-applicant's name (if applicable) | Telephone number: **1-334-588-0910**

NAME: **TOLLEY    GRADY L. + MARSHA A.**

Location of Dwelling: **500 HILLCREST AVENUE    HARTFORD    AL    36344**    County: **GENEVA**

**SAME AS ABOVE**

Applicant's Birthdate **8-29-70** SS# **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**  Occupation/Profession **CONCRETE SERVICE**  Co-applicant's Birthdate **1-29-70**  SS# **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**  Occupation **WAITRESS**

Mtg. Subset Code  [ ] Mtg.  [ ] Loss payee  [ ] Named add'l insured  **CITY BANK    P.O. BOX 340**  [ ] 2nd mtg.  [ ] Loss payee  [ ] Named add'l insured  [ ] Svc. agt.

**HARTFORD, AL   36344**

---

Renewal Bills: [X] Insured  [ ] Mortgagee   Endorse. Bills: [X] Insured  [ ] Mortgagee

M.P.P. Account Number:

Does this dwelling/applicant meet all Homeowners/Condo Unitowners Underwriting Guide requirements? [X] Yes  [ ] Explain in Remarks   No - do not bind.

Prior insurance carrier **AUTO-OWNERS**  Policy number **948917-3820053**

Has the applicant been insured with State Farm for home insurance (including tenants) within the last 3 years?
- [ ] Yes - indicate the dates:  From ___ To ___  HO 3-5 Disc. ___ %
- Which state/province? ___  [X] No

Has the applicant had any losses, insured or not, in the past 3 years? [ ] Yes*  [X] No

Has any insurer or agency canceled or refused to issue or renew similar insurance to the named applicant or any household member within the past 3 years?
- [ ] Yes - why? ___  [X] No

Is any business (including child care) conducted on the premises? [ ] Yes*  [X] No

Does the applicant have any part- or full-time residence employees? [ ] Yes*  [X] No

Year purchased **1994**  Current market value **$46000**

No. of hours dwelling is unoccupied each day (Form 4 only): **N/A**   Number of residences in past 3 years: **2**

Any pets in the household? [ ] Yes - if any appear unfriendly or vicious, explain in Remarks. If dogs, answer the following 3 questions.  [X] No

Breed: ___

Ever bitten anyone? [ ] Yes  [X] No  **N/A**   Trained for attack or guard purposes? [ ] Yes  [X] No  **N/A**

Is there a wood or coal stove, fireplace insert, or free-standing fireplace anywhere on the premises? [X] No
- [ ] Yes - complete Solid Fuel Checklist

COASTAL AREAS: Is the dwelling within 1000 ft. of water at high tide of the ocean, gulf, harbor, large open body of water or located on an island?
- [ ] Yes - refer to Underwriting Guide for information required  [ ] No

ROOF: General comments about the roof's condition: **good**   Age **10**

Indicate which of the following that might be of concern: [ ] Possible hail damage  [ ] Curled shingles  [ ] Loose/missing shingles
- [ ] Wear in valleys  [ ] Missing/replaced ridge row  [ ] Patched areas  [ ] Stain/rotting under eaves  [ ] Interior leaks

NOTE: Dwellings with poor roofs are unacceptable and should not be written. See Underwriting Guide.

Approximate value of the following personal property:

| | | | |
|---|---|---|---|
| Jewelry and furs $ **1000** | | Collections $ **0** | |
| Firearms $ **200** | | TV, stereo, tapes, records $ **4000** | |
| Goldware, silverware $ **0** | | Fine arts, antiques, rugs $ **0** | |
| Business property (tools, merchandise) $ **5000** | | Musical instruments, cameras, sports equip. $ **500** | |
| Personal tools $ **1000** | | Computers (hardware, software) $ **0** | |

How long have you known the applicant? **3** yrs.

Premises inspected on **9-11-95** By **Rick Holly**

## UNDERWRITING USE ONLY

Approved By ___  Agency Code ___  OPV Code ___  Date ___

Year built **1965**

Protection ___ **7**   [ ] Protected suburban (if applicable)  [ ] Fire district

Class ___

Zone **28**   Township **HARTFORD**

Is dwelling inside city limits? [X] Yes  [ ] No - how far outside city? ___ mi.

Name of nearest ___

---

[ ] ECHO I.V. PRINTOUT ATTACHED (If not, complete section on Supplemental App)

Forms 4 & 6 only:  # of rooms ___  Sq. ft. area ___

Personal property quality: [ ] Economy  [ ] Standard  [ ] Luxury

Form [X] 3  [ ] 4  [ ] 5  [ ] 6  [ ] 7  (Attach Country Homeowners Application if not available in all states)

Deductible: [X] $250 All Peril  [ ] $500 All Peril  [ ] Other ___

| | Limits | Premium |
|---|---|---|
| Dwelling or building property (Coverage A) | $ **47,800** | $ **308.00** |
| Dwelling extension (total amount if more than 10% of Coverage A) | $ **4780** | |
| Personal property | $ **33460** | |
| Condominium Loss Assessment (see Underwriting Guide for information required) | $ ___ | $ ___ |
| Personal liability (each occurrence) [X] $100,000 [ ] $300,000 [ ] $500,000 [ ] $ ___ | | Included |
| Medical payments to others (each person) [X] $1,000 [ ] $2,000 [ ] $3,000 [ ] $4,000 [ ] $5,000 | | Included |

Additional Coverage:

| | | Coverage Accepted | Premium | Coverage Declined |
|---|---|---|---|---|
| Jewelry and Furs (JF) (submit list of items) $1,500/2,500 (included in Form 5) [ ] $2,500/5,000 | | [ ] | $ | [ ] |
| Silverware/Goldware Theft (SG) (submit list of items) (not available in New Homeowners) [ ] $5,000 [ ] $7,500 [ ] $10,000 | | [ ] | $ | [ ] |
| Home Computers (HC) [ ] $10,000 | | [ ] | $ | [ ] |
| Firearms (FA) [ ] $2,500/$5,000 | | [ ] | $ | [ ] |
| Business Property (BP) (describe in Remarks) [ ] $2,500 on premises/ [ ] $5,000 on premises/ [ ] $250 off premises [ ] $250 off premises | | [ ] | $ | [ ] |
| Liability Coverage Extension: | | | | |
| Incidental Business (IO) * | | [ ] | $ | [ ] |
| Business Pursuits (BU) | | [ ] | $ | [ ] |
| Child Care * | | [ ] | $ | [ ] |
| Nurse's Professional Liability * | | [ ] | $ | [ ] |
| Other Options/Endorsements: | | | | |
| Replacement Cost of Contents (RC) (included in Form 5) | | [X] | $ **34.00** | [ ] |
| Back-up of Sewers or Drains (not available in Mississippi) | | [ ] | $ | [ ] |
| Building Ordinance or Law (added cost- code change) % of Coverage A: [ ] 10% [ ] 25% [ ] 50% | | [ ] | $ ___ | [ ] |
| Earthquake - Ded. ___ % Zone ___ | | | | |
| Is coverage desired on veneer? [ ] Yes [ ] No | | | | |
| Other: **Home ALERT** | | [X] | $ - **6** | [ ] |

FORM 3 APPLICANTS WHO MEET FORM 5 ELIGIBILITY RULES: I have been offered the added benefits of a Form 5 policy and prefer to purchase Form 3 coverage.

Applicant's Signature X ___

I understand that coverage is:

Amount paid $ **56.00**   Balance due $ ___   TOTAL PREMIUM $ **336**

Distance to: Hydrant _____

Construction: ☐ Frame  ☒ Brick veneer  ☐ Masonry  ☐ Other _____

Occupancy: ☒ Owner  ☐ Tenant  ☐ Vacant (explain in Remarks)  ☐ Dwelling under construction

☐ 2nd dwelling  ☐ New home/dwelling under construction discount  ☐ Seasonal occupancy

Row or town house?  ☐ Yes  ☒ No  # of units in fire division _____  # of roomers or boarders _____ 0

Condo. unit: ☐ owner-occupied  # of days _____  # of days rented or held for rental _____

Home Alert:  ☒ Fire or smoke / local alarm  ☐ Deadbolt locks  ☐ Fire extinguisher

☐ Burglar alarm system  ☐ Fire/burglar alarm reporting to fire department, police department, or central station *

☐ Fire or smoke detectors with digital or voice-synthesized telephone dialer    HOME ALERT DISCOUNT 2 %

* Complete Section on Supplemental Application

I am applying for the coverage(s) and endorsement(s) described above, have been explained to me, and I want to purchase only those that have been accepted and for which a premium is shown. I understand that the premium shown must comply with State Farm's rules and rates and may be revised.

Applicant's Signature _____

Agent's Code Stamp

RICK HOLLEY    1812

DAVID COCHRAN    35

Date and Time of App.
Mo. 9  Day 1  Yr. 95

Hour 3:30  ☒ a.m. ☐ p.m.

Forms 3 & 5 only: Date policy booklet delivered
9 1 95

AGENT'S COPY

*EXHIBIT* (C)

CLAIM PHOTO
TRANSMITTAL
(35mm)

CLAIM NO. _____



Photo No. _____

Location/View _____

_____

_____

_____

_____

_____

_____

Photo No. _____

Location/View _____

_____

_____

_____

_____

_____

_____

_____

_____

Photo No. _____

Location/View _____

_____

_____

_____

Date Time _____

By _____

PETITIONER WINSTON DAVIS
EXHIBIT (C)

# State Farm Insurance Companies



STATE FARM INSURANCE CLAIM OFFICE
326 Honeysuckle Road
P.O. Box 8577
Dothan, Alabama  36304
Phone: 334-671-3300

October 26, 1995

Mr. and Mrs. Grady Tolley
500 Hillcrest Avenue
Hartford, AL  36344

RE:  Claim Number:  01-D011-910
     Date of Loss:  September 16, 1995

Dear Mr. and Mrs. Tolley:

This letter will serve as confirmation of our meeting and final settlement of your fire loss on October 19, 1995.  The full replacement cost has been paid for dwelling repairs in the amount of $34,436.69.  This payment was based on our repair estimate. Your signed contract with Claude Barwick indicates that he can do the work described on his contract for the amount paid by State Farm.  Please note that his work description includes some items that are not on our estimate.

Our estimate marks the range as an open item.  This means that we were not sure of the repairability or price of that particular item.  There may be other items that you find damaged beyond repair during the reconstruction of your home.  We want to remind you that we reserve the right to inspect any such items if you intend to collect payment for their replacement.  Please contact us prior to their disposal.

An actual cash value payment of $12,942.60 has been made on personal property.  Your policy limit for personal property is $33,460.  This leaves $517.40 available in replacment cost benefits.  Please remember that you only have until September 16, 1996 to collect those benefits.  This may be done by submitting receipts for items once they are replaced.

We have also paid $2,355.56 for your additional living expenses. This payment includes $2100 to M.L. Weeks for a six month lease on the rental dwelling you live in at present and $255.56 for a hotel and meals prior to securing the rental house.  If repairs to your house are completed prior to the termination of your lease with Mr. Weeks, please contact us so that we may negotiate some terms for him to buy out the lease and rent to someone else.

*PLAINTIFF WINSTON DAVIS'S EXHIBIT  (E)*

Page 2
01-D011-910

I understand that Mr. Barwick has already determined that all
of the wall heaters and the hot water heater need to be replaced
due to fire damage. Please ask him to make those items available
for our inspection. If you would, please let me know when I
may inspect and I will meet with you to settle the storm claim
on your outbuilding at that time if it is convenient for you.

If you have any questions or need further assistance, please
contact me.

Sincerely,

Wanda M. Retherford
Claim Specialist
State Farm Fire and Casualty Company
(334)671-3356

cc:   1812

*PETITIONER WINSTON DAVIS'S EXHIBIT 2C*

IN THE CIRCUIT COURT IN AND FOR GENEVA COUNTY,
ALABAMA

WINSTON DAVIS,

      **Plaintiff**

vs.                              **Case No. CV 97-049(W)**

GRADY C. TOLLEY and
MARSHA A. TOLLEY, et al.,

      **Defendants.**

## RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS

COMES NOW the Defendant, GRADY C. TOLLEY and MARSHA A. TOLLEY, by and

through their undersigned attorney, and files this Response to Plaintiff's Request for Production

of Documents as follows:

1.      The Defendants, TOLLEY, house was burned in a fire and was completely burned.

           Any and all documents he had regarding this matter were completely destroyed

           and therefore are not available for production.  Attached is a copy of the

           Fire/Incident Report of the Hartford Volunteer Fire Department.

           Respectfully submitted,

           DAVID F. HOLMES, P.C.

           David F. Holmes
           P. O. Box 721
           Slocomb, Alabama 36375
           (334) 886-3123

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was forwarded to the Hon. Robert C. Faircloth, at P. O. Box 489, Troy, Alabama   36081 on the 8th day of January, 1998.

David F. Holmes

# FIRE/INCIDENT REPORT
## HARTFORD VOLUNTEER FIRE DEPARTMENT
### P. O. BOX 117
### HARTFORD, ALABAMA 36344

| Phone ☑ | Radio ☐ | | | Date 1/8/97 | | |
|---|---|---|---|---|---|---|
| Verbal ☐ | ADT ☐ | | | | | Arrived At Station |
| Received Call 1433 | Enroute 1638 | Arrived 1645 | Fire Under Control 1715 | Departed Scene 1812 | | |

| Company Responding Co. No. Type TKR 1, 3, 4 | Time Dismissed | Hours Involved 2 | Miles Traveled 6 Woods/Grass |
|---|---|---|---|

**Location or Street Address** CO 55

**Type of Fire/Incident**
☑ Residential ☐ Commercial ☐ Veh. ☐ Appliance ☐ Woods ☑ Smoke Invest. ☑ Electrical ☐ Other

| Owner Wiley Toley | Occupied By: |
|---|---|
| Adress: R+ 3 | |
| Phone No.: | Phone #: |
| Building Used For | Spread to other Buildings   Yes ☐   No ☑ |

**Origin of Fire** Suspicious          Probable Cause: UNKOWN

**Extinguished By** ☐ Extinguisher ☑ Pumper ☐ Sprinkler ☐ Hydrant(s) ☐ Chemicals

☐ Fog ☐ Preconnects ☑ 1" ☐ 1-1/2" ☑ 1-3/4" ☐ 2-1/2" ☐ Deluge ☐ Other

| No. Hydrants Used 0 | Hours Pumper Worked 1 3/4 | No. Of Lines Used 2 |
|---|---|---|

**Material Ignited, Type** Wood

**Reason for Fire Spreading** ☐ Non Fire Walls ☐ Open Stairs ☐ Poor Water Supply
☐ Open Shafts ☐ Type of Fuel ☐ Other

**Forceable Entry:** ☐ Door ☐ Window ☐ Roof ☐ Other

**Ventilation** ☐ Door ☐ Window ☐ Roof ☐ Other ☐ Positive Pressue Ventilation

**Fire Discovered By:** TONY Hobbs

**Phone #**

**Comments:** Called to 1070 house fire on Co Rd 55. Upon arrival found house fully involved and roof beginning to fall in. Used 1 3/4 + 1" booster lines to extinguish fire. Black Val. Fire Dept. also assisted in extinguishing fire. Black departments advised they came to residence on Friday to a fire that was confined to laundry room area. Today's fire started on the opposite end of house. Fire was extinguished and all units returned to station

| Estimated Fire Loss $50,000.º | Building | Contents | Equipment |
|---|---|---|---|

**Insurance Co.**

| Address | | Phone # |
|---|---|---|

**Special Note & Fire Scene Operations:** Upon investigation found 2 gas cans just outside of house. 1 straight in front of front door the other to the south of rear door.

_Wendel Toler_
Signature Of Officer In Charge

PT. Ex    (17.)

## CIRCUIT COURT OF GENEVA COUNTY

WINSTON DAVIS                      )
                                   )
    Plaintiff,               )
                                   )
    v.                       )          Civil Action Number: CV97-049(W)
                                   )
GRADY C. TOLLEY                    )
                                   )
    Defendant.               )

### OBJECTION TO SUBPOENA, MOTION TO QUASH SUBPOENA, MOTION FOR PROTECTIVE ORDER

State Farm objects to the subpoena of Plaintiff, Winston Davis, moves for a Protective Order and moves to quash the Subpoena of Winston Davis to State Farm. As grounds for this motion and objection, State Farm states as follows:

1.    State Farm does not object to the production of objective file materials, such as photos, estimates, draft copies, bills, etc. State Farm objects to the production of internal State Farm documents and confidential records.

2.    The request by Plaintiff would involve State Farm producing documents which are internal, in house State Farm adjusting documents. These materials would also involve the disclosure of internal claims handling procedures. Such a request is not relevant to the issues of the above styled action, and would disclose confidential trade secrets and internal documentation.

3.    State Farm, in adjusting this fire claim, obtained a Cause and Origin Report, and conducted an investigation for the possibility of a subrogation suit. This information was prepared in the anticipation of litigation and would be work product and should not be discoverable.

4.    Again, State Farm does not object to the production of objective file materials such as photos, estimates, drafts copies, bills, etc.  State Farm's objection is limited to work product for potential subrogation suit and internal confidential trade secret documents.

5.    State Farm requests that this honorable Court sustain its objection, limit by virtue of protective order, and partially quash the subpoena to the extent of the objectionable material.

Respectfully submitted this the _21_ day of December, 1998.

WILLIAM F. PATTY (PAT038)
Attorney for State Farm Fire and
Casualty Company

OF COUNSEL:
BEERS, ANDERSON, JACKSON,
NELSON HUGHES & PATTY, P.C.
250 Commerce Street, Suite 100
P.O. Box 1988
Montgomery, Alabama  36102
(334) 834-5311

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served upon all parties to this action, by placing same in U.S. mail, first class, postage prepaid, and properly addressed, on this the 21 day of December, 1998.

W. Phil Eldrige
Post Office Box 338
Hartford, AL 36344

Robert C. Faircloth, Esq.
CALLHOUN, FAULK, WATKINS,
   & FAIRCLOTH
P.O. Box 489
Troy, Alabama 36081

David F. Holmes
Post Office Box 721
Slocomb, AL 36375

Henry F. Lee, III
517 Commerce street
Geneva, AL 36340

David Rousseau
104 E. Main Street
Samson, AL 36477

OF COUNSEL